

Hon. Benjamin H Settle

1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11

12  1LT EHREN K. WATADA,

13                          Petitioner,

14              v.                              No.  C07-5549-BHS

15  LT.COL. JOHN HEAD, Military Judge,          EXCERPTS OF RECORD OF TRIAL I
    Army trial Judiciary, Fourth Judicial District;   DATED 5, 6, 7 FEBRUARY 2007
16  LT. GEN. CHARLES JACOBY, Convening
    Authority, Ft. Lewis, Washington,

17                          Respondents.

18

19

20

21

22

23

24

25

26

27

28

United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

ORIGINAL

FOR OFFICIAL USE ONLY
VERBATIM
RECORD OF TRIAL
(and accompanying papers)
of

First Lieutenant / 1LT

U.S. Army

GENERAL COURT-MARTIAL

COMMANDING GENERAL

Headquarters, I Corps and Fort Lewis

Fort Lewis, Washington 98433                                      February 2007

Companion Cases

DD FORM 490, MAY 2000          PREVIOUS EDITIONS ARE OBSOLETE.          Front Cover

20070535

# RECORD OF PROCEEDINGS OF COURT-MARTIAL

1    and get an injunction to prevent Congress from appropriating money to support the war in Iraq

2    or, if we had filed a lawsuit or somebody else had filed a lawsuit to prevent the president from

3    sending troops to Iraq, to get an injunction, to get a determination in that context that what was

4    being done is unlawful; those are not political question cases, *per se*. Those are cases in which

5    the courts have abstained because those issues are nonjusticible. In other words, those are cases

6    where people have gone to the court and said, "We want you to look over the shoulder of some

7    other branch of government, and decide that they are not doing what they are supposed to be

8    doing.

9            However, where somebody is charged and brought into court with a criminal

10   violation, and one of the elements of the charge, arguably either by virtue of intent or by virtue of

11   the acts themselves, requires that that person--requires the government to show, as an element,

12   that that person did not act the way he was required to act under certain circumstances.

13   MJ:    In this case the *mens rea* requirement, I think the government will stipulate, is

14   that he had the intent to miss the movement.

15   CC:    Well, I'm not sure that that's--that's a minimalist approach to this. But,

16   nevertheless, yes, that's what the general language says. And the question here is, whether or not

17   that was his intent--his specific intent, because it's not just the general intent. It's a specific intent

18   offense. That's what the Manual says. In this case, we will argue, as we've argued before, that

19   his specific intent was to fail to participate in something, which he believed was unlawful and

20   that therefore, would involve him the commission of war crimes. And that is the intent element

21   that exists here.

1      MJ:   What does this have to do with Lieutenant Watada?  What illegal action?

2    Assuming for the sake of argument--I'm just assuming for the sake of argument that there is a

3    crime against peace.

4        CC:   Uh hmm.

5        MJ:   Isn't that under the Nuremberg--isn't that crimes that are more towards leaders

6    rather than to the individual soldiers in an action?

7        CC:   No.  Actually, Nuremberg, as applied more recently in Bosnia and elsewhere,

8    applies to every member of the armed services who is called upon to carry out an order which

9    places that person in the realm of supporting, or participating, in the commission of acts which

10    are unlawful under international law.

11        MJ:   Okay.  Using your statement, what was your client--what was the illegal act that

12    he would be forced to participate in?

13        CC:   The illegal act, first and fundamentally, was that he was being ordered to go to

14    Iraq to participate in an invasion, which was unlawful from its inception.

15        MJ:   So merely being a soldier in Iraq is a war crime.  Is that what you're----

16        CC:   Under these circumstances--under the circumstances under which this war was

17    initiated, the answer to that is yes.  That's right.

18        MJ:   So, if I've got your argument correct, every soldier that goes to Iraq is committing

19    a crime against peace?

20        CC:   No.  That's not what we're arguing, and I want to make that very clear.  What we

21    are arguing is--this also goes back to some things we talked about this morning--that each

22    individual soldier who is being given orders to do something has an obligation, by virtue of their

1    training, by virtue of their oath, and by virtue of applicable law, to make a determination whether

2    the orders that he or she receives are lawful or may place that person in a position where he or

3    she is conducting themselves in a manner that could subject them to prosecution for war crimes.

4            Now, you don't go through that calculus every time you're ordered to do an

5    exercise or to participate in training.  But when you're ordered to get on a plane to go to another

6    country, which has been invaded without legal justification, certainly in the process of that, one

7    would expect at least some number of people to at least inquire of themselves whether that's

8    something that they lawfully and conscientiously can be required to do.  And that, in fact, is what

9    Nuremberg compels people to do.  People are required to make that determination for themselves

10   as to whether or not they believe they would be subjecting themselves to participation in

11   something for which they could later be disciplined by an international court or by a domestic

12   court.  In this country, we do have a war crimes law, which is on the books in 18 USC.  And, if

13   that person reasonably believes that he or she could be prosecuted for participating in something

14   that constitutes a crime against peace or a war crime, then that person has a right, and potentially

15   an obligation, to refuse to undertake what that person is being ordered to do.

16           That doesn't mean that's people who don't realize, or don't know what they are

17   doing, have an obligation to refuse to go.  But certainly, if one person is conscious, and knows,

18   and full well understands the implications of what he or she is being ordered to do, and reaches

19   the conclusion that that is unlawful, then that person is without an excuse or justification if he or

20   she does it anyway.

21           MJ:    But isn't the maxim of military law that you violate orders to your own peril?

1   require--the requirement for a panel, again stating from *United States against Joeson*, is a

2   constitutional standard of fairness required to the defendant having a panel of impartial and

3   indifferent jurors, as stated by the Supreme Court in their word against doubt.  That's all that the

4   government will be asking for.  Thank you.

5       MJ:    Government, you understand that during individual *voir dire* you will have the

6   opportunity to stand up and object, and you will have the opportunity to make--ask questions that

7   defense will have the opportunity to object to, correct?

8       TC:    We do, Your Honor.

9       MJ:    Anything further on *voire dire*?

10      CC:    Nothing further.

11      MJ:    Anything further from the defense on their motions?  Any further motions?

12      CC:    No, we have no further motions, and we're prepared to enter pleas at this time.

13      MJ:    Lieutenant Watada I previously advised you of your forum choices, and you

14   responded that you wanted a officer panel.  Is that correct?

15      ACC:   Yes, sir.

16      MJ:    Accused and defense counsel, please rise.

17   [The accused and his counsel did as directed.]

18      MJ:    Lieutenant Ehren Watada, how do you plead?  Before receiving you plea, I advise

19   you that any motions to dismiss or to grant other appropriate relief should be made at this time.

20   Your defense counsel will speak for you.

21      CC:    At this time we will enter pleas of not guilty to all charges and specifications.

22      MJ:    Thank you.  I understand that there is a stipulation of fact in this case.

1    CC:    Yes. Colonel, the stipulation of fact is pursuant to a pretrial agreement, so you

2    might want to go through that first. Whichever is best for you, but the pretrial agreement is the

3    basis upon which the stipulation is being offered.

4         MJ:    I'll go through them. In the inquiry it discusses the stipulation of fact, then we go

5    through the pretrial agreement. Lieutenant Watada, I have before me Prosecution Exhibit 4 for

6    identification, a stipulation of fact.

7              Do you have a copy of that in front of you?

8    ACC:    Yes, sir.

9         MJ:    It's a 12-page document with apparently a DVD--or 2 DVDs. Do you have that?

10   ACC:    Yes, sir.

11        MJ:    Turn to Page 12.

12   [The accused did as directed.]

13        MJ:    Is that your signature on the top of Page 12?

14   ACC:    It is, sir.

15        MJ:    Did you read this document before you signed it?

16   ACC:    Yes. I did, sir.

17        MJ:    Do counsel for both sides agree to the stipulation and is that your signature or

18   your predecessors' signature that appear on the document?

19   TC:    Yes, sir.

20   CC:    It is also my signature, and I signed it for Captain Kim at his direction.

21        MJ:    Lieutenant Watada, a stipulation of fact is an agreement among the trial counsel,

22   your defense counsel, and you that the contents of the stipulation are true, and if entered into

1 evidence, are the uncontradicted facts in this case. No one can be forced to enter into a

2 stipulation, and no stipulation can be accepted without your consent, so you should enter into it

3 only if you truly want to do so.

4        Do you understand this?

5     ACC: Yes, sir.

6     MJ: Are you voluntarily entering into this stipulation because you believe it is in your

7 best interest to do so?

8     ACC: I am, sir.

9     MJ: Lieutenant Watada, the government has the burden of proving beyond a

10 reasonable doubt every element of the offenses to which you've been charged. By stipulating to

11 the material elements of one of the offenses, as you are doing here, you alleviate that burden; that

12 means, based upon the stipulation alone and without receiving any other evidence the court can

13 find you guilty of the offenses to which the stipulation relates.

14        Do you understand that?

15     ACC: I do, sir.

16     MJ: If I admit this stipulation into evidence it will be used in two ways:

17        First, members will use it to determine if you are, in fact, guilty to the offenses to

18 which the stipulation relates;

19        Second, the trial counsel may read the contents to the members, and they will

20 have it with them when they decide upon your sentence.

21        Do you understand and agree to these uses of the stipulation?

22     ACC: Yes, sir.

1    MJ:    Do both counsel also agree to these uses?

2    TC:    Yes, Your Honor.

3    CC:    Defense agrees.

4    MJ:    Lieutenant Watada, a stipulation of fact ordinarily cannot be contradicted. You

5    should, therefore, let me know if there is anything whatsoever in the stipulation you disagree

6    with or feel is untrue.

7            Do you understand that?

8    ACC:   Yes, sir.

9    MJ:    At this time, I want you to read your copy of the stipulation silently to yourself as

10   I read it to myself.

11   [The accused did as directed.]

12   MJ:    Have you finished reading it?

13   ACC:   I have, sir.

14   MJ:    Have you had an opportunity to review also the material contained in Enclosure 1

15   and Enclosure 2; the two videos?

16   ACC:   I have seen the videos, sir.

17   MJ:    And those are the videos of the two statements that are reflected in the stipulation

18   of fact?

19   ACC:   Yes, sir.

20   MJ:    Lieutenant Watada, is everything in the stipulation the truth?

21   ACC:   It is, sir.

22   MJ:    Is there anything in the stipulation that you do not wish to admit that it's true?

128

1        ACC:  No, sir.

2        MJ:    Lieutenant Watada, have you consulted fully with your counsel about the

3    stipulation?

4        ACC:  Yes, sir.

5        MJ:    After having consulted with your counsel, do you consent to my accepting the

6    stipulation?

7        ACC:  Yes, sir.

8        MJ:    Lieutenant Watada, at this time I want you to tell me the factual basis for this

9    stipulation; tell me what happened regarding--let's talk about the 7 June 2006 statement.

10       ACC:  Sir, on 7 June, as it says here in the facts, I did make a video recorded statement.

11       MJ:    How'd that happen; where'd that happen?

12       ACC:  It happened at a friend--friend's house.  The video statement was intended for

13   public use for a press conference on this day; June 7th.  I was notified by my chain of command

14   that I could not speak during duty hours, so that was the reason for the video statement in which

15   a press conference was already set up during the day.

16       MJ:    And you made the statement that's reflected here?

17       ACC:  Yes, sir.

18       MJ:    You said you made it at a friend's house.  When before the 7th did you make it, or

19   did you make it on the 7th?

20       ACC:  No, sir.  It was a few days prior to that.

21       MJ:    But was it on the 7th that it was released to the public?

22       ACC:  Yes, sir.

129

1    MJ:    And where was the videotape released?

2    ACC:   It was released at the, as I believe, Associated Ministries Church over in Tacoma.

3    MJ:    Did you know the statement was going to be released?

4    ACC:   Yes, sir.

5    MJ:    These are your words?

6    ACC:   They are, sir.

7    MJ:    Tell me about the interview with Sarah Olson.

8    ACC:   This was an interview that was done towards the end of May. And Sarah Olson

9    agreed to not release it until after I had come out publicly and stated that I would refuse

10   deployment and my reasons why.

11   MJ:    How'd this interview take place? Was it a telephone interview or in person?

12   ACC:   It was a in-person interview.

13   MJ:    So this did not occur on 7 June 2006; the interview?

14   ACC:   That is correct, sir.

15   MJ:    And what day did it occur actually?

16   ACC:   It was the--it was the holiday weekend at the end of May, sir.

17   MJ:    The weekend of the 24th through the 27th?

18   ACC:   I believe so, sir.

19   CC:    No, I think it's the Memorial Day weekend; whichever it was.

20   MJ:    Do you remember which day of the week it was?

21   ACC:   I can't recall, sir. It was either Sunday--I think it was Sunday.

1       MJ:     I'm sorry, I'm looking at the wrong month. I'll take judicial notice that May 29th

2   2006 was Memorial Day. Was it Memorial----

3       ACC:    It was the Memor--the holiday weekend, sir.

4       MJ:     You don't remember which particular date?

5       ACC:    I believe it was Sunday.

6       MJ:     You believe it was Sunday. So the stipulation of fact is incorrect when it says, "In

7   the interview with the news reporter Sarah Olson on 7 June 2006." That would be incorrect?

8       ACC:    Yes, sir, it is. It was released on June 7th.

9       MJ:     It was released on June 7th----

10      ACC:    Yes, sir.

11      MJ:     ----but the actual interview occurred--that Sunday would have been 28 May 2006.

12      ACC:    Yes, sir.

13      MJ:     Government, do you want to amend the stipulation of fact?

14      TC:     Yes, Your Honor.

15      MJ:     Defense, any objection?

16      CC:     No objection.

17      MJ:     I'll write on the stipulation of fact 28 May, I'll cross through 7 June--

18  government's motion to amend. And where'd that interview occur?

19      ACC:    This was in San Francisco, sir.

20      MJ:     Okay, so it didn't occur in Tacoma, Washington?

21      ACC:    It did not, sir.

1       MJ:     So that sentence continuing on; Tacoma, Washington is also incorrect?

2       ACC:  Yes, sir.

3       MJ:     Government?

4       TC:     Yes, Your Honor.  I move to amend changing the location from Tacoma,

5    Washington to San Francisco, California.

6       CC:     No objection.

7       MJ:     I'll make that notation.  You said it was a sit-down interview; her asking

8    questions and you answering them?

9       ACC:  Yes, sir.

10      MJ:     How'd that interview get set up?

11      ACC:  I believe she contacted me.  She heard through a friend that I was planning to

12   refuse and state my reasons why publicly.

13      MJ:     How long did the interview take?

14      ACC:  I'm not quite sure, sir.  I would guess maybe two hours at the most.

15      MJ:     Anybody force you to do the interview?

16      ACC:  No, sir.

17      MJ:     These your words?

18      ACC:  They are, sir.

19      MJ:     Except, obviously, the ones that have Sarah Olson's name attached to them?

20      ACC:  Correct, sir.

21      MJ:     Are those her words?

22      ACC:  As far as I can recall.  Yes, sir.

1     MJ:    What did you all talk about during that interview?

2     ACC:  Well, we simply talked about how I came about in this decision to refuse to

3  deploy to Iraq, why I felt that that decision was justified, why I felt the war was wrong, not only

4  in a moral sense, but also a legal and constitutional sense; and that was pretty much the basis of

5  what we talked about.  There were other things she asked about; what was going on at the current

6  time in terms of this process, my dealings with my commanders, what was the feeling of other

7  soldiers in the Army, as a whole.

8     MJ:    And these are reflected in the transcript of the interview?

9     ACC:  That's correct, sir.

10    MJ:    And this is an accurate transcript?

11    ACC:  As far as I can recall.  It is, sir.

12    MJ:    Now, let's talk about the 22nd of June 2006.  What happened there?

13    ACC:  Sir, I believe either the day prior or a couple days prior Colonel Antonia sat down

14  with me and he asked me, "What are you planning on doing?"  And I told him that I was going to

15  do what I told you I was going to do six months prior and that was refuse deployment.  I did tell

16  him at that time that I was not going to make this refusal some sort of big media fanfare, and I

17  would respect the fact that there will be other soldiers there who will not see their families in a

18  year's time.  And I wanted to respect that, so I would simply report to the Battalion Headquarters

19  and report to the first sergeant, who was organizing the battalion manifest, say that I was

20  reporting, and I would stay in the Battalion Headquarters in the Fire Support Cell's Office.

21    MJ:    Did you know about the manifest dates?

22    ACC:  I did, sir.

1    MJ:    And did you know about that particular flight number?

2    ACC:    I can't recall if I was given the specific flight number, sir.

3    MJ:    Did you know that you had to be on that particular flight?

4    ACC:    Sir, I can't recall if this was the exact flight number.  I know that I was given an

5    order, a document, and I believe it does reflect what is on here.

6    MJ:    So what type of documents were you given about deploying?

7    ACC:    Sir, I was--what I can recall prior to this--I was only notified that I was going to

8    be on the ADVON maybe a few days before they were leaving.  There was a lot of confusion, as

9    I was told at first that I was going on the ADVON, then I was told that I wasn't, and then a few

10    days prior the Battalion Commander, Colonel Antonia, said I was going to be on the ADVON

11    flight and to report in at a specific time.

12    I can't recall if he gave me a certain document that said this is your flight number;

13    he did give me a written order.  If I recall correctly, that day that I did not get on the plane--or

14    that I did not report for the battalion manifest and the brigade manifest--but again, I cannot recall

15    that there was a--or what the actual flight number was.

16    MJ:    Well, here in the stipulation of fact it says that you knew the manifest

17    information.

18    CC:    He says he can't recall, Colonel.  He did know at the time, and you have the

19    documentation as exhibits.

20    MJ:    Have you reviewed documents since then that would make you confident that that

21    was the actual flight number?

22    ACC:    Yes.  I did, sir.

1    MJ:    So even though you don't remember right now, are you convinced that that was

2    the flight number that you were told that you would have to make?

3    ACC:    Yes, sir.

4    MJ:    What was your intent regarding the deployment of that aircraft?

5    ACC:    Sir, my intent, as I stated in public statements and as I stated to my chain of

6    command numerous times, was that the order to deploy to Iraq to support combat operations in

7    OIF was to me, as I believed in the facts and evidence that I saw, was an illegal order.  And that

8    the war itself was illegal, and any participation of mine would be contrary to my oath, and

9    therefore I would have no other choice but to refuse.  So my intent was to refuse the order, sir.

10    MJ:    Okay.  Did you intend not to get on that aircraft?

11    ACC:    Yes, sir.

12    MJ:    Did you draw any equipment to prepare for the deployment?

13    ACC:    I did not, sir.  I did--correction.  I did draw the RFI equipment as ordered a couple

14    weeks prior to deployment.

15    MJ:    When did you form the intent to not make this flight BMYA911117T?

16    ACC:    Sir, as I stated, the--in notifying my chain of command in January of '06, I stated

17    my overall intent that I will not deploy to Iraq or participate in any form because of my beliefs.

18    As in terms of the specific flight, I guess it was when I was notified that I would be deploying

19    with the unit--on the ADVON unit.

20    MJ:    When you got notice of that flight--even though you had generally intended not to

21    go, is that what you're saying?  But when you found out that you were going to be on a particular

22    flight, is that when you decided, "I'm not going to get on that particular flight"?

1     ACC:  Yes, sir.

2     MJ:   Do you understand what I'm saying?

3     ACC:  Yes, sir.

4     MJ:   And these are the reasons you--did you manifest that intent in your interviews

5  with Sarah Olson not to deploy?

6     ACC:  I did, sir.

7     MJ:   And with the--on the statement that you had presented for you at the press

8  conference, is that also manifestation of your intent not to deploy?

9     ACC:  Yes, sir.

10    MJ:   What happened on the 12th of August?

11    ACC:  On the 12th of August I attended--or I was invited to speak at a Veterans for

12  Peace National Convention.  This was over in Seattle, Washington on the University of

13  Washington Campus, and I gave a prepared speech.

14    MJ:   And that was on the 12th of August?

15    ACC:  Yes, sir.  As far as I can recall.

16    MJ:   Was it in Seattle?

17    ACC:  It was in Seattle.

18    MJ:   The videotape on the--or rather the video of this--the video actually has a date

19  stamped on it of the 13th of August.  Would that be incorrect on the video?

20    ACC:  Yes, sir.

21    MJ:   One of those problems with video cameras not always having the right date when

22  they're being--when they're taping?

1     ACC:  I would assume so, sir.

2     MJ:    Is this an accurate transcript of the statements that you made?

3     ACC:  It is, sir.

4     MJ:    And who was at this convention?  Was it private or were there members of the

5  public there?

6     ACC:  It was a--a private gathering.  They had a guest roster--or a roster in which people

7  had to pay to attend the dinner, and so they were only allowing those people in that were on the

8  list.  It was--as far as I know, it was made up of only longtime peace activists, people who were

9  involved in the movement in opposition to the Iraq war----

10    MJ:    But if it wasn't open to the general public it was open to a certain segment of the

11  public, correct; the people who were a member of the organization and that had paid their money

12  for the dinner?

13    ACC:  Yes, sir.

14    MJ:    Did this occur at a dinner, or was this a--how did the speech take place?

15    ACC:  It was a dinner.  And I believe it was the culmination of some events that had

16  happened during that week, which I did not attend, but part of this national convention for this

17  organization that's for peace.

18    MJ:    So were you the guest speaker for the dinner?

19    ACC:  I was one among several.

20    MJ:    Did anybody force you to make this speech?

21    ACC:  No, sir.

22    MJ:    Again, your words?

1        ACC:  Yes, sir.

2        MJ:   Are Enclosures 2 and 3 the orders that you received from Lieutenant Colonel

3    Antonia?

4        CC:   Sir, we don't have that extra copy----

5    [The trial counsel provided the accused with a copy of the documents.]

6    [The accused reviewed the documents.]

7        ACC:  Yes, sir.

8        MJ:   How do you know those were the orders?

9        ACC:  I saw them with my own eye, sir, presented by Colonel Antonia.

10       MJ:   Is your signature on those?

11       ACC:  Yes, sir.

12       MJ:   And that is your signature?

13       ACC:  Yes, sir.

14       MJ:   The one dated 21 June, was that actually given you on the morning of the 22nd?

15       ACC:  It was, sir.  Correction, sir.  [Referred to the stipulation of fact.]  Yes, sir.  The one

16   on 21 June was presented to me on the 22nd of June.

17       MJ:   Okay.  Here, any doubt in your mind, at any time, that you were required to

18   deploy on the 22nd of June?

19       ACC:  No, sir.

20       MJ:   Any doubt in your mind, at any time, that you were manifested for a flight on the

21   22nd?

22       ACC:  No doubt, sir.

1     MJ:   And after reviewing the documents, any doubt in your mind that you were

2   manifested on the flight as reflected in the stipulation of fact?

3     ACC:  No, sir.

4     MJ:   Other than the changes that we made, is there any other errors in the stipulation of

5   fact?

6     ACC:  Not that I can find at this time, sir.

7     MJ:   Does either counsel believe any further inquiry is required into the factual basis

8   for the stipulation?

9     TC:   Your Honor, I apologize if I missed it, and I think this is clear, but I just want to

10  technically confirm that the accused actually did miss the movement of the aircraft and that flight

11  did, in fact, move.

12     MJ:   Alright.  Did you miss that flight?

13     ACC:  As far as I know.  Yes, sir.

14     MJ:   Did that flight actually leave?

15     ACC:  I don't know that, sir.

16     MJ:   Well, you stipulated as a matter of fact that it left.

17     ACC:  As far as I know, sir.  I mean----

18     MJ    Well, have you reviewed any material, have you talked to anybody, have you seen

19  anybody around, have you heard testimony?

20     ACC:  I have heard testimony.

21     MJ:   Is there any doubt in your mind that that flight left?

22     ACC:  No, sir.  There's no doubt.

1     MJ:     And why do you know that that flight left?

2     ACC:     I believe the testimony from the rear-detachment XO or commander.  He stated

3     that the flight did take off.

4     MJ:     Government, does that answer your question?

5     TC:     It does, Your Honor.  Thank you.

6     MJ:     Again, does either counsel believe any further inquiry is required into the factual

7     basis for the stipulation?

8     TC:     No, Your Honor.

9     CC:     We do not.

10     MJ:     I understand that there's a pretrial agreement in this case.  Other than the pretrial

11     agreement, has anybody made any promises or agreements with you in connection with this

12     stipulation?

13     ACC:     No, sir.

14     MJ:     Defense Counsel, does the accused have a copy of Appellate Exhibit XXXII in

15     front of him?

16     CC:     Is that the pretrial agreement?

17     MJ:     Yes.

18     CC:     Yes, he does.

19     MJ:     Lieutenant Watada, I have before me what's been marked as Appellate Exhibit

20     XXXII, which is a pretrial agreement in your case.  Please turn to the second page.

21     [The accused did as directed.]

22     MJ:     Counsel, the copy I have has no defense counsel signature.

140

1        ACC:  Yes, sir.

2        MJ:    And that the stipulation of fact could be used for any purposes associated with

3    your pending court-martial?

4        ACC:  I understand, sir.

5        MJ:    And we covered that.  That it could be used by the members to find whether

6    you're guilty or not guilty, and if they find you guilty that they can use that to determine any

7    sentence that they may impose.

8            Do you understand that?

9        ACC:  Yes, sir.

10        MJ:    Do you also understand that any appellate court could use that to determine if you

11    are, in fact, guilty of the offenses to which you were convicted?

12        ACC:  Yes, sir.

13        MJ:    It says here that upon the court accepting the stipulation of fact into evidence that

14    the government will dismiss Specifications 2 and 3 without prejudice.  What "without prejudice"

15    means is that the government--if there would be a--if you would contradict your stipulation of

16    fact that they could come back and resurrect those charges and charge you again with those.

17            Do you understand that?

18        ACC:  Yes, sir.

19        MJ:    But upon completion of the trial proceedings, that those would be dismissed with

20    prejudice, which means they could never bring them back.

21            Do you understand that?

22        ACC:  Yes, sir.

1      MJ:    By "completion of trial proceedings," that means that either if you're found not

2    guilty of all the offenses that that would end the trial, correct?

3      ACC:  Yes, sir.

4      MJ:    If you're found guilty of any offense, the completion of the trial proceedings

5    would be the imposition of the sentence by the--or the announcement of sentence by the panel.

6               Do you understand that?

7      ACC:  Yes, sir.

8      MJ:    And that's when The Charge would be dismissed with prejudice.  That that would

9    happen automatically.

10              Do you understand that?

11     ACC:  Yes, sir.

12     MJ:    Is that what both counsel meant by "completion of the trial proceedings"?

13     TC:    Yes, Your Honor.

14     CC:    That's correct.

15     MJ:    Paragraph 3 talks about that the agreement originated with you and that no person

16    or persons made any attempt to force you or coerce you into this agreement, or to force you to

17    stipulate.

18              Is that correct?

19     ACC:  That is correct, sir.

20     MJ     That you wanted to do this; that nobody said that you had to?

21     ACC:  Yes, sir.

1      MJ:    Your counsel may have advised you that it might be a good idea, but in the end it

2  was your decision.

3      ACC:  Absolutely, sir.

4      MJ:    Additionally, your defense counsel advised you of what this agreement actually

5  means; that's what Paragraph 4 talks about.  And that you understand what it means.

6         Is that true?

7      ACC:  Yes, sir.

8      MJ:    And finally, Paragraph 5 states that this agreement can be cancelled if you fail to

9  agree upon the contents of the stipulation of fact with the trial counsel.  You've already done

10  that, haven't you?

11     ACC:  Yes, sir.

12     MJ:    So we don't have to worry about that one.  It says in Paragraph B the withdrawal

13  from agreement prior to trial so long as the withdrawal is approved by the military judge.  Do

14  you understand that prior to coming in here that I didn't have to approve this, that you could

15  withdraw if you wanted to?

16     ACC:  Yes, sir.

17     MJ:    That you could right now say, "You know.  I don't want to do this," and we'll just

18  go on with a full trial on all the charges.

19        Do you understand that?

20     ACC:  Yes, sir.

21     MJ:    So this one really isn't quite accurate that you have to have my approval to

22  withdraw prior to trial.  You haven't withdrawn, have you; withdrawn from this agreement?

1    MJ:    Did you enter the agreement of your own free will?

2    ACC:   Yes, sir.

3    MJ:    Has anyone tried to force you to make this pretrial agreement?

4    ACC:   No, sir.

5    MJ:    Do you have any questions about your pretrial agreement?

6    ACC:   No, sir.

7    MJ:    Do you fully understand all the terms of the pretrial agreement and how they

8    affect your case?

9    ACC:   I do, sir.

10    MJ:    Do counsel for both sides agree with the court's interpretation of the pretrial

11    agreement?

12    TC:    Yes, Your Honor.

13    CC:    We do.

14    MJ:    Defense Counsel, do you have any objection to Prosecution Exhibit 4 for

15    identification?

16    CC:    No objection.

17    MJ:    Prosecution Exhibit 4 for identification is admitted into evidence as Prosecution

18    Exhibit 4.

19          Since it's 1125; in a brief 802 before coming back on the record I had told counsel

20    it's probably best to send the members away until 1230, and we'll call the members at 1230 to

21    begin preliminary instructions and *voir dire*. And, Defense, you said that you had one more

22    thing?

1    MJ:    That's fine. Members of the court, there are some matters we must now consider

2    outside your presence. Please return to the deliberation room. All of you, I imagine, will be

3    recalled, however, for individual questioning. At this point I would ask everyone to return to the

4    deliberation room but, Colonel Chappell, I think you'll be first in the door to come back. And at

5    that point when you do come back, have a seat at the front table there. You may leave the court

6    room.

7    BAILIFF:    All rise.

8    [All did as directed, and all members withdrew from the courtroom.]

9    MJ:    Please be seated.

10    [All did as directed.]

11    MJ:    I asked Colonel Chappell to part--Government, at this time do you have a motion

12    in regard to the charges?

13    TC:    Yes, Your Honor. As it relates to, I believe it's Charge II, government moves to

14    dismiss Specifications 2 and 3 of Charge II without prejudice, to ripen into prejudice upon

15    conclusion of the legal proceedings.

16    MJ:    I take it no objection by the defense?

17    CC:    No objection.

18    MJ:    And Specification 1 will be renamed The Specification. Specification 2 of

19    Charge II and Specification 3 of Charge II are dismissed without prejudice, to ripen into

20    prejudice on the announcement on findings if the accused is found not guilty of all offenses, or

21    the announcement of sentence if the accused is sentenced based on any finding of guilt.

22    I presume counsel want to talk to all panel members?

178

1     MJ:     Again, I counseled counsel that when you make objections, simply state the basis

2     for your objection and if I call for argument on that objection -- no talking objections, as per the

3     Rules of Court.

4     TC:     Yes, sir.

5     MJ:     Are you ready to proceed with your case, government?

6     TC:     We are, Your Honor.

7     MJ:     Recall the members.

8     The Article 39(a) session recessed at 0947, 6 February 2007.

9     The court-martial was called to order at 0947, 6 February 2007.

10     MJ:     Let the record reflect we've been rejoined by the members.  Trial counsel, are you

11     ready to proceed with your case in chief?

12     TC:     We are, Your Honor.  At this time the government moves to publish Prosecution

13     Exhibit 4 to the members.

14     CC:     No objections.

15     MJ:     Before you hand that out, hold on just a second.  Members, parties to this trial

16     have stipulated or agreed to the facts contained in the stipulation of fact you're about to be

17     presented are the facts.  Counsel for both sides agree, with the consent of the accused, and

18     stipulate and agree to the contents of this writing.  The parties are bound by the stipulation and

19     the stipulated matters are facts in evidence to be considered by you, along with all the other

20     evidence in the case.

21     Now you may publish them.

22     [The assistant trial counsel did as directed.]

263

1    MJ:    Let the record reflect we've been rejoined by the members. Government, do you

2    wish to publish the videos?

3    TC:    Yes, Your Honor. At this time the government moves to publish what's been

4    marked as Enclosure 1 to the stipulation of fact to the members, with the court's permission.

5    MJ:    Certainly. Members, you're about to see the two videos that were listed as

6    enclosures to your stipulation of fact. You will be given the copies of the videos -- the originals

7    when you go back for your deliberations and a means to view them while you deliberate, if you

8    so wish to view them again. It will be played on the main screen and on each one of the

9    individual screens.

10    [The videos were played for the court members.]

11    MJ:    Government?

12    TC:    Your Honor, first, I apologize. I'm mindful of the members' time, but a matter

13    has come up and the government would request a brief recess.

14    MJ:    How much time do you need?

15    TC:    15 minutes, Your Honor.

16    MJ:    Members of the panel, again, I apologize, but it seems that we need to take up a

17    matter outside your presence. I take the counsel's word on 15 minutes so we'll call you back by

18    1115.

19    The court-martial recessed at 1104, 6 February 2007.

20    The Article 39(a) session was called to order at 1104, 6 February 2007.

21    MJ:    Let the record reflect the members have departed. Please be seated.

22    Government?

1    CC:    It's been testified to by the witness in detail. It also follows and tracks -- there is

2    nothing in exhibit A, that isn't already before the court in the videotapes and the stipulation of

3    fact, that they've heard.

4    MJ:    What are you offering it for?

5    CC:    I'm offering it to show that Lieutenant Watada initiated this process as a

6    responsible officer by going to his command six month before the scheduled deployment in an

7    effort to try and raise those concerns and have them resolved in a responsible manner. That was

8    the testimony as to what he should do and that will be the further testimony, we anticipate, of the

9    governments witness who they're next going to call. This is the evidence of what's already been

10    testified.

11    MJ:    Okay. Government, you said you had no objections?

12    ATC:    No objections.

13    MJ:    Members of the panel, I'm going to enter this piece of evidence into evidence,

14    but it's for a limited purpose. I've already ruled that the order to deploy, if given, is lawful. That

15    is question of law. This exhibit goes to the accused's actions prior to have this resolved. Is that

16    why it's being offered?

17    CC:    That's correct.

18    MJ:    Any objections to that limiting instruction?

19    CC:    No objection

20    MJ:    Without objection, Defense Exhibit A is admitted for the limited purpose I

21    admitted it for.

22    A question from Lieutenant Colonel Brian, Appellate Exhibit XIIL

ORIGINAL
VOL III OF IV

FOR OFFICIAL USE ONLY
VERBATIM¹
## RECORD OF TRIAL²
(and accompanying papers)

of

**WATADA, Ehren K.**
(Name: Last, First Middle Initial)

_____
(Social Security Number)

**First Lieutenant / 1LT**
(Rank)

**HHC, Special Troops
Battalion, I Corps**
(Unit/Command Name)

**US Army**
(Branch of Service)

**Fort Lewis**
(Station or Ship)

By

## GENERAL COURT-MARTIAL

Convened by **COMMANDING GENERAL**
(Title of Convening Authority)

**Headquarters, I Corps and Fort Lewis**
(Unit/Command of Convening Authority)

Tried at

**Fort Lewis, Washington 98433**
(Place or Places of Trial)

on

**5, 6, 7 February 2007**
(Date or Dates of Trial)

Companion Cases:

N/A

¹ Insert "verbatim" or "summarized" as appropriate.  (This form will be used by the Army and Navy for verbatim records of trial only.)

² See inside back cover for instructions as to preparation and arrangement.

DD FORM 490, MAY 2000          PREVIOUS EDITIONS ARE OBSOLETE          Front Cover

US ARMY JUDICIARY
2007 JUN -4 AM 11:13
CLERK OF COURT
RECEIVED

20070535

UNITED STATES ARMY TRIAL JUDICIARY
FOURTH JUDICIAL CIRCUIT
FORT LEWIS, WASHINGTON

| | | |
|---|---|---|
| UNITED STATES | ) | **Ruling of the Court** |
| | ) | |
| v. | ) | Defense Request for Hearing on |
| | ) | Nuernberg Defense and |
| **1LT EHREN K. WATADA** | ) | Government Cross Motions in |
| **U.S. Army** | ) | Limine to Prevent the Defense |
| **HHC, I Corps** | ) | from Introducing Motive Evidence |
| **Fort Lewis, WA  98433** | ) | and to Declare the Deployment |
| | ) | Order Lawful |
| | ) | |
| | ) | **16 January 2007** |
| | ) | |

During the motion session on 4 January 2007 to litigate all motions, both parties were given the opportunity to present evidence on this matter and to make oral argument on the motion. Following are the findings of fact, discussion of the law, and ruling of the court. This ruling will be entered into the Record of Trial as the next Appellate Exhibit in order.

## I. Findings of Fact

I find the following facts by a preponderance of evidence:

1. The Department of the Army tasked the United States Army Forces Command (FORSCOM) to provide a Stryker brigade for service in the U.S. Central Command (CENTCOM) Area of Operations, specifically Iraq, pursuant to a request for forces from CENTCOM.

2. Pursuant to this tasking, FORSCOM issued a deployment order to I Corps for the deployment of the 3rd Stryker Brigade Combat Team (SBCT), 2d Infantry Division.

3. The accused was assigned to the Headquarters and Headquarters Company, 3rd Battalion, 20th Infantry Regiment (HHC, 3/20 INF). HHC, 3/20 INF, is assigned to the 3rd SBCT and was subject to the deployment order of the 3rd SBCT. The accused was scheduled to deploy with HHC, 3/20 INF.

4. The accused received an order from his battalion commander to make the movement with his unit.

5. The accused missed the movement.

**APPELLATE EXHIBIT** XXI

**Head, John M LTC MIL USA**

| | |
|---|---|
| **From:** | Head, John M LTC MIL USA |
| **Sent:** | Monday, January 29, 2007 4:33 PM |
| **To:** | Kuecker, Daniel R CPT MIL USA; 'eric seitz'; 'Mark.Kim@oah.wa.gov'; Van Sweringen, Scott T CPT MIL USA; Beer, Sheldon L CPT MIL USA; Brown, Nick W CPT MIL USA |
| **Subject:** | Article 133 Instructions |
| **Attachments:** | 133 Inst Charge II.doc; 133 Inst Additional Charge.doc |

  

133 Inst Charge     133 Inst Additional
II.doc (30 KB)...      Charge.doc...

All- here is what I am looking at instructing the members as on the 133 offenses

JMH

JOHN M. HEAD
LTC, JA
Military Judge, Fourth Judicial Circuit
DSN 357-0524

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Kuecker, Daniel R CPT MIL USA | Read: 1/29/2007 4:40 PM |
| | 'eric seitz' | |
| | 'Mark.Kim@oah.wa.gov' | |
| | Van Sweringen, Scott T CPT MIL USA | |
| | Beer, Sheldon L CPT MIL USA | Read: 1/29/2007 5:24 PM |
| | Brown, Nick W CPT MIL USA | |

APPELLATE EXHIBIT XXVI

(26)

In the specification of the Additional Charge, the accused is charged with the offense of Conduct Unbecoming an Officer and a Gentleman. In order to find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond reasonable doubt:

(1) That on or about 12 August 2006, at or near Seattle, Washington, the accused made the statement listed in the in the specification on the flyer, or words to that effect;

(2) That the statement was made in public;

(3) That the statement was disgraceful;

(4) That the statement interferes with or prevents the orderly accomplishment of the mission or presents a clear danger to loyalty, discipline, mission, or morale of the troops; and,

(5) That under the circumstances the accused's conduct was unbecoming an officer and a gentleman.

A statement is "made" by a person if it is spoken, uttered, written, published, printed, issued, put forth, or circulated by that person. A statement is made "in public" if it is made openly or known to many.

"Disgraceful" means loss of favor or respect and behavior that merits or causes shame or dishonor or reproach.

Proof of actual interference with or prevention of the orderly accomplishment of the mission is not required.

"Conduct unbecoming an officer and a gentleman" means behavior in an official capacity which, in dishonoring or disgracing the individual as a commissioned officer, seriously detracts from his character as a gentleman or behavior in an unofficial or private capacity which, in dishonoring or disgracing the individual personally, seriously detracts from his standing as a commissioned officer. Unbecoming conduct means misbehavior more serious than slight, and of a material and pronounced character. It means conduct morally unfitting and unworthy rather than merely inappropriate or unsuitable, misbehavior which is more than opposed to good taste or propriety.

In the specification of Charge II, the accused is charged with the offense of Conduct Unbecoming an Officer and a Gentleman.  In order to find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond reasonable doubt:

 (1) That on or about 7 June 2006, at or near Tacoma, Washington, the accused made the statement listed in the in the specification on the flyer, or words to that effect;

(2) That the statement was made in public;

(3) That the statement was disgraceful;

(4) That the statement interferes with or prevents the orderly accomplishment of the mission or presents a clear danger to loyalty, discipline, mission, or morale of the troops; and

(5) That under the circumstances the accused's conduct was unbecoming an officer and a gentleman.

A statement is "made" by a person if it is spoken, uttered, written, published, printed, issued, put forth, or circulated by that person. A statement is made "in public" if it is made openly or known to many.

"Disgraceful" means loss of favor or respect and behavior that merits or causes shame or dishonor or reproach.

Proof of actual interference with or prevention of the orderly accomplishment of the mission is not required.

 "Conduct unbecoming an officer and a gentleman" means behavior in an official capacity which, in dishonoring or disgracing the individual as a commissioned officer, seriously detracts from his character as a gentleman or behavior in an unofficial or private capacity which, in dishonoring or disgracing the individual personally, seriously detracts from his standing as a commissioned officer. Unbecoming conduct means misbehavior more serious than slight, and of a material and pronounced character. It means conduct morally unfitting and unworthy rather than merely inappropriate or unsuitable, misbehavior which is more than opposed to good taste or propriety.

## Head, John M LTC MIL USA

| | |
|---|---|
| **From:** | Kuecker, Daniel R CPT MIL USA |
| **Sent:** | Friday, January 26, 2007 2:26 PM |
| **To:** | Head, John M LTC MIL USA |
| **Cc:** | 'eric seitz'; 'Mark.Kim@oah.wa.gov'; Van Sweringen, Scott T CPT MIL USA; Rudolph, Vanessa D LTC MIL USA |
| **Subject:** | RE: Article 133 Requests |

LTC Head ~

The Government based its Article 133 specifications on Parker v. Levy and U.S. v. Howe in addition to the Benchbook.

CPT Kuecker


Daniel R. Kuecker
Captain, U.S. Army
Trial Counsel
p) 253.967.0716
f) 253.967.0140

-----Original Message-----
From: Head, John M LTC MIL USA
Sent: Friday, January 26, 2007 2:07 PM
To: Kuecker, Daniel R CPT MIL USA
Cc: 'eric seitz'; 'Mark.Kim@oah.wa.gov'; Van Sweringen, Scott T CPT MIL USA; Rudolph, Vanessa D LTC MIL USA
Subject: RE: Article 133 Requests

Government-

You did not answer my question of what case, if any, did you base the specifications on? What did you use for the model Spec?

LTC H

-----Original Message-----
From: Kuecker, Daniel R CPT MIL USA
Sent: Wednesday, January 24, 2007 1:58 PM
To: Head, John M LTC MIL USA
Cc: 'eric seitz'; 'Mark.Kim@oah.wa.gov'; Van Sweringen, Scott T CPT MIL USA; Rudolph, Vanessa D LTC MIL USA
Subject: RE: Article 133 Requests

Roger, Sir.  Here you go:


Daniel R. Kuecker
Captain, U.S. Army
Trial Counsel
p) 253.967.0716
f) 253.967.0140

-----Original Message-----
From: Head, John M LTC MIL USA
Sent: Wednesday, January 24, 2007 1:28 PM
To: Kuecker, Daniel R CPT MIL USA
Cc: 'eric seitz'; 'Mark.Kim@oah.wa.gov'; Van Sweringen, Scott T CPT MIL USA; Rudolph, Vanessa D LTC MIL USA
Subject: RE: Article 133 Requests

Please put this in a more formal format like the defense did earlier. E-mail is not a good

word processor for court pleadings.

LTC H

-----Original Message-----
From: Kuecker, Daniel R CPT MIL USA
Sent: Wednesday, January 24, 2007 1:24 PM
To: Head, John M LTC MIL USA
Cc: 'eric seitz'; Mark.Kim@oah.wa.gov; Van Sweringen, Scott T CPT MIL USA
Subject: Article 133 Requests

Sir ~

I apologize for the delay in the Government's response.  In addition to the analysis below, we agree that the applicable Article 88 instructions are appropriate.


Article 133: Elements on which to instruct

1.  That the accused was a commissioned officer of the United States Armed Forces;

2.  That, (state the time and place alleged), the accused (made a public statement) (caused to be published a public statement)

3.  That the statement included the following words: "See Charge Sheet"

4.  That under the circumstances the accused's conduct was (conduct unbecoming an officer and a gentleman) (disgraceful and dishonorable).


Accompanying Instruction:

The act charged does not have to be committed in a military capacity, or have grown out of some military status or relation.  The act might simply have (impeached the Officer's personal honor), (seriously compromised his character and position as an officer of the Army), (brought scandal or reproach upon the service), (offended so seriously against law, justice, morality or decorum as to expose to disgrace, socially or as a man, the offender), (be of such a nature or committed under such circumstances as to bring dishonor or disrepute upon the military profession), (be of such a nature as to be prejudicial to the good order and discipline of the Armed Forces), (be of such a nature as to bring discredit to the Armed Forces), or (been contemptious towards the President of the United States).  U.S. v. Howe, 17 USCMA, at 177-78.


Definition of disgraceful:

** From the Benchbook, using the Conduct unbecoming language:  Misbehavior more serious than slight and of a material and pronounced character.  It means conduct morally unfitting and unworthy rather than merely inappropriate or unsuitable, misbehavior which is more than opposed to good taste or propriety.


CPT Kuecker

Daniel R. Kuecker
Captain, U.S. Army
Trial Counsel
p) 253.967.0716
f) 253.967.0140

## Head, John M LTC MIL USA

| | |
|---|---|
| **From:** | Kuecker, Daniel R CPT MIL USA |
| **Sent:** | Friday, January 26, 2007 2:41 PM |
| **To:** | Head, John M LTC MIL USA |
| **Cc:** | 'eric seitz'; 'Mark.Kim@oah.wa.gov'; Van Sweringen, Scott T CPT MIL USA; Rudolph, Vanessa D LTC MIL USA |
| **Subject:** | RE: Article 133 Requests |

Sir ~

The opinions did cite the charged Specifications.  That being said, the pending Specifications were not directly modeled after them, but crafted based on all three sources.

The disgraceful definition came from Webster, U.S. v. Howe, and the Benchbook (Conduct Unbecoming).

CPT Kuecker


Daniel R. Kuecker
Captain, U.S. Army
Trial Counsel
p) 253.967.0716
f) 253.967.0140

-----Original Message-----
From: Head, John M LTC MIL USA
Sent: Friday, January 26, 2007 2:30 PM
To: Kuecker, Daniel R CPT MIL USA
Cc: 'eric seitz'; 'Mark.Kim@oah.wa.gov'; Van Sweringen, Scott T CPT MIL USA; Rudolph, Vanessa D LTC MIL USA
Subject: RE: Article 133 Requests

Were there copies of the specifications in those opinions?  What I am asking is did you lift the specifications out of a case or did you make them up?

Also , you do not say where you got your definition for "disgraceful" in your proposed instruction

JMH

-----Original Message-----
From: Kuecker, Daniel R CPT MIL USA
Sent: Friday, January 26, 2007 2:26 PM
To: Head, John M LTC MIL USA
Cc: 'eric seitz'; 'Mark.Kim@oah.wa.gov'; Van Sweringen, Scott T CPT MIL USA; Rudolph, Vanessa D LTC MIL USA
Subject: RE: Article 133 Requests

LTC Head ~

The Government based its Article 133 specifications on Parker v. Levy and U.S. v. Howe in addition to the Benchbook.

CPT Kuecker


Daniel R. Kuecker
Captain, U.S. Army
Trial Counsel
p) 253.967.0716
f) 253.967.0140

-----Original Message-----
From: Head, John M LTC MIL USA
Sent: Friday, January 26, 2007 2:07 PM
To: Kuecker, Daniel R CPT MIL USA
Cc: 'eric seitz'; 'Mark.Kim@oah.wa.gov'; Van Sweringen, Scott T CPT MIL USA; Rudolph,
Vanessa D LTC MIL USA
Subject: RE: Article 133 Requests

Government-

You did not answer my question of what case, if any, did you base the specifications on?
What did you use for the model Spec?

LTC H

-----Original Message-----
From: Kuecker, Daniel R CPT MIL USA
Sent: Wednesday, January 24, 2007 1:58 PM
To: Head, John M LTC MIL USA
Cc: 'eric seitz'; 'Mark.Kim@oah.wa.gov'; Van Sweringen, Scott T CPT MIL USA; Rudolph,
Vanessa D LTC MIL USA
Subject: RE: Article 133 Requests

Roger, Sir.  Here you go:


Daniel R. Kuecker
Captain, U.S. Army
Trial Counsel
p) 253.967.0716
f) 253.967.0140

-----Original Message-----
From: Head, John M LTC MIL USA
Sent: Wednesday, January 24, 2007 1:28 PM
To: Kuecker, Daniel R CPT MIL USA
Cc: 'eric seitz'; 'Mark.Kim@oah.wa.gov'; Van Sweringen, Scott T CPT MIL USA; Rudolph,
Vanessa D LTC MIL USA
Subject: RE: Article 133 Requests

Please put this in a more formal format like the defense did earlier. E-mail is not a good
word processor for court pleadings.

LTC H

-----Original Message-----
From: Kuecker, Daniel R CPT MIL USA
Sent: Wednesday, January 24, 2007 1:24 PM
To: Head, John M LTC MIL USA
Cc: 'eric seitz'; Mark.Kim@oah.wa.gov; Van Sweringen, Scott T CPT MIL USA
Subject: Article 133 Requests

Sir ~

I apologize for the delay in the Government's response.  In addition to the analysis
below, we agree that the applicable Article 88 instructions are appropriate.


Article 133: Elements on which to instruct

1.  That the accused was a commissioned officer of the United States Armed Forces;

2.  That, (state the time and place alleged), the accused (made a public statement)
(caused to be published a public statement)

3.  That the statement included the following words: "See Charge Sheet"

4.  That under the circumstances the accused's conduct was (conduct unbecoming an officer and a gentleman) (disgraceful and dishonorable).


Accompanying Instruction:

The act charged does not have to be committed in a military capacity, or have grown out of some military status or relation.  The act might simply have (impeached the Officer's personal honor), (seriously compromised his character and position as an officer of the Army), (brought scandal or reproach upon the service), (offended so seriously against law, justice, morality or decorum as to expose to disgrace, socially or as a man, the offender), (be of such a nature or commited under such circumstances as to bring dishonor or disrepute upon the military profession), (be of such a nature as to be prejudicial to the good order and discipline of the Armed Forces), (be of such a nature as to bring discredit to the Armed Forces), or (been contemptious towards the President of the United States).  U.S. v. Howe, 17 USCMA, at 177-78.


Definition of disgraceful:

** From the Benchbook, using the Conduct unbecoming language:  Misbehavior more serious than slight and of a material and pronounced character.  It means conduct morally unfitting and unworthy rather than merely inappropriate or unsuitable, misbehavior which is more than opposed to good taste or propriety.


CPT Kuecker

Daniel R. Kuecker
Captain, U.S. Army
Trial Counsel
p) 253.967.0716
f) 253.967.0140

**Head, John M LTC MIL USA**

| | |
|---|---|
| **From:** | Kuecker, Daniel R CPT MIL USA |
| **Sent:** | Wednesday, January 24, 2007 1:58 PM |
| **To:** | Head, John M LTC MIL USA |
| **Cc:** | 'eric seitz'; 'Mark.Kim@oah.wa.gov'; Van Sweringen, Scott T CPT MIL USA; Rudolph, Vanessa D LTC MIL USA |
| **Subject:** | RE: Article 133 Requests |
| **Attachments:** | 133_Proposed Govt Instruction.doc |



133_Proposed Govt
Instruction....      Roger, Sir.  Here you go:

Daniel R. Kuecker
Captain, U.S. Army
Trial Counsel
p) 253.967.0716
f) 253.967.0140

-----Original Message-----
From: Head, John M LTC MIL USA
Sent: Wednesday, January 24, 2007 1:28 PM
To: Kuecker, Daniel R CPT MIL USA
Cc: 'eric seitz'; 'Mark.Kim@oah.wa.gov'; Van Sweringen, Scott T CPT MIL USA; Rudolph, Vanessa D LTC MIL USA
Subject: RE: Article 133 Requests

Please put this in a more formal format like the defense did earlier. E-mail is not a good word processor for court pleadings.

LTC H

-----Original Message-----
From: Kuecker, Daniel R CPT MIL USA
Sent: Wednesday, January 24, 2007 1:24 PM
To: Head, John M LTC MIL USA
Cc: 'eric seitz'; Mark.Kim@oah.wa.gov; Van Sweringen, Scott T CPT MIL USA
Subject: Article 133 Requests

Sir ~

I apologize for the delay in the Government's response.  In addition to the analysis below, we agree that the applicable Article 88 instructions are appropriate.


Article 133: Elements on which to instruct

1.  That the accused was a commissioned officer of the United States Armed Forces;

2.  That, (state the time and place alleged), the accused (made a public statement) (caused to be published a public statement)

3.  That the statement included the following words: "See Charge Sheet"

4.  That under the circumstances the accused's conduct was (conduct unbecoming an officer and a gentleman) (disgraceful and dishonorable).

Accompanying Instruction:

The act charged does not have to be committed in a military capacity, or have grown out of some military status or relation. The act might simply have (impeached the Officer's personal honor), (seriously compromised his character and position as an officer of the Army), (brought scandal or reproach upon the service), (offended so seriously against law, justice, morality or decorum as to expose to disgrace, socially or as a man, the offender), (be of such a nature or commited under such circumstances as to bring dishonor or disrepute upon the military profession), (be of such a nature as to be prejudicial to the good order and discipline of the Armed Forces), (be of such a nature as to bring discredit to the Armed Forces), or (been contemptious towards the President of the United States). U.S. v. Howe, 17 USCMA, at 177-78.


Definition of disgraceful:

** From the Benchbook, using the Conduct unbecoming language:  Misbehavior more serious than slight and of a material and pronounced character.  It means conduct morally unfitting and unworthy rather than merely inappropriate or unsuitable, misbehavior which is more than opposed to good taste or propriety.


CPT Kuecker

Daniel R. Kuecker
Captain, U.S. Army
Trial Counsel
p) 253.967.0716
f) 253.967.0140

**Head, John M LTC MIL USA**

| | |
|---|---|
| From: | eric seitz [eseitzatty@yahoo.com] |
| Sent: | Tuesday, January 23, 2007 12:42 PM |
| To: | Head, John M LTC MIL OSD |
| Cc: | Kuecker, Daniel R CPT MIL USA; Mark Kim |
| Subject: | Watada Article 133 Instruction |

Attachments:     1620755405-PROPOSED DEFENSE INSTRUCTION NO.doc



PROPOSED
NSE INSTRUCTION

                    Col. Head:

Please find attached the defense proposed instruction regarding the Article 133 charge and
specifications.  It might be helpful to utilize this for the purposes of our discussion
later today concerning the defense witness requests.

Eric A. Seitz

Food fight? <http://answers.yahoo.com/dir/index;
_ylc=X3oDMTFvbGNhMGE3BF9TAzM5NjU0NTEwOARfcwMzOTY1NDUxMDMEc2VjA21haWxwxfdGFnbGluZQRzbGsDbWFppb
F90YWcx?link=ask&sid=396545367>   Enjoy some healthy debate in the Yahoo! Answers Food &
Drink Q&A. <http://answers.yahoo.com/dir/index;
_ylc=X3oDMTFvbGNhMGE3BF9TAzM5NjU0NTEwOARfcwMzOTY1NDUxMDMEc2VjA21haWxwxfdGFnbGluZQRzbGsDbWFppb
F90YWcx?link=ask&sid=396545367>

## Head, John M LTC MIL USA

| | |
|---|---|
| From: | Head, John M LTC MIL OSD |
| Sent: | Tuesday, January 23, 2007 4:32 PM |
| To: | 'eric seitz'; 'mark.kim@us.army.mil'; Van Sweringen, Scott T CPT MIL USA; Kuecker, Daniel R CPT MIL USA |
| Subject: | Bertelson Inquiry Sample Script |
| Attachments: | Articl 133 offenses.doc; Bertelson.doc |



Articl 133
ffenses.doc (40 KB..



Bertelson.doc (32
KB)

                    Mr Seitz-

Just so you have a copy.  I do not know if it would rise to a Bertelson issue, but just in
case, this is the type of inquiry that I would do - tailored to meet the circumstances.

Also here is the language from the Bench book.  I have included multiple 133 offenses to
show the language.

JMH

JOHN M. HEAD
LTC, JA
Military Judge, Fourth Judicial Circuit
DSN 357-0524

| Tracking: | Recipient | Read |
|---|---|---|
| | 'eric seltz' | |
| | 'mark.kim@us.army.mil' | |
| | Van Sweringen, Scott T CPT MIL USA | |
| | Kuecker, Daniel R CPT MIL USA | Read: 1/23/2007 4:35 PM |

1

**Head, John M LTC MIL USA**

| | |
|---|---|
| From: | Head, John M LTC MIL OSD |
| Sent: | Tuesday, January 16, 2007 5:32 PM |
| To: | 'eric seitz'; 'mark.kim@us.army.mil'; Kuecker, Daniel R CPT MIL USA; Van Sweringen, Scott T CPT MIL USA |
| Subject: | Elements of the Article 133 offenses |

All-

I would like input on what each side believes the elements (and definitions) of the Article 133 offenses are in this case.

Government, since you crafted the specifications, I assume you have some model upon which you based them upon.

I am especially interested in the definition of "disgraceful statements."

I would like each side's input by 23 January.  Service on the opposing side is required, but response is not necessary.  However, if any response is desired, the due date is 26 January.

Case law, as always, is appreciated.

LTC H


JOHN M. HEAD
LTC, JA
Military Judge, Fourth Judicial Circuit
DSN 357-0524

1

ORIGINAL
VOL IV OF IV

FOR OFFICIAL USE ONLY
VERBATIM[1]
# RECORD OF TRIAL[2]
(and accompanying papers)

of

**WATADA, Ehren K.**
*(NAME: Last, First Middle Initial)*

_____
*(Social Security Number)*

**First Lieutenant / 1LT**
*(Rank)*

**HHC, Special Troops
Battalion, I Corps**
*(Unit/Command Name)*

**US Army**
*(Branch of Service)*

**Fort Lewis**
*(Station or Ship)*

By

# GENERAL COURT-MARTIAL

Convened by **COMMANDING GENERAL**
*(Title of Convening Authority)*

**Headquarters, I Corps and Fort Lewis**
*(Unit/Command of Convening Authority)*

Tried at

**Fort Lewis, Washington 98433**
*(Place or Places of Trial)*

on

**5, 6, 7 February 2007**
*(Date or Dates of Trial)*

Companion Cases:

N/A

US ARMY JUDICIARY

2007 JUN -4 P 12: 47

RECEIVED
CLERK OF COURT

[1] Insert "verbatim" or "summarized" as appropriate. (This form will be used by the Army and Navy for verbatim records of trial only.)

[2] See inside back cover for instructions as to preparation and arrangement.

Front Cover

DD FORM 490, MAY 2000                PREVIOUS EDITIONS ARE OBSOLETE.

20070535

1     MJ:    Understand.  Members, we've run out of witnesses for today.  We will reconvene

2    at 0900 tomorrow, at which point we will proceed on with the defense case.

3        At this point, the court will be in recess until 0900 tomorrow.

4    **[The court-martial recessed at 1546, 6 February 2007.]**

5    **[The Article 39(a) session was called to order at 1043, 7 February 2007.]**

6     MJ:    Court will come to order.

7     TC:    All parties present when the court last recessed are again present, with the

8    exception of the court reporter, Staff Sergeant Wilkie, who has been replaced by Miss Linda

9    Cantrell, who has been previously sworn.  The members are absent.

10     MJ:    In a brief 802 earlier this morning, we had a discussion and I provided an

11    updated copy of my proposed instruction, as to the 133 offense, which was substantially the

12    same, although a couple of grammatical changes from singular to plural as to statements.  And, I

13    raised with the defense counsel an issue with the conflict with the stipulation of fact.  Does that

14    correctly describe the 802 session?

15     TC:    Yes, sir.

16     CC:    Yes.

17     MJ:    I'm going to reopen the inquiry into the stipulation of fact, as a potential issue of

18    mistake of fact has been raised by a proposed instruction by the defense, which has been marked

19    as Appellate Exhibit XXXXV.

20     CC:    I'm going to object to the reopening of the inquiry.  There's no justification or

21    legal basis for that.  I'm inclined to instruct my client not to answer your questions, unless you

1    tell us ahead of time what the questions are and we'd argue the propriety. You are not

2    authorized to ask my client questions anytime you choose to do so.

3        MJ:    Counsel.

4        CC:    We're not going to do that.

5        MJ:    Then this may be real short.

6        CC:    Well, if you give us a legal basis for inquiry -- I thought from the understanding

7    we had in chambers that we were going to argue this issue as to whether it even arises. I'm

8    aware of no authority for you to do this.

9        MJ:    All right. Counsel, what is your basis for mistake of fact? To what element does

10    it go?

11        CC:    It goes to the intent element; purely to the intent element. With respect to the

12    missing movement charge, it has always been Lieutenant Watada's position that he intended not

13    merely to miss movement, but to avoid participating in a war that he considered to be illegal, and

14    that the orders to compel him to go to Iraq, in essence, were compelling him to put himself in a

15    position where he would be supporting and engaging in war crimes.

16        So his specific intent, which is required by the offense, was not the mere intent to miss a

17    movement. His intent, his state of mind, was of a different character, altogether. And, we have

18    argued that repeatedly. We have also, as you know, in the stipulation, if you look at the last

19    paragraph -- sorry, the last sentence of the first paragraph, it says it there, and you approved this

20    language, "With this stipulation; however, the defense does not waive any future claim with

21    regard to the motions and objections previously litigated."

22        MJ:    Correct.

355

1      MJ:    So we are all on the same sheet of music here, when you come back, you're

2   going to let me know if you're going to direct your client answer.

3      CC:    That's correct.

4      MJ:    It's 1055.  Why don't we recall the members at 1230.  If we can stand by at

5   1215.

6      CC:    We'll be here.

7      MJ:    The court's in recess until 1215.

8   **[The Article 39(a) session recessed at 1057, 7 February 2007.]**

9   **[The Article 39(a) session was called to order at 1224, 7 February 2007.]**

10     MJ:    The court will come to order.

11     TC:    All parties present when the court last recessed are again present; the members

12   are absent.

13     MJ:    Defense, have you had an opportunity to discuss what you wanted to discuss

14   with a client?

15     CC:    Yes.

16     MJ:    Have you had enough time to do that?

17     CC:    Yes.

18     MJ:    I will back to my earlier question:  Will you allow me to inquire into your client?

19     CC:    Just so you understand, we will object to any inquiry based on the fact that we

20   don't think there's any legal or other justification for it.  But I will not instruct Lieutenant Watada

21   not to answer your questions.  So he is free to make that determination on his own, based upon

22   our advice.

1          Do you want him to stand?

2          MJ:     No.  He can sit.  Lieutenant?

3          ACC:    Sir.

4          MJ:     Do you mind answering my questions?

5          ACC:    No, I do not, sir.

6          MJ:     Do have a copy of the stipulation of fact in front you?

7          ACC:    I do, sir.

8          MJ:     Please turn to Page 7.  Do you recall our conversation at the beginning of the

9    trial when I talked to you about if I thought that there might be a matter that might be

10   inconsistent with what we've discussed, and that I may have to clarify that matter in the

11   stipulation of fact?  Do you remember that conversation?

12         ACC:    Sir, inconsistent with what I stipulated to in the facts?

13         MJ:     Yes.

14         ACC:    Yes, sir.

15         MJ:     We discussed that during the pretrial discussion of the pretrial agreement

16   portion.  Do remember that?

17         ACC:    I remember, sir.

18         MJ:     Taking a look at Paragraph 4 of the Stipulation of Fact on Page 7.  What does it

19   mean that you intentionally did not aboard the aircraft?

20         ACC:    Your Honor, in that sentence, Paragraph 4, what I was saying is that I

21   intentionally missed the movement because I believed my participation in the war in Iraq would

22   contribute to war crimes, and it would be contributing to what I believed an illegal war.

1    MJ:    So when you talk about you intentionally missed this movement, did you believe

2    you had a duty to make that movement?

3    ACC:    Your Honor, no. I did not feel I had that duty, because I was being ordered to do

4    something I felt was illegal.

5    MJ:    I'm not trying to trick you or trap you in any way. I just want to know what you

6    think.

7    ACC:    I understand.

8    MJ:    What you think this paragraph means.

9    ACC:    Yes, sir.

10    MJ:    Do you believe you have a defense to missing movement?

11    ACC:    Your Honor, I have always believed, especially at this point in time, that I had a

12    legal and moral defense. I realize that the government has made arguments contrary to that, and

13    you've also made rulings contrary to that. It still does not negate my belief that I still have a

14    defense.

15    MJ:    Understand. I'm not trying to force you to make any decisions that force you to

16    enter into the stipulation. You should only enter into this stipulation if you truly want to do so.

17    Do you understand that?

18    ACC:    I understand, sir.

19    MJ:    Do you believe that Paragraph 4 admits every element of the offense of missing

20    movement?

21    ACC:    Sir, no, it does not. Because I had a specific reason for what I intended to do and

22    that was as I stated earlier.

363

1    MJ:    That's where I'm having a problem reconciling that you intentionally did not

2  aboard the aircraft, because if you had no duty to board the aircraft, why would you intentionally

3  not board the aircraft. If you believed you did not have a duty to do so, regardless of whether it's

4  a legal duty or not, what did you believe?

5    ACC:    Your Honor, I did not board the aircraft out of negligence or because I thought it

6  was a mistake. It's because I felt that what I was being asked to do -- by intentionally missing

7  the movement, I could not take part in it.

8    MJ:    I'm going to read you what we covered back in the first session on Monday and I

9  want you to explain to me what you think this meant to you, when I read, "Lieutenant Watada,

10  the government has the burden of proving beyond a reasonable doubt every element of the

11  offenses with which you are charged. By stipulating to the material elements of the offense of

12  missing movement, as you are doing here, you alleviate that burden. That means based upon the

13  stipulation alone and without receiving any other evidence this court can find you guilty of the

14  offense to which this stipulation relates. Do understand that?" And you told me you did. What

15  does that mean to you because you stipulated to every element of the offense of missing

16  movement by design?

17    ACC:    Sir, yes, I do understand that I stipulated, and I believe -- I understand the

18  arguments that the prosecution was making. But I also understand that there is additional

19  evidence that could go to my defense.

20    MJ:    Government, did you believe this was a confessional stipulation, as

21  contemplated by RCM 811?

364

1    TC:    We did, Your Honor.  Further, we would just like to point out that he has -- the

2    accused has admitted to every element of the offense.  His subjective beliefs in the legality of the

3    order are irrelevant and his motives for missing the movement are absolutely irrelevant, as

4    provided in your previous ruling, and he would have -- so, at this point, I guess I'm just at a loss.

5    MJ:    Defense, do you believe that this stipulation is a "confessional stipulation," as

6    contemplated by Rule for Court-Martial 811?

7    CC:    As far as it goes, it is a stipulation of fact, which was intended to relieve the

8    government of proving certain facts; however, it has always been our position that Lieutenant

9    Watada has a defense based upon the motions that we raised earlier, which you have precluded

10    us from raising at trial, and we are not altering our position in that respect, nor did we alter it in

11    this stipulation, as I pointed out to you in the preparatory paragraph in the last sentence which

12    says that this stipulation is being made subject to prior arguments and without waiving those

13    arguments.

14    MJ:    That's a completely different matter, then.  Do believe that this is the

15    confessional stipulation, as contemplated by Rule for Court-Martial 811?

16    CC:    I believe that you and the government could interpret it as that and that the

17    government could argue, based upon this stipulation, that they don't have to prove anything

18    further based upon their theory of the case.  Our theory of the case is somewhat different.

19    MJ:    Thank you.  Government, did the Convening Authority believe that this was a

20    confessional stipulation of fact?  Was that presented to him in that manner?

1        TC:     Your Honor, honestly, right now, I'm -- of course, I'm a representative of the

2    Staff Judge Advocate. I did not present this to the convening authority, nor was I present when

3    this was presented.

4        MJ:    What I'm asking is did the government enter into this stipulation and into this

5    pretrial agreement, believing you had a confessional stipulation of fact; believing that there was

6    any -- as to only Charge I, that there was any material fact not admitted?

7        TC:     Your Honor, we believe that Paragraph 4 provides evidence of every material

8    fact in Article 87. In other words, we have evidence to prove every element in Article 87. We

9    understand the defense's position that they believe they have a defense. Obviously, we disagree.

10    But, we believe that we have met our burden by ----

11       MJ:    Well, understand that we can't have disagreements as to material elements of a

12    pretrial agreement, and we cannot have disagreements as to what the pretrial agreement means. I

13    covered this, and I did of *Bertelson* inquiry, which is a confessional stipulation inquiry, and I

14    inquired as to, "Do both counsel agree to the stipulation, the uses of the stipulation and the

15    pretrial agreement and my interpretation of the pretrial agreement." That's where I'm having

16    problems is -- are we -- I'm not seeing that we have a meeting of the minds, here. And, like any

17    contract, if there is not a meeting of minds, there is not a contract. Tell me where I'm missing

18    something, government? I'll let you answer in just a minute, defense.

19       TC:     In terms of the four corners of this agreement, I think there is a meeting of the

20    minds. I think both parties agreed to the contents of Paragraph 4 of the Stipulation of Fact. That

21    goes to the "what" of the offense.

1       The defense would want to raise the issue of "why" as a defense, and we would object to

2   that. But in terms of what's contained in agreement, I think -- obviously, let the defense chime

3   in, but believe there was a meeting of the minds.

4       MJ:     Counsel, under *Bertelson*, don't have to do, essentially, a care inquiry with the

5   accused?

6       TC:     That's correct. And that's also set forth in *Enlow* but ----

7       MJ:     Did he not -- has he not set up matters inconsistent with -- he believes he has a

8   defense to what he has stipulated to in a confessional stipulation. Whether it's a valid defense or

9   not, government, isn't the point.

10      TC:     Your Honor, I don't see it. I mean, the subjective beliefs of the accused and that

11  he has a defense are not relevant.

12      MJ:     Counsel, it's just like if he pled not guilty, but as to this offense, you have to treat

13  it essentially like a guilty plea, because he admits to all the facts surrounding the offense. That's

14  what *Bertelson* is about. That's what all that case law is about. It's so you don't shortcut the

15  system.

16      TC:     Your Honor, I don't see how this is short cutting the system. In another case, the

17  accused can plead to the elements of the crime and then still get up and say, "But I have a

18  reason." He has pled not guilty to the offense.

19      MJ:     Thank you. Defense, do you wish to be heard?

20      CC:     Just briefly. This is a stipulation; it's not a guilty plea. It's a stipulation of facts.

21  That is to be judged differently. The impact or the effect of the stipulation, the parties can

22  disagree about. And we apparently do disagree, but Lieutenant Watada's pleading not guilty.

367

1    He's always made that clear. And yet, he is willing to plead to the facts which he understood

2    could be sufficient on which to find him guilty, as you instructed. He knows that based upon the

3    legal rulings and determinations the court makes. But he still maintains notwithstanding those

4    rulings that he is entitled to plead not guilty for the reasons that he has stated to you.

5         MJ:     What does "uncontradicted" mean? What uncontradicted material facts? He's

6    essentially pled guilty to missing movement by design by admitting to every fact necessary.

7         CC:     That's a legal conclusion, which you're drawing, and which you may be entitled

8    to draw, subject to whatever legal rulings you make. It's not a legal ruling which we agree with

9    and it's not a conclusion that we will draw no matter how much you argue to us about it we will

10   not draw that conclusion, and we will also appeal it, if necessary.

11        MJ:     I'm just trying to understand how his subjective belief fits into this because he's

12   raising that he doesn't believe he intentionally missed the movement.

13        CC:     What he's said to you in his answers to your questions is that the act of not

14   getting on the plane was not a mistake. He did that deliberately. But he did it for a specific

15   reason out of a specific intent with which the government does not agree and which the

16   government deems to be irrelevant, and which you have ruled is not relevant. That's all he's

17   saying. And he's made that argument from the beginning, long before he actually failed to get

18   on the plane. That's simply our position.

19        MJ:     I understand your position, but I just go back to when I advised the accused --

20   and he agreed. Stipulated to the material elements; he stipulated to the material elements of this

21   offense. And now you're saying that he's not stipulated to the material elements of the offense.

1    CC:    Well, he's saying what he's saying, which is essentially that he's stipulating as far

2    as he's able and willing to go with the understanding that the facts to which he's stipulating

3    might be sufficient to dispose of that charge against him based upon the rulings of the court.

4    And that's as far as we can go.  And he understands that.

5    MJ:    Government, do you have anything else you wish to be heard on this issue?

6    TC:    Your Honor, I'd request additional time to prepare to submit matters to you on

7    this issue.

8    MJ:    Well, we've had an hour.  How much more time do you need?

9    TC:    At least 15 minutes, Your Honor.

10    MJ:    Do you understand my problem, government, with this?

11    TC:    Frankly, Your Honor, no.

12    MJ:    There is a material misunderstanding between the parties of what this stipulation

13    is.  You believe that is a confessional stipulation; that it admits every element.  The defense does

14    not believe that.  Let's go back to contracts.  Is that a meeting of the minds?

15    TC:    Which element of the offense does the defense not believe is met by the

16    stipulation?

17    MJ:    Well, one, the intent element.  And I gather just from my last discussion that

18    Lieutenant Watada didn't think he had the duty to move because he believes -- whether it's a

19    legal defense or not, it's not relevant.  That he believes he did not have the legal duty to move

20    because he believes that the war is unlawful.  Did I correctly state -- repeat what you said?  That

21    you don't believe you had the duty to move because -- to make that movement, because the war

22    was unlawful?

1      ACC:     Yes, Your Honor.

2      MJ:      Because that's what your counsel has been raising all along, and that's what we

3      had a motion session about.  That's two elements ----

4      TC:      But, you've already ruled on that, Your Honor.

5      MJ:      It's the intent element and it's the -- government, it's 1245.  I'll give you until

6      1300.  You said you needed 15 minutes; I'll give you 15 minutes.  I don't see where there is a

7      meeting of the minds here.  I see that there is an inconsistency in the stipulation of fact.  I don't

8      know how I can continue to accept Prosecution Exhibit 4, as Prosecution Exhibit 4, as we stand

9      here now.

10      At this point I'm thinking we're going to have to reset a new trial date and those other

11      charges will come back.  Why don't we take 15 minutes.  We'll let you come back, and if you've

12      got something more you want to present I'll be glad to listen to it, but right now that's my

13      thought.  And, when we come back, I'll make my ruling.

14      The courts or recess until 1305.

15      **[The Article 39(a) session recessed at 1249, 7 February 2007.]**

16      **[The Article 39(a) session was called to order at 1312, 7 February 2007.]**

17      MJ:      The court will come to order.

18      TC:      All parties present when the court last recessed are again present; the members

19      are absent.

20      MJ:      Lieutenant Watada, do you have the enclosure to Prosecution Exhibit 4 for

21      identification in front of you?

22      ACC:     Let me check, sir.

370

1    [The accused searched for and located the document.]

2         MJ:    What does that mean to you, that document?

3         ACC:    It means I was to deploy with my unit, sir.

4         MJ:    What does that mean?

5         ACC:    It means to deploy with my unit. [Consults with counsel.] Excuse me, sir. As it

6    says, "Draw my equipment, report to the manifest, get on the bus and deploy to operation Iraqi

7    freedom."

8         MJ:    What did you understand that to mean? I understand what the words are, but

9    what did that mean to you?

10        ACC:    To me, sir, it means to participate in a war that I believe to be illegal.

11        MJ:    Mr. Seitz, defense counsel, one more time: Do you believe that Prosecution

12    Exhibit 4 is a confessional stipulation, as to Charge I?

13        CC:    No, I do not. I believe it's a stipulation of fact.

14        MJ:    Government, I understand you needed some more time. Have you had enough

15    time? Did you have the time that you needed?

16        TC:    We did, Your Honor. Thank you. The government concurs, and believes this

17    also to be a stipulation of fact.

18        MJ:    Does it not cover every element of the offense? Is this not a confessional

19    stipulation of fact? How can I accept a confessional stipulation of fact under *Bertelson* where the

20    defense doesn't concur that it's a confessional stipulation of fact?

371

1  TC: The government's understanding is that it is a stipulation of fact; the accused has

2 not pleaded guilty to the offense and if he evidence to present that would be able to prove that he

3 is not guilty of the offense, then the court should hear that evidence.

4  MJ: Government, now, we went through a whole inquiry about this, didn't we?

5  TC: We did.

6  MJ: Went through, as I read to the accused, that this stipulation of fact alleviated the

7 burden. I don't know how we get there from here. Because it's a stipulation of fact that the --

8 confessional stipulation of fact as to the charge -- the defense doesn't agree that it's a

9 confessional stipulation of fact. We've got the immovable object meeting the irresistible force.

10  TC: Your Honor, I don't know what else to say other than what's already been said.

11 The parties agree that the contents of the stipulation -- the parties agree that it is a stipulation of

12 fact.

13  MJ: That's not the issue. At this point I'm reconsidering Prosecution Exhibit 4 and

14 rejecting the stipulation of fact. It's now Prosecution Exhibit 4 for identification, as the

15 government has closed its case. Government, do you wish to reopen your case, or do you wish,

16 as we now have a material breach of the pretrial agreement, do you wish to request a mistrial

17 because at this point we don't have evidence on every element?

18  TC: Your Honor, again, apologies to the court. This is not a decision I'm prepared to

19 make at this time. I need another recess to discuss it with the Staff Judge Advocate.

20  MJ: Certainly. I understand this is a rather significant decision, as I will allow you to

21 reopen your case as there's been no defense evidence presented at this point. And do to the

22 posture of this case, and due to the way this issue has come up ----

1      TC:    Your Honor, if we were to -- just for clarification sake, if we were to reopen the

2  case and proceed forward, what would the instruction to the panel be in regards to Prosecution

3  Exhibit 4?

4      MJ:    They would disregard it in the entirety.  That's the problem we have is this is that

5  how are we going to unring that bell?

6      TC:    Request a recess at this time, Your Honor.

7      MJ:    About how much time do you think you'll need?  And, if you say, "Give me an

8  hour," but come back and say, "I need more."  If you say, "Give me 30 minutes, but be flexible,"

9  I'm fine with that.  I understand that there are many issues to be considered here.

10     TC:    I say 30 minutes, Your Honor, but be flexible.

11     MJ:    Semper gumbi.  Defense, did you have ----

12     CC:    No.  We'll wait.

13     MJ:    Bailiff, while we're going to be in recess, let the panel know that we'll be -- I'll

14  be generous right now and say, "Tell them it'll be at least an hour."

15  [The bailiff indicated he understood.]

16     MJ:    The court's in recess.

17  **[The Article 39(a) session recessed at 1323, 7 February 2007.]**

18  **[The Article 39(a) session was called to order at 1404, 7 February 2007.]**

19     MJ:    The court will come to order.

20     TC:    All parties present when the court last recessed are again present; the members

21  are absent.

1    MJ:    During a very brief 802, the government asked questions about the stipulation of

2    fact at which point the defense counsel stated, and I agree, "Let's take this up on the record."

3    Does that summarize the contents of the 802? And I also stated that would allow the defense,

4    since this was a -- I deem this to be a confessional stipulation of fact, that they would have the

5    opportunity to withdraw from it, if they wish. Does that accurately summarize the contents of

6    the 802 session?

7    TC:    Yes, sir.

8    CC:    It does accurately summarize the discussion we had, and I would advise the

9    court that we do not wish to withdraw from this stipulation.

10    MJ:    Government, what's your druthers? At this point, I certainly entertain a motion

11    for a mistrial and I'll set a new trial date. At this point, I believe there is a breach of the pretrial

12    agreement, which would allow the government to resurrect the additional charges that were

13    dismissed because we have not reach the determination point, as required, for a dismissal with

14    prejudice. I believe the government was, at 802, asking about the attempt element that's in there.

15    But if you review the entirety of the stipulation of fact, that I think even a casual reading of the

16    stipulation -- every statement in there goes to the, "I do not intend to deploy." I don't know how

17    we get around that. What we're left with is I can instruct the members, if the government wishes

18    to go forward. I know the government does not have all of their witnesses that they would have

19    called for the other offenses. So, government, what's your choice?

20    TC:    Your Honor, at this point, the government moves for mistrial.

21    MJ:    Defense, do you want to be heard?

22    CC:    Yes. We would oppose the motion.

1    MJ:    Counsel, I have the week of 19 March available.

2    CC:    Can we first determine, are you declaring a mistrial?

3    MJ:    I'm going to declare a mistrial.

4    CC:    Judge, I regret to tell you, but the earliest I'm available because of other trials

5    between now and the next several months is the week of July 16th.

6    MJ:    I'm going to set this trial, and then just like in a civilian world, I'm sure you do

7    conflict letters to various courts when they come out with the calendar ----

8    CC:    These are all set.

9    MJ:    I understand.

10    CC:    I can give you each week, week by week -- in some instances, I'm double-set.

11    MJ:    And I understand that and that's why I wish that we do this in writing, formally,

12    rather than just telling me. I'm going to set it, and then you'll have the opportunity to

13    demonstrate that good cause for a continuance.

14    CC:    I'd rather do it now. And, because of the fact ----

15    MJ:    I know you'd rather do it now, but ----

16    CC:    Let me explain additionally why. Because we also have a Reservist here who's

17    not on active duty and he's got a civilian job, and he's got a calendar, as well. So, our concerns

18    are twofold. Lieutenant Watada is not represented here during that period of time, and so we

19    need to make significant arrangements. If you're going to set a date, what I would request that

20    you do is that you at least not set it before the week of May 7th, which will give me an

21    opportunity, perhaps, to adjust my calendar. But, I want to tell you that it looks like it's going to

22    be very difficult to do. But, if you would set May 7th, then that is a possibility.

375

1   opinions on this case with anyone, unless required to do so by order of a court.  Does any

2   member have any questions about that instruction?

3   [The members indicated a negative response.]

4       MJ:    Apparently not.  Thank you for your attendance and service.  I believe the ----

5       CC:    I wanted to ask for clarification.  Is it permissible for counsel to talk to the court

6   members?

7       MJ:    No.  [To the panel members]  You are not to discuss it with counsel, or the

8   accused, members of the press; no one, except by an order by a court.

9       CC:    In addition to that, I want to address you directly.  It's my custom in closing

10   argument, but we can get that far, to thank the court members for your service on behalf of the

11   defense, and I certainly want to do that, particularly your patience today.  Thank you.

12       MJ:    Thank you for your attendance and service.  You are excused.

13   **[The court-martial adjourned at 1421, 7 February 2007.]**

14   **[The Article 39(a) session was called to order at 1421, 7 February 2007.]**

15

16       MJ:    This Article 39(a) session is called order.  I think I formally did this, but based

17   upon the breach of the pretrial agreement by my rejection of the accused stipulation of fact, of

18   Prosecution Exhibit 4, the government motion for a mistrial is granted.

19       As that concludes this court-martial, there are some procedure matters that the

20   government must do to send this back to court.  This trial is penciled in for 19 March.  Again,

21   defense counsel, if it's possible for you to give me the dates beforehand, the conflicts, that's