

Hon. Benjamin H Settle

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10
11
12    1LT EHREN K. WATADA,

13                          Petitioner,

14              v.                                    No.  C07-5549-BHS

15    LT.COL. JOHN HEAD, Military Judge,              EXCERPTS OF RECORD OF TRIAL II
      Army trial Judiciary, Fourth Judicial District;   DATED 6 JULY 2007
16    LT. GEN. CHARLES JACOBY, Convening
      Authority, Ft. Lewis, Washington,

17
                              Respondents.
18
19
20
21
22
23
24
25
26
27
28

EXCERPTS OF RECORD OF TRIAL II
DATED 6 JULY 2007 (C07-05594-BHS)

ORIGINAL
VOLUME I of II

VERBATIM[1]
# RECORD OF TRIAL[2]
(and accompanying papers)

of

WATADA, EHREN K.                    1st Lieutenant O2
(NAME: Last, First Middle Initial)        (Social Security Number)              (Rank)

HHC, Special Troops Battalion                    Fort Lewis,
I Corps & Fort Lewis            US Army          WA 98433-9500
(Unit/Command Name)          (Branch of Service)      (Station or Ship)

By

## GENERAL COURT-MARTIAL

Convened by **COMMANDING GENERAL**
(Title of Convening Authority)

## Headquarters, I Corps and Fort Lewis
(Unit/Command of Convening Authority)

Tried at
Fort Lewis, Washington 98433          on          6 July 2007
(Place or Places of Trial)                                (Date or Dates of Trial)

Companion Cases:  None.

---

[1] Insert "verbatim" or "summarized" as appropriate.  (This form will be used by the Army and Navy for verbatim records of trial only.)

[2] See inside back cover for instructions as to preparation and arrangement.

DD FORM 490, MAY 2000          PREVIOUS EDITIONS ARE OBSOLETE.          Front Cover

1      MJ:    And that would be correct. And I was just merely stating in there, as just a road

2      map ahead generally, we discuss all motions at once and not to say whether this is an appeal of

3      right, whether it's an appeal of an extraordinary writ under the UCMJ, and we don't cross that

4      bridge until we get there.

5      CC [Mr. LOBSENZ]:  So you're a linear thinker, too.  Okay.

6      MJ:    And as far as this there was no--the only decision that was made back there was, I

7      decided that I would swear Mr. Kagan and that Mr. Lobsenz would affirm, as is his right.  But

8      there was no substantive decisions.  It was merely a procedural discussion.  And defense counsel

9      is quite correct in directing things be placed upon the record, rather than in the 802.

10          We discussed that the double jeopardy motion, based on the mistrial, as there are

11     two double jeopardy:  One is couched as a--in the unreasonable multiplication of

12     charges/multiplicity, but that's really under a separate theory under double jeopardy; and--but

13     before we get to the motions, I do want to cover with your client the stipulation of fact for this.

14     Just get that bit of housekeeping out of the way.

15          Mr. Kagan, does your client have a copy of prosecution exhibit--well, this really

16     should be an appellate exhibit rather then a prosecution exhibit, so there's no confusion that this

17     would ever be entered at trial on the merits.

18     CC [Mr. LOBSENZ]:  We're talking about today's stipulation of fact?

19     MJ:    Yes.

20     CC [Mr. LOBSENZ]:  We have a copy of that in front of us, Your Honor.

1     MJ:   We need to have that remarked as an appellate exhibit, because this is specifically

2   addressing these motions rather than issues directly at trial.  Government, did you think this

3   was--this exhibit would be entered into-- --

4     TC:   Government had no intention to have those marked as a prosecution exhibit.  Just

5   miscommunication, sir.

6     MJ:   Okay.

7     CC [Mr. LOBSENZ]:  Would this be exhibit--Appellate Exhibit XXII now, for the

8   record?  Is that right?

9     REP:   [Retrieved the exhibit from the military judge and remarked it as Appellate

10  Exhibit XXII.]  Yes.

11     MJ:   Does your client have a copy of Appellate Exhibit XXII in front of him?

12     CC [Mr. KAGAN]:  Yes, Your Honor.  Although, I don't think we have with us the

13  supporting orders that were attached.  We have the stipulation but I don't believe I took them

14  with me.

15     MJ:   Okay.

16     CC [Mr. KAGAN]:  Thank you.

17     CC [Mr. LOBSENZ]:  Sir, for our clarification, you identified that you had perhaps

18  marked additional items as appellate exhibits.  We were only up to Exhibit XXII and we would

19  just like to know what Exhibit XXI is.

20     MJ:   XXI would be the email from Colonel Boudreau.

21     CC [Mr. LOBSENZ]:  Okay.  Thank you, sir.

1    RECORDER: No, sir. XX is the email from Colonel Boudreau and XXI is the double

2    jeopardy motion.

3    [The military judge handed Appellate Exhibit XXII to Captain Kim, Captain Kim showed it to

4    the accused, and then returned it to the military judge.]

5    MJ:    Leave this with your client so he has the full copy. I don't need it.

6    Lieutenant Watada, before signing this stipulation, did you read it thoroughly?

7    ACC: I did, sir.

8    MJ:    Do you understand the contents of the stipulation?

9    ACC: I do, sir.

10    MJ:    Do you agree with the contents of this stipulation?

11    ACC: I do, except in paragraph 1. From Korea, I was assigned to Bravo Company, 5th

12    Battalion, 20th Infantry Regiment, not Headquarters and Headquarters Company.

13    MJ:    We'll make a pen-and-ink correction to that, to B Company. Before signing this

14    stipulation, did your defense counsel explain the stipulation to you?

15    ACC: Yes, sir.

16    MJ:    Do you understand you have the absolute right to refuse to stipulate to the

17    contents of this document?

18    ACC: I do, sir.

19    MJ:    You should enter into this stipulation only if you believe it is in your best interest

20    to do so. Do you understand that?

21    ACC: Yes, sir.

49

1       MJ:    Lieutenant Watada, I want to ensure that you understand how this stipulation is to

2  be used.  When counsel for both sides and you agree to the contents and to the facts therein, the

3  parties are bound by the stipulation and the stipulated matters are facts in evidence to be

4  considered with all the other evidence in this motion session.  Do you understand that?

5       ACC:  Yes, sir.

6       MJ:    Do understand that I will use these facts to make rulings on motions?

7       ACC:  Yes, sir.

8       MJ:    And do you agree to that use?

9       ACC:  Yes, sir.

10       MJ:    Lieutenant Watada, knowing what I have told you and what your defense counsel

11  earlier told you about this stipulation, do you desire to still enter into this stipulation?

12       ACC:  Yes, sir.

13       MJ:    Do counsel concur in the contents of the stipulation?

14       CC [Mr. LOBSENZ]:  We do.

15       TC:    Yes, sir.

16       CC [Mr. KAGAN]:  Yes, sir.

17       MJ:    Okay.  Can I get the stipulation please and I can make the--I take it no party has

18  objection to me striking through "Headquarters and Headquarters Company" and changing that

19  to B Company?

20       CC [Mr. KAGAN]:  No objection.

21       TC:    No objection from the government, Your Honor.

1   [The military judge made the change to Appellate Exhibit XXII.]

2        MJ:    Lieutenant Watada, I just want to make sure, since we dealt with a different type

3   of stipulation in the last trial--kind of why we're here with this trial. This is a completely

4   different type of stipulation than the other one. This is only to be used for the motions session.

5   This stipulation, should we go to a members trial with members, this stipulation would not go

6   back with the members. Do you understand that?

7        ACC:  I understand, sir.

8        MJ:    I only bring this up because we had that other type of stipulation of fact and this is

9   a very limited stipulation. All right, I have read the motions and the responses and I'll state for

10  the record that I'm granting to file out of time their motion for--to file their motion for double

11  jeopardy.

12          And, defense counsel, do you have argument?

13       CC [Mr. LOBSENZ]: I do.

14       MJ:    Again, I've read the motion, so the court would appreciate not reading the motion

15  to the court.

16       CC [Mr. LOBSENZ]: I won't.

17       MJ:    Thank you.

18       CC [Mr. LOBSENZ]: Your Honor, what I will do is start by just summarizing some of

19  the general principles inherent that are protected by the double jeopardy clause and then I will

20  proceed to how they were applied or misapplied in this case.

21       MJ:    Certainly.

1    CC [Mr. LOBSENZ]:  first of all, the basic, underlying protection of the former jeopardy

2    [sic]  part of the double jeopardy clause and of Article 44(a), is that the government gets only

3    one chance to prove its case.  It doesn't get repeated chances.  It doesn't get to start up,

4    experiment, see how things are going, and then say, "You know what, we'd like to stop, come

5    back and do this later on a different occasion," thereby not doing--thereby potentially doing two

6    things:  One, wearing the defendant down by just subjecting him to multiple trials regardless of

7    what the outcome of the final trial is; and also potentially improving its case or sharpening its

8    skills or changing its tactics in some way, or possibly maybe just getting different panel

9    members.  The government doesn't get to do that.  And when the government and when court

10   grants the government essentially, by declaring a mistrial, the second chance to start over, the

11   good faith of either the court or the government in requesting a mistrial is completely irrelevant.

12   And that is established by the U. S. Supreme Court in the *Jorn*, J-O-R-N, *Jorn* case.

13          In order to depart from the normal rule that the government only gets one

14   chance--to depart from that and to give the government a second chance to start over, over the

15   objection of the defendant, there must be what, since the *Perez* case, has been called "manifest

16   necessity."  Both the U. S. Supreme Court and the military appellate courts have described a

17   mistrial in this situation, over the defendant's objection, as a drastic remedy which can only be

18   ordered to prevent a complete miscarriage of justice and that it can only be done if great

19   deference is paid to the defendant's desire, if he expresses it, not to have a mistrial and to finish

20   the trial.  That is the most important factor in deciding whether or not to declare a mistrial, is the

21   defendant's desire to go forward.  And that again is not only recognized by the U. S. Supreme

52

1    Court in the *Dinitz* case, D-I-N-I-T-Z, but also in military appellate court cases such as the

2    *Donley* case, which the government cited.

3              Another very important factor here about manifest necessity, is whose burden it is

4    to prove it. It's not the defense's burden to prove that there wasn't manifest necessity; it is the

5    government's burden to prove that there was. And it is a--it's been described by the U. S.

6    Supreme Court as a heavy burden with a high degree of necessity. And necessity means there

7    aren't any other alternatives. So there aren't any other reasonable alternatives and that they have

8    been explored and rejected.

9              The *Ghent* case, if I'm pronouncing that right, G-H-E-N-T, military justice case

10   also, recognizes the same thing that less drastic alternatives to just simply starting over, avoiding

11   mistrial, have to be explored. There was a period of time in briefing not before you, Your

12   Honor, but filed in the Army Court of Criminal Appeals, in which the government was

13   contending that jeopardy did not attach in this case. I believe the government is not pressing that

14   point any further. Is that correct?

15       MJ:    Well, government will speak for itself.

16       CC [Mr. LOBSENZ]:  Well, they will speak for themselves. But if they do for some

17   reason to persist in that I would just submit that it is completely wrong. And has been

18   established since a case which did involve a military trial. It was established in *Wade versus*

19   *Hunter*, which was a military court-martial. The U. S. Supreme Court decided that case in 1949.

20   "Jeopardy attaches when the jury is sworn and when the panel members are sworn." That's been

21   the rule continuously since then. It was recognized again by the U. S. Supreme Court in the

1    *Serfass*, S-E-R-F-A-S-S, case.  Again in the *Crist* case, C-R-I-S-T.  And it's been followed by

2    military courts routinely for more than the last fifty years.

3          So to apply these principles to this case one must ask:  Did the government make

4    a showing and was that showing placed in the record as to there being manifest necessity for

5    declaring a mistrial on all counts?

6      MJ:    Well, let me direct kind of [sic] this.  How does the fact that this was a pretrial

7    agreement case, how does that affect the analysis of this?  In other words:  Isn't the

8    government--aren't they allowed to get the benefit of their bargain?  Because it's not your

9    normal--you would have to admit, this is not a normal mistrial case where--that there wasn't an

10   interplay between the parties just to get this into court.

11     CC [Mr. LOBSENZ]:  I think you're asking me two things.  Perhaps I'm not

12   understanding you correctly.

13          As far as, how does it affect the analysis of the double jeopardy issue or former

14   jeopardy?  It doesn't affect it at all.  As far as how does it affect the issue of consequences of

15   setting aside the stipulation of fact?  It does affect that, in the sense that if you set aside the

16   stipulation of fact, since it was interlocked with the plea--with the agreement, that because of the

17   stipulation of fact, there would be a dismissal of two charges, it does affect that agreement.

18     MJ:    Well, doesn't that go to the manifest necessity?

19     CC [Mr. LOBSENZ]:  No.

20     MJ:    Why not?

1    CC [Mr. LOBSENZ]:  Well, I told you I was a linear thinker and that is at the very

2    end--tail end of the analysis when we talk about alternatives.  So if I could, I'd like to start first

3    with there was the first assumption.  The first assumption the court made was "I can no longer

4    accept this stipulation of fact."  If that assumption is wrong, there is no manifest necessity.

5    There is no need to do anything at all.

6    MJ:    Well----

7    CC: [Mr. LOBSENZ]:  So that's my first starting point and being the linear thinker that I

8    am----

9    MJ:    Let me--since we're at that first starting point.  Isn't also part and parcel with that

10    that there was a disagreement about the stipulation of fact?  Is that your client didn't understand

11    what the meaning and effect of that pretrial agreement was and how that stipulation of fact could

12    be used?

13    CC [Mr. LOBSENZ]:  You were apparently of the opinion that our client did not

14    understand those things, but no one else was.  Everyone told you that there was no problem with

15    it and I believe that Mr. Seitz, my predecessor, told you that Mr. Watada has always understood

16    what your rulings are, he just simply doesn't agree with them.  And that's--that remains true.

17    There was never a point when he didn't understand.  There was--it was always a point in which

18    he didn't agree with your rulings as to some of what--it was a disagreement as to what are the

19    elements of the charge of missing movement by design, but there was never at any time a failure

20    of Lieutenant Watada to understand.

55

1     MJ:    Well, as far as the duty to get on the plane, that was kind of what we're--kind of

2    the crux of that. I had previously ruled--in your motion, you said that there were still elements

3    that had yet to be proven and that the government had actually put evidence on some of those

4    elements, correct?

5     CC [Mr. LOBSENZ]: The government did do that.

6     MJ:    Well, the government's entitled to prove their case in any way that they wish

7    within the rule of law, correct?

8     CC [Mr. LOBSENZ]: They're entitled beyond-- --

9     MJ:    To go beyond the stipulation of fact.

10     C--to go beyond the stipulation and even if the stipulation had been a confessional

11   stipulation, which it wasn't, but even if it had been, if they had wanted to present more evidence

12   they could. The point was-- --

13     MJ:    Because the-- --

14     CC [Mr. LOBSENZ]: The point was that -- --

15     MJ:    --panel could just simply say, "We don't care what the stipulation of fact says."

16   So they could find him not guilty. Because that's a purview of the panel is that they get to

17   decide what the verdict is, correct?

18     CC [Mr. LOBSENZ]: They could--the government could do that if they wanted.

19     MJ:    Now, let's--let me go and--let's talk about the issue on the duty. If I had ruled as

20   a matter of law that the order to move was lawful, what element was left?

1     CC [Mr. LOBSENZ]:  You could rule that all you like, Your Honor, with due respect, but

2     it remains an element and unless there's something in that stipulation where Lieutenant Watada

3     says "I stipulate that I was required in the course of duty to move," then he hasn't stipulated to it.

4     And you can look at that stipulation until the cows come home, and there's nothing in there

5     about that nothing. Nothing. Nothing. And because there is nothing in there about that duty, the

6     law is and the law as prescribed by the *Kepple* court, "If it does not admit all the elements, then

7     it's not a confessional stipulation."

8          MJ:     I'm getting at the--if that element has been already decided.

9          CC [Mr. LOBSENZ]:  It may have been decided by you but it wasn't stipulated to by

10     him. Therefore it wasn't a confessional stipulation. That's the holding of *Kepple*. You can rule

11     all you like that it was established--and it's not clear to me whether you were saying it was an

12     element or it wasn't an element. But you said "I'm not going to let you present any evidence

13     about this." About whether or not it was lawful, unlawful, that's fine. But he didn't admit

14     that--that his--that the order was something that he was required in the course of duty to abide

15     by. He did not admit that and that's the end of the ballgame. That's not a confessional

16     stipulation from that point forward. And we have cited those cases and the government has

17     never responded to those cases. We have cited those cases in which appellate courts reversed

18     guilty pleas, because they did not cover that element. They have not responded to those cases.

19               In addition to not covering that element, you made a ruling that there was no

20     specific intent element in this crime of missing movement by design. You were encouraged to

21     make that ruling by the government. That ruling with all the respect is wrong.

1      MJ:    The specific intent to missing movement is the intent not to get on the plane. It's

2 not a normal--it's virtually a strict liability offense.

3      CC [Mr. LOBSENZ]:  That was your ruling, Your Honor, and I understand it and

4 Lieutenant Watada understood it, Mr. Seitz understood it, and he did not agree that you were

5 correct and he did not stipulate that he had the specific intent that he believes he had to have in

6 order to violate the law.

7      There are two elements there that he did not stipulate to.  You cannot find them in

8 the stipulation.  If there is even one element in there that he did not stipulate to, then it is not a

9 confessional stipulation.

10      MJ:    But-- --

11      CC [Mr. LOBSENZ]:  And if isn't-- --

12      MJ:    --but does he actually have to stipulate that "I agree 'X,'" or can the facts, taken

13 as a whole, cover that particular element?

14      CC [Mr. LOBSENZ]:  Your ruling was that the facts could establish that element.  But I

15 don't believe you are tracking my point, Your Honor.  You upset the stipulation by saying "I

16 need to make a *Bertelson* inquiry.  I need to under--inquire whether he doesn't understand what's

17 going on.  I need to inquire whether he doesn't understand what all the elements of this are."

18 And you only have that duty if it's a confessional stipulation.  You only have that duty to make

19 that inquiry if the stipulation admits all the elements of the crime.  And it didn't so you never had

20 any obligation to make a *Bertelson* inquiry at all.

1    MJ:    Your predecessor believed that I did and the government previously believed that

2    I did.

3    CC [Mr. LOBSENZ]:  The government attorney told you that it was a stipulation of fact

4    and there was no reason for you to either inquire or set it aside.  It was decide-- --

5    MJ:    There was no objection when I went through the *Bertelson* inquiry originally from

6    defense counsel, was there?

7    CC [Mr. LOBSENZ]:  Originally, the first time.

8    MJ:    The first time.

9    CC [Mr. LOBSENZ]:  There was no objection from anybody when you went through

10   that.  You then purported--you then did-- --

11   MJ:    Wouldn't that waive that objection?

12   CC [Mr. LOBSENZ]:  No.  Let me-- --

13   MJ:    I believe your co-counsel would like to talk to you for a second.

14   [The civilian counsel conferred with his co-counsel.]

15   CC [Mr. LOBSENZ]:  We're just checking that yes there was no objection the first time

16   that you went through the stipulation and that is correct and I stand by what I said.

17   Second point I have made, like a lawyer arguing in the alternative, is if you are

18   not persuaded that there was no--that it wasn't a confessional stipulation, if you still believe that

19   you did have a duty to make this *Bertelson* inquiry the second time, and if you still believe that

20   this stipulation wasn't somehow defective because he didn't agree with your ruling and that he

21   wouldn't stipulate that he was required in the course of duty to obey this.  Even if you accept all

1   of that, there is still, under *Bertelson,* there's a duty to make the inquiry. There's not a duty to

2   reject it. There is not a duty to say "I won't accept it." And in fact. *Bertelson* specifically holds

3   that confessional stipulations are not forbidden. That's on page 315 of that case. Even if it does

4   admit every element of the offense.

5       MJ:    Does your client have the right to enter into a confessional stipulation?

6       CC [Mr. LOBSENZ]:  No. He doesn't have a right to make them agree [sic]. But they

7   did agree and they were agreeing at that time that there was nothing wrong with it. It's only

8   sub-- --

9       MJ:    Well, if you pick and choose along the points of where the government stated, the

10  government agreed right up until the very end that it was a confessional stipulation, and then

11  only at the very end--and I don't believe that the current government counsel--but they'll speak

12  for themselves--believe it was not a confessional stipulation. But please continue.

13      CC [Mr. LOBSENZ]:  No, I understand. It's very convenient for the government having

14  after-- --

15      MJ:    As it is for your client.

16      CC [Mr. LOBSENZ]:  --after the declaration of mistrial and after they have filed a

17  briefing in the Army Court of Criminal Appeals, they have now suddenly said that what they

18  said all along was not correct and that you were correct all along in finding this to be a

19  confessional stipulation.

20      MJ:    Well, the record will speak for itself as to what the government's position was

21  during trial.

1    CC [Mr. LOBSENZ]: Assuming that a *Bertelson* inquiry the second time was required,

2    rejection of the stipulation was not required as long as he understood what you were telling him.

3    He always understood that and that was always clear. He gave you the same answers the second

4    time that he gave you at the start of the trial. He understood your ruling, that the order to deploy

5    was lawful, and that that was that. He didn't agree with it, but he understood it. He understood

6    your ruling that specific intent only meant that he had the intent not to get on the bus, not to get

7    on the plane. He understood and agreed with it but he understood it. He understood everything

8    and yet you set aside the stipulation. That was the second error that you committed.

9    MJ:    Now again, if--and correct me if you'll get to this, but how does the fact that it

10    appears that your client didn't understand how this stipulation would be used--that this--that he

11    was not going to be able to present any of this evidence?

12    CC [Mr. LOBSENZ]: I couldn't disagree with you more, Your Honor. How you could

13    reach the conclusion that he didn't understand that is totally beyond me.

14    MJ:    Well, because the fact that he and his counsel were planning to enter into

15    evidence things that were just not going to be admitted and they continued to want to do that

16    despite the court's prior rulings, where it was quite clear that that evidence would not be

17    admissible.

18    CC [Mr. LOBSENZ]: Well that--two things I want to say about that, Your Honor. One

19    has to do with who his prior counsel was and what his litigation style was. He had his own style;

20    that is not my style.

21    MJ:    But we're stuck with the record.

61

1        CC [Mr. LOBSENZ]: I understand that there are some attorneys, you know, and I've

2    done criminal--after starting as a prosecutor--I left the prosecutor's office after a few years and

3    I've been doing criminal defense work in different courts for now something like twenty-five

4    years. I understand that there are some lawyers who, even after they have made the record, need

5    to keep making it over and over and over. Even after they've had a ruling that says you can't do

6    this, you can't do this, you can't do this. They keep trying to do it. That is not my style. You

7    will not find me acting in that way. I am critical of some of the ways in which prior counsel

8    acted. I can see it on the record and I can see that it would test your patience.

9        That said, if what you're referring to is that they offered a proposed jury

10   instruction, that is not in any way, in my view, some kind of showing of disrespect or-- --

11       MJ:   I'm not saying disrespect. I'm saying that it's a misunderstanding of what the

12   rulings and what this stipulation of fact and what the pretrial agreement meant.

13       CC [Mr. LOBSENZ]: That's my second point. It is not a showing that Mr. Seitz

14   misunderstood the effect of the ruling. With all due respect, Your Honor, I think this is a

15   showing that you do not understand what it means, as defense counsel, to be accurately correct in

16   perfecting an appellate record. There are two different things here-- --

17       MJ:   Well, counsel, I'll just state for the record that I have many, many years as

18   defense counsel, as prior defense counsel, as an appellate defense counsel, as a trial defense

19   counsel, as a senior defense counsel, and a regional defense counsel.

20       CC [Mr. LOBSENZ]: Here are two different situations, sir. One, is where the court says

21   this evidence is not admissible. And despite saying that, the defense attorney keeps trying to

1    offer that evidence. Different situation is where the court says this evidence is not admissible

2    and at the end of the trial, the attorney offers a jury instruction which would seem to be premised

3    upon the notion that such evidence should have been admitted. I don't-- --

4        MJ:    Well, it was more than a jury instruction, because that was what--if you look at

5    the record that's what the rest of the accused's statement was going to be at the trial. He was just

6    going to talk about his beliefs on why he didn't get on the plane.

7        CC [Mr. LOBSENZ]:  It never got to that part of the trial, Your Honor, so to speculate as

8    to whether or not Mr. Seitz would have tried again to elicit testimony from him, that you had

9    already ruled was inadmissible, is rank speculation and it has nothing to do with anything.

10        What I am saying is you premised your ruling that you had to make an inquiry

11    and that there was a problem with this stipulation on the fact hat Mr. Seitz submitted a proposed

12    jury instruction. And I submit to you respectfully that-- --

13        MJ:    How could he have gotten that jury instruction unless his client would testify to

14    that?

15        CC [Mr. LOBSENZ]:  Your Honor, he told you that he did not expect you to give that

16    jury instruction. He was making his record and, in that respect, I believe he was properly making

17    his record. He was making a new point that not only would you not allow evidence, but that you

18    also would not allow jury instruction on a point of law. There was nothing wrong with him

19    doing that. Now, that jury instruction you said, on the record, somehow gave you the right to

20    revoke your acceptance of the stipulation because of an inconsistency. You spoke to Lieutenant

21    Watada at the beginning of the trial and you told him that if "you say something which is

1    inconsistent with the facts stated in the stipulation, then I may, at that point, have to revoke this."

2    A proposed jury instruction does not assert any facts at all.  None.

3        MJ:    Well, but does it also--can I use that--or can any judge use that to probe back into

4    the client's understanding of what the meaning and effect of that stipulation of fact and of that

5    pretrial agreement?

6        CC [Mr. LOBSENZ]:  You did that, Your Honor, and I have no doubt that you did it with

7    the best of intentions, honestly believing that it showed somehow that he didn't understand

8    something.  But with all due respect, Your Honor, all it showed is that you didn't understand

9    what Mr. Seitz was doing in perfecting the record by creating further legal error--in his mind

10   further legal error by the denial of a requested instruction.  It did not in any way create any

11   inconsistency.  In fact, it is the same--if somebody stipulates "I shot and killed a man" and then

12   they propose an instruction on self-defense that says it is a defense to the charge of murder that

13   the accused sincerely but mistakenly believed that the other man was about to shoot him and that

14   that mistaken belief was objective and reasonable, there was no conflict between--there can't be

15   conflict between a proposed general statement of the law, which does not assert any facts at all,

16   and the statement of fact that the defense made, that I shot and killed him, there's no conflict

17   between those two things at all.  So again, there was no reason for you to conduct any inquiry or

18   for you to set aside the stipulation.

19        Finally the stipulation had a savings clause in it which said that the defendant

20   does not waive any future claims with regard to the motions and objections previously litigated.

1    And those were precisely the ones where he said he didn't agree with your position as to what

2    the elements were and what the government had to prove.

3            All of those--I'm sorry, but all of those mistakes that you've committed led you to

4    a point of deciding that you had to reject the stipulation because you thought it was confessional,

5    because it was linked to a plea agreement as to the dismissal of two of the four specifications of

6    Article 133 charges and led you to believe that then, "Okay, I have to set that aside too." Those

7    other two 133 charges are coming back in now. They're not dismissed. And now we have the

8    problem of how is the government going to prove those things and how is the government going

9    to prove the things that were stipulated to about the missing movement question. At that point,

10   you took the position that a mistrial as to all charges was required. At that point, you never on

11   the record notified--whatever you may have thought in your mind, I don't know. But you never

12   said a thing about other alternatives, other than declaring a mistrial as to every single charge.

13       MJ:    Is the judge required-- --

14       CC [Mr. LOBSENZ]:  Yes, you are.

15       MJ:    --to say on the record his considerations?

16       CC [Mr. LOBSENZ]:  The record--you are required--actually it is the government that is

17   required. The government is required to create a record which shows that you considered those

18   things and that you reasonably determined that there was no other reasonable alternative. That is

19   the law under *Arizona versus Washington*. It is the law also recognized by military appellate

20   court decisions, such as *Ghent*. The record shows nothing as to consideration of any other

21   alternative whatsoever.

1          Now in this case, when you went straight to "when should we set the new trial on

2     all the charges." You went straight to "I have March 19th available, can we do it then?" You

3     asked the government, "If we start the second trial on March 19th, can you have all your

4     witnesses here by then?" They said yes. They said they didn't think that would be a problem.

5     Interestingly, see you did not ask and they did not propose and no one proposed and the record

6     does not tell us anything whatsoever about the possibility that you could have taken a recess for a

7     week, retained the same panel members and resuming the trial a week later with all those

8     witnesses. The record simply doesn't say.

9          MJ:     How does that--how would any judge preserve the government's bargain of

10    dismissing those two charges? How, in a court-martial, do you resurrect in a trial two charges

11    that had been dismissed?

12         CC [Mr. LOBSENZ]: You did it. You set aside the stipulation and you set aside the

13    agreement and therefore you did resurrect those charges. The question was not how do you

14    resurrect those charges, the question was how are they going to prove it.

15         MJ:     How do you in this particular--in this particular--in that particular court-martial,

16    where those charges had been dismissed-- --

17         CC [Mr. LOBSENZ]: No, they were provisionally dismissed on the kind of condition

18    that you accept the-- --

19         MJ:     They were dismissed without prejudice, to ripen into prejudice upon the--I believe

20    the language "upon entry of sentence" or on other conclusion of the case, meaning if he was

21    found not guilty.

1          So how, in the middle of that case, after--presume for a second--assume that we

2     want to continue on with the trial, that the government is going to bring all of its witnesses. How

3     doe the government get the benefit of its bargain where it doesn't have the stipulation of fact, it

4     doesn't have the witnesses to lay the foundation on those witnesses, and I'm not sure that the

5     government could have even gotten some of those witnesses. I'm not sure if the government can

6     still get the witnesses here to lay the foundation for some of those videotapes.

7          CC [Mr. LOBSENZ]: That's part of the point. You're not sure, because it was never

8     explored and no one will ever know.

9          MJ:    Well, I'm not sure--I just want to know how we can, in the middle of trial,

10    resurrect already dismissed charges. Tell me how we can do that.

11         CC [Mr. LOBSENZ]: You can turn to the panel and say, "I am permitting the

12    government to proceed with two additional charges." You had said to the government-- --

13         MJ:    What-- --

14         CC [Mr. LOBSENZ]: --you had said to the government-- --

15         MJ:    What rule of court-martial permits that?

16         CC [Mr. LOBSENZ]: You had said to the government, "I will permit you to reopen your

17    case." They reopen the case. You had already set aside the stipulation. You had already set

18    aside the plea agreement. By setting aside the stipulation and the plea agreement, you had

19    brought back those charges. There was no reason you could not have explored with them

20    whether or not witnesses on those other charges were available.

21         MJ:    Who were re-referred the charges?

67

1       CC [Mr. LOBSENZ]:  Pardon me, sir?

2       MJ:    Who re-referred the charges?  They'd been dismissed.

3       CC [Mr. LOBSENZ]:  They had been dismissed without prejudice.

4       MJ:    Doesn't that require a convening authority to go re-refer the charges?  And how

5  do you join charges in mid-trial, once we've already got a panel set?  Do we then have to re-*voir*

6  *dire* the panel as to these other charges?  Help me out here.  I have no idea how to do that.

7       CC [Mr. LOBSENZ]:  Well, you actually told Lieutenant Watada that that's what you

8  would do if he said anything inconsistent with the stipulation.  You said it would come back.

9       MJ:    And that's where we're at right now.  We're right back here with a new panel.

10      CC [Mr. LOBSENZ]:  Another mistake which, I'm sorry, sir, that you are making now is

11  to attempt to look at two charges, the ones that were dismissed without prejudice, and say,

12  "Because I have a problem with those, I have to start over with everything.  With everything."

13      MJ:    No, I'm just trying to get a handle on--you're saying that there are lesser ways

14  that this case could have proceeded forward.  And I'm trying to explore this, is that the lesser

15  ways is that the government took actions based upon your client's promises.  It's a contract.  It's

16  a breach of contract here.

17      CC [Mr. LOBSENZ]:  That's right.  And if you had decided that, because of the breach

18  of contract, that those two charges were coming back, but that those two charges would be

19  coming later, you could still have continued with the three charges that you had going.  And the

20  fact that you might have decided to bring the other two charges back in a new, second trial has

21  absolutely no bearing on what you do with the other three charges in the trial you're in the

1    middle of. You are not considering and apparently you're not--I'm not doing a good job of this.

2    But my point is-- --

3         MJ:    I think-- --

4         CC [Mr. LOBSENZ]: --you are not considering, "Why do I need to declare a mistrial on

5    the missing movement by design charge, which I have right here? Are there other alternatives to

6    declaring a mistrial on that charge?" And you are not considering, "Why do I need to declare a

7    mistrial on the two charges that the government--on the Article 133 charges, which the

8    government presented its whole case on with no problem and rested?"

9         MJ:    Okay. Now, I think I've got--if I can summarize--and again, don't let me put

10   words in your mouth. What you're saying is, is that the remedy would have been proceed on

11   course with those three charges or three offenses, and the government's remedy then would be a

12   second trial. We get a second panel in here, and the government proceeds on with only those

13   two charges?

14        CC [Mr. LOBSENZ]: I'm not saying that. You are trying to put words in my mouth.

15        MJ:    Well, that would be the remedy to preserve the government's right to have those

16   two charges tried.

17        CC [Mr. LOBSENZ]: That's not accurate.

18        MJ:    Okay.

19        CC [Mr. LOBSENZ]: What I am saying is that you could have stopped this, said "Okay,

20   obviously the government is entitled to the benefit--having had its benefit of the bargain

21   removed, we're going to have to figure out what to do with these other two 133 charges. But for

1    right now, government, what I want to know is, first of all, if we take a recess for three or four

2    days, can you get the people here that you need to proceed with the missing movement by design

3    charge?" If so--and that alternative was never explored--"if so there's no reason to declare a

4    mistrial as to that charge. Okay? Then you could have said, "Now, government, why in the

5    world would I declare a mistrial as to the two that you've completely presented all your evidence

6    to and rested on?" There's no reason and they've never offered a reason for why any declaration

7    of mistrial was necessary as to those two charges.

8                    Finally, we come to the ones that you are-- --

9        MJ:    Other than the fact that they have no evidence left for other than-- --

10       CC [Mr. LOBSENZ]:  They presented all their evidence on those two that were not

11    dismissed. They were done. Nobody hampered them in any way.

12       MJ:    Which two? Are you talking about the ones that were dismissed? They pre-- --

13       CC [Mr. LOBSENZ]:  No, the ones that weren't dismissed.

14       MJ:    Well, there's no evidence, if I've rejected the stipulation of fact, as to the two 133

15    offenses. Let's talk about the 133 offenses. There's no evidence of those in the record.

16       CC [Mr. LOBSENZ]:  And therefore you need to explore with the government, "What

17    about that? Can you get those people there?" Or another possibility was perhaps the defense

18    will stipulate, leaving out all the stuff about missing movement. Perhaps they'll stipulate to the

19    two for--two dismiss, two go on. Authentication. Bargain with the missing with the Article 133

20    charges anyway. Which was never explored at all. And it would be wrong for anybody--for any

21    court to speculate as to what the defense would have done, had that been explored. But I have to

70

1    say, that if speculation were somehow legally permissible, I think you could infer from this

2    record that--very easily, you could infer that they would have said fine. "Fine, we'll make the

3    same stipulations about the Article 133 charges. We will. You won't have to call the people,

4    we'll agree that the statements were made. Two will go away and two will stay. We'll make

5    that same stipulation again." Why? Because you can read through this record that Lieutenant

6    Watada and his prior counsel felt that, on those Article 133 charges, they had a good chance of

7    acquittal and they wanted to go forward and the defendant wanted to go forward and complete

8    trial for that reason.

9            On the missing movement charge, he never had a defense, because you were

10   never going to allow it to be presented. It was a foregone conclusion. That wouldn't change

11   whether there was one trial or two trials, if it was coming back later. But he had a realistic

12   possibility, he thought, of getting acquitted on those two Article 133 charges.

13       MJ:    If we were allowed to speculate.

14       CC [Mr. LOBSENZ]: If we were allowed to speculate. Which we are. Because they

15   have to prove-- --

16       MJ:    Because it would also be allowed--easy to speculate that the defense would not

17   agree to stipulate to anything, knowing that the government has trouble trying to subpoena

18   reporters. And if one would look at the--just look at the place where one of the videotapes came

19   from, it would be safe to say that it would not be a government-friendly venue.

20       CC [Mr. LOBSENZ]: And that's why the *Ghent* case--we can't speculate, because as the

21   *Ghent* case says on page 551, the record must support the determination that there were no

71

1    measures short of mistrial that would have sufficed to mitigate or cure any trial prejudice. It was

2    never done. It was never explored. And because it was never explored, manifest necessity

3    cannot be found. The rule of *Arizona versus Washington* was violated and you should rule that

4    all the charges--all of them are barred by double jeopardy.

5    MJ:    Why would the additional two charges that were dismissed be barred?

6    CC [Mr. LOBSENZ]: Because there wouldn't have been any occasion to un--if you

7    hadn't set aside the stipulation and hadn't set aside the plea agreement, then the trial would have

8    been completed on the two 133 charges that were there and the dismissal without prejudice

9    would have ripened into a dismissal with prejudice, because that was the bargain. And they'd be

10    gone forever.

11    I have argued in the alternative and I want to close by doing that again. I think

12    you should rule that all the charges are barred by double jeopardy. At the very least, you should

13    rule that the Article 133 charges are barred.

14    Those are all the remarks I have, Your Honor.

15    MJ:    Now just one question. The court does not require the judge to make a

16    determination of manifest necessity. Is that correct, under *Jorn*?

17    CC [Mr. LOBSENZ]: No, I don't think that's correct. I think the court--the U. S.

18    Supreme Court requires that there be-- --

19    MJ:    I don't--I'm not required to make an explicit finding of manifest necessity.

20    CC [Mr. LOBSENZ]: I think that the case you--has a language--either *Jorn* or some

21    other case--that says you don't have to say those words, but the record must show that there was

1   no other alternative and that it was explored on the record.  You don't have to say the words

2   "manifest necessity."

3         MJ:    Would that be *Arizona v. Washington*?  I think that might be the case.

4         CC [Mr. LOBSENZ]:  Yeah, it might be *Arizona v. Washington*.

5         MJ:    I'm sorry.  I think it is *Arizona*.

6         CC [Mr. LOBSENZ]:  And I think that court said there, "As long as we can see from the

7   record that it was explored, it does not matter that the judge didn't say those words in a

8   talismanic phrase."

9         MJ:    Now what--you don't think that there's any problem with the fact that what--the

10  record that we were left with, let's--as after rejection of--let's--we'll start with after the rejection

11  of the stipulation of fact.  Assume, *arguendo*, that that was correct.  I know you don't believe so,

12  but now we're just discussing how to fix it.  How to put that toothpaste back in the tube, so to

13  speak.  Here we have a--the record as it sits, that the accused has admitted to the panel, as a

14  matter of fact, that all of this stuff is true and now the judge is supposed to go and tell the panel,

15  "You know what you just heard?  Ignore that."  Isn't that a--isn't that really, really, really asking

16  too much of a panel?  To say, after the government's rested, after government's proved its entire

17  case and said here's all of the facts, metaphorically saying the accused has admitted to it?

18        CC [Mr. LOBSENZ]:  That's your assumption, Your Honor, that you would have to tell

19  the panel to ignore it.  But I think that's a mistaken assumption, and that's because you did not

20  explore the alternative of whether or not an in-trial recess would allow them to get the people in

1   there who would testify to those things, the same things, so that they wouldn't have to ignore it at

2   all.

3          MJ:    I would have to tell them to disregard that stipulation of fact, correct?

4          CC [Mr. LOBSENZ]: If you wanted-- --

5          MJ:    After it was rejected, would I not have to-- --

6          CC [Mr. LOBSENZ]: Immediately? If you took a recess at that point, I don't think you

7   would have to. If you took a recess--if the government told you, "We can get those witnesses

8   here," and you took a recess and they got those witnesses there, and they testified to the exact

9   same thing that had been stipulated to, which is, "Yes, I received the order. Yes, I didn't get on

10  the bus. Yes, that reporter is a real reporter and I did say that to them.' If they had done that,

11  would it be necessary for you to say to them something like this: "Now, I know you heard the

12  stipulation and the stipulation says fact 'a' and you're not to consider the stipulation; however,

13  you've also heard testimony of fact 'a' and that you can consider. You can consider fact 'a' as it

14  came from the witness, but not as it came from the piece of paper." Do I think you would have

15  to say that? I personally don't. If you had wanted to, I suppose you could have. But it makes no

16  sense.

17         MJ:    So, in fact--if they come in and testify, then they get to weigh the credibility,

18  correct? They weigh the credibility of the witnesses.

19         CC [Mr. LOBSENZ]: Credibility? Of he didn't get on the bus? The credibility of-- --

20         MJ:    They can disregard that fact freely, correct? If it comes from testimony--

21  testimonial evidence, correct?

1      CC [Mr. LOBSENZ]:  They could also disregard the stipulation.

2      MJ:    Well, the stipulation of fact is the uncontroverted facts of the case.

3      CC [Mr. LOBSENZ]:  So would the testimony of the witnesses.  But a jury can always--

4      --

5      MJ:    No.  The instruction is--for a witness is that they're free to disbelieve every

6  witness they want, but they're not free to disregard stipulations of fact.  That the instruction is

7  that these are the uncontroverted facts in the case.  So what I'm-- --

8      CC [Mr. LOBSENZ]:  Exactly.  And that language does not say that they are not free to

9  disregard it and no jury is ever required to convict or accept anything.  No criminal jury is ever

10  required to do that.  They can acquit in the teeth of overwhelming evidence.  That's a

11  longstanding principle of law.

12      MJ:    Well, I guess I'm confused as to what uncontroverted facts would mean.  They--

13  the panel would then have to disregard the law.

14      CC [Mr. LOBSENZ]:  No, they would not.  Panels are allowed--juries are allowed to

15  disregard uncontroverted facts and to acquit, despite the fact that the evidence of guilt is

16  uncontroverted.  And I wish I could give you the exact-- --

17      MJ:   But that would be-- --

18      CC [Mr. LOBSENZ]:  --case of that.  *Brooks* maybe.

19      MJ:    --that would be essentially a jury nullification.

20      CC [Mr. LOBSENZ]:  They have always, throughout American history, been free to do

21  that.

## INSTRUCTIONS FOR PREPARING AND ARRANGING RECORDS OF TRIAL

USE OF FORM - This form and MCM, 1984, Appendix 14, will be used by the trial counsel and the reporter as a guide to the preparation of the record of trials in general and special court-martial cases in which a verbatim record is prepared. Air Force uses this form and departmental instructions as a guide to the preparation of the record of trial in general and special court-martial cases in which a summarized record is authorized. Army and Navy use DD Form 491 for records of trial in general and special court-martial cases in which a summarized record is authorized. Inapplicable words of the printed text will be deleted.

COPIES - See MCM, 1984, RCM 1103(g). The convening authority may direct the preparation of additional copies.

ARRANGEMENT - When forwarded to the appropriate Judge Advocate General or for judge advocate review pursuant to Article 64(a), the record will be arranged and bound with allied papers in the sequence indicated below. Trial counsel is responsible for arranging the record as indicated (except for items 6, 7, and 15) will be inspected by defense counsel and the convening or reviewing authority which do not apply to them.

1. Front cover and inside front cover (chronology sheet) of DD Form 490.

2. Judge advocate's review pursuant to Article 64(a), if any.

3. Request of accused for appellate defense counsel, or waiver/withdrawal of appellate rights, if applicable.

4. Brief of counsel submitted after trial, if any (Article 38(c)).

5. DD Form 494, "Court-Martial Data Sheet."

6. Court-martial orders promulgating the result of trial as to each accused, in 10 copies when the record is verbatim and in 4 copies when it is summarized.

7. When required, signed recommendation of staff judge advocate or legal officer, in duplicate together with all clemency papers, including clemency recommendations by court members.

8. Matters submitted by the accused pursuant to Article 60 (MCM, 1984, RCM 1105).

9. DD Form 458, "Charge Sheet" (unless included at the point of arraignment in the record).

10. Congressional inquiries and replies, if any.

11. DD Form 457, "Investigating Officer's Report," pursuant to Article 32, if such investigation was conducted, followed by any other papers which accompanied the charges when referred for trial, unless included in the record of trial proper.

12. Advice of staff judge advocate or legal officer, when prepared pursuant to Article 34 or otherwise.

13. Requests by counsel and action of the convening authority taken thereon (e.g., requests concerning delay, witnesses and depositions).

14. Records of former trials.

15. Record of trial in the following order:

    a. Errata Sheet, if any.

    b. Index sheet with reverse side containing receipt of accused or defense counsel for copy of record or certificate in lieu of receipt.

    c. Record of proceedings in court, including Article 39(a) sessions, if any.

    d. Authentication sheet, followed by certificate of correction, if any.

    e. Action of convening authority and, if appropriate, action of officer exercising general court-martial jurisdiction.

    f. Exhibits admitted in evidence.

    g. Exhibits not received in evidence. The page of the record of trial where each exhibit was offered and rejected will be noted on the front of each exhibit.

    h. Appellate exhibits, such as proposed instructions, written offers of proof or preliminary evidence (real or documentary) and briefs of counsel submitted at trial.

DD FORM 490, OCT 84

ORIGINAL
VOLUME II of II

VERBATIM[1]
# RECORD OF TRIAL[2]
(and accompanying papers)

of

**WATADA, EHREN K.**
(Name: Last, First Middle Initial)

(Social Security Number)

**1st Lieutenant O2**
(Rank)

**HHC, Special Troops Battalion**
**I Corps & Fort Lewis**
(Unit/Command Name)

**US Army**
(Branch of Service)

**Fort Lewis,**
**WA  98433-9500**
(Station or Ship)

By

## GENERAL COURT-MARTIAL

Convened by **COMMANDING GENERAL**
(Title of Convening Authority)

**Headquarters, I Corps and Fort Lewis**
(Unit/Command of Convening Authority)

Tried at

**Fort Lewis, Washington 98433**
(Place or Places of Trial)

on

**6 July 2007**
(Date or Dates of Trial)

Companion Cases:  None.

[1] Insert "Verbatim" or "summarized" as appropriate.  (This form will be used by the Army and Navy for verbatim records of trial only.)

[2] See inside back cover for instructions as to preparation and arrangement.

DD FORM 490, MAY 2000          PREVIOUS EDITIONS ARE OBSOLETE.          Front Cover

1    MJ:    But you are not free to argue jury nullification.

2    CC [Mr. LOBSENZ]:  That's true.

3    MJ:    So, actually, that would be--without getting into a law review discussion of

4    this--that would be the jury not performing the duties to apply the facts to the law.  So the only

5    way they could do that is to violate their oaths to apply the facts to the law.

6    CC [Mr. LOBSENZ]:  Could I give you an example of some actual real life situation,

7    which I think is similar.  It happened to me, Your Honor, and it explains--I'll try to answer your

8    question again about-- --

9    MJ:    Sure.

10    CC [Mr. LOBSENZ]:  --what would I tell them about disregarding what they heard.  This

11    actually happened to me and since--reflect this--shows my ignorance of the law when I was a

12    young prosecutor and I can get away with telling it.

13          I was prosecuting a woman for assaulting someone.  She had not yet testified.

14    Some other witness was on the stand, and that witness had said--said something favorable to the

15    defense and in cross-examination, I, not being aware of the correct rules of evidence about

16    reputation and stuff, asked the witness if that witness was familiar with the fact that something

17    terrible--that I think that that--the defendant had committed some crime and had been found

18    guilty of.  It was improper.  There was an objection.  The objection was sustained.  It would have

19    been proper had the defendant testified, but the defendant hadn't testified yet.  The judge looked

20    at the defense counsel and said, "Okay, it was improper.  Mr. Lobsenz shouldn't have done that,

21    but you said in opening statement you were going to call your client anyway, right?"  "Yes, Your

76

1    Honor." "Is that still true? Are you still intending to call your client anyway?" "Yes." "Well,

2    isn't it true that when your client testifies, then the fact that Mr. Lobsenz elicited will be

3    admissible?" "Yes." "Well, then there's really no harm no foul, is there?" "No." Then the

4    witness testified and the court gave no instruction to the jury to disregard anything, because it

5    was admissible and that's a similar situation here where-- --

6        MJ:    That's a nice story. But it is absolutely inapplicable to this case, where you have

7    a stipulation of fact that says, "These are the uncontroverted facts. You cannot find the facts

8    otherwise than this."

9            I know what you're getting at; however, when the witness testifies, it's a

10    completely different way to deal with that evidence.

11            Anything further?

12    CC [Mr. LOBSENZ]: No.

13        MJ:    Government, do you have argument?

14        TC:    Your Honor, I have no doubt--government has no doubt you've questions for the

15    government. I would ask for just some initial leeway for prefatory remarks.

16        MJ:    Certainly.

17        TC:    Much has been made by defense counsel of the important principles that are at

18    issue today, but the government contends that this is a factually intense case and the facts will

19    drive your determination. And the facts depend upon the record and that record includes not

20    only the cold hard words in the transcript, but all the other pieces of that record of trial.

1    The government certainly contends that the defense in the first general court-

2    martial of Lieutenant Watada actually manufactured the fly in this particular ointment.  And in

3    response to the colloquy between the court and defense counsel during this oral argument, the

4    government would just like to make some initial remarks about perhaps some differences

5    between the military justice system and the civilian system.

6    In fact, as the court is aware, the military justice system is--at times aggressively

7    protects the rights of the accused.  In other words, in situations where an accused would say, "I

8    confess, but I didn't do it," military courts will not allow that accused to be convicted of that

9    crime.  Hence the *Care* inquiry.  The *Bertelson* inquiry.  The extension of Article 45 rights from

10   simply providence to confessional stipulations.  Because the courts are concerned that, if the

11   accused is not knowingly, intelligently, voluntarily agreeing to such a stipulation, that in effect

12   that accused is agreeing to eventual guilt without fully believing, in his own mind, that he is

13   guilty.

14   And in this case, Your Honor, that is exactly what happened.  And the reason this

15   review of the factual record is important is because at least it is government counsel's view and,

16   of course government counsel has the luxury of twenty-twenty hindsight, and with all due

17   respect to the parties--the attorneys during the first Watada, I think there was a great deal of

18   confusion about the impact that the introduction of the instruction had in terms of the court and

19   the acceptance of the confessional stipulation.  It is clear, based upon the facts in this case, that

20   can be inferred from those facts that the accused was, in essence, confessing to Article 87.  He

21   was confessing to a violation of the Uniform Code of Military Justice.  And yet, following the

78

1    government's case in chief, the court discovered that the accused still believed he was not guilty

2    of that offense. Factually, those are diametrically opposed and there should be no legitimate

3    argument in this court that: One, it was not confessional, because it had all the consequences and

4    potential stigma of a conviction that would attach to a confession; and two, the accused made the

5    decision to change his interpretation of that agreement and that confession. And so, in light of

6    that confusion, the court still granted, I believe, two additional recesses on that day, giving the

7    parties every opportunity to formulate a compromise, to make suggestions on the record. None

8    of that occurred.

9        MJ:    Government.

10       TC:    Yes, sir.

11       MJ:    In that stipulation of fact, does the accused admit that he had a duty to get on the

12   flight?

13       TC:    The government's response, Your Honor, is that the facts that he stipulated to

14   give the fair inference that, yes, he did stipulate to that element, in addition to the court's ruling.

15       MJ:    So you'd combine the court's ruling with the stipulation?

16       TC:    I think the government's primary position, Your Honor, is that, based upon

17   *United States versus Graham*, that the order itself and the lawfulness of that order could support,

18   but certainly the inference from the stipulation of fact provided more than sufficient evidence to

19   support that element.

20       MJ:    Would the government be required to introduce any other evidence? Or any

21   evidence, other than that stipulation of fact, as to the Article 87 charge? If you had just gone in

1    and put no evidence on, do you believe that the case could have withstood directed finding of not

2    guilty?

3         TC:    Your Honor, the government believes that absent any additional evidence, the

4    government would and most likely would have obtained a conviction, based solely upon the

5    accused's confessional stipulation.

6         MJ:    And defense, after the government's through, I--that was one question I wanted to

7    ask you as well.  As to the intent to miss movement, is that reflected anywhere in the stipulation

8    of fact?

9         TC:    To miss the movement or miss the movement through design, Your Honor?

10       MJ:    Miss the movement through design.

11       TC:    Yes, Your Honor, in fact the stipulation of fact identifies that he had prior

12    knowledge of the movement, that he made public pronouncements that he would not move-- --

13       MJ:    Wasn't that actually one of the statements that's included in the statement.  Was

14    that not prior to the-- --

15       TC:    That was actually prior to the deployment, Your Honor.  Exactly right.  And the

16    movement of the unit.

17       MJ:    And did he say that he wasn't going, in that statement?

18       TC:    Yes, Your Honor.  He did.

19       MJ:    Now-- --

20       TC:    And in addition, he also identified that he intended not to board the plane.

1    MJ:    You say that the defense was part of the fly in the ointment, but the government

2    didn't have to change that. The defense may have dug the hole, but the government didn't

3    necessarily have to jump into it, did they?

4    TC:    Your Honor, once the court determined that the stipulation of fact could not stand,

5    there was manifest necessity to grant a mistrial, because there was no viable alternative.

6    MJ:    What about the two trial aspect of the defense? Although they denied that that's

7    what they were saying, but I think that's kind of what they were getting, is that to preserve that

8    pretrial agreement, to preserve those additional two charges, the government was free to try those

9    at a second trial. Does RCM 307 affect that at all?

10    TC:    Well, Your Honor, just initially, the government would respond by saying it

11    cannot--cannot conceive of military courts that embrace Article 45 and the protections therein

12    and the *Bertelson* requirements, on the one hand, and on the other hand would allow the

13    government to not only push forward with a trial where the panel was horribly prejudiced simply

14    by knowing that he had committed now what are uncharged misconduct, but that then he would

15    suffer a follow-on trial, during which the punishment could very well be significantly amplified.

16    And if you are to take that argument just to a policy extreme, it then allows the government, in

17    essence, to punish him far more than they would ever punish him or obtain punishment through a

18    panel, during the first tribunal.

19    MJ:    Well, assume for the sake of argument that the government did proceed on with

20    trial on the remaining two--the remaining charges, that--that the accused was convicted at that

21    trial, and that the other two charges then--would you concede--would you say that the other two

1    charges would be available for the government to proceed to trial on those charges that were

2    dismissed without prejudice?

3        TC:    A couple of quick points, Your Honor.

4        MJ:    Sure.

5        TC:    First, just to clear up a factual inaccuracy, the government recalls that the

6    stipulation of fact didn't simply include two speeches. It also included an interview. Right? So

7    you are dealing with some spillover effect. And I just want to identify that for the record,

8    because there may be some misconception there.

9        MJ:    I'm just saying we've got a--say we've got--we did what the defense says, is that

10    we go to trial, you're able to bring all your other witnesses in. Is there any additional prejudice

11    to the defense if this then goes to a second trial on those other two offenses?

12        TC:    The government's position is yes, Your Honor, because he would be prejudiced

13    initially, and then would suffer follow-on sentencing at the second tribunal, which would

14    essentially be an amplification of the sentencing.

15        MJ:    And what additional matters would be allowed at the second trial?

16        TC:    Certainly the conviction at the first tribunal, Your Honor. Which again, would

17    fuel likely a panel or a sentencing authorities-- --

18        MJ:    Trial, not tribunal. Tribunals are done under war crimes.

19        TC:    Right. Got it, Your Honor. But certainly the sentencing authority would now

20    have a conviction to support this amplified sentencing. And I understand there's a lot of

1    colloquy about speculation, but the defense has invited speculation by identifying potential

2    alternatives and that's simply not a viable alternative, Your Honor.

3        MJ:    So, would you say that would be additional prejudice to the accused?

4    That--potentially, that he would--that that would be aggravation that the government could

5    introduce at a second trial for the remaining two charges?

6        TC:    The government believes it would be incredibly prejudicial and that result is in

7    no way envisioned by either the drafters of the Constitution, the double jeopardy clause or any of

8    the follow-on case precedent.

9        MJ:    What else--what could the government have done to preserve this case?  Your

10    former counsel came and said that he believed it was a stipulation, believed it was a confessional

11    stipulation, believed it was a confessional stipulation, and just as about--the hammer was about

12    to fall, that changed the tune of, "Well, maybe it's not a confessional stipulation now."  What--

13    after I rejected the stipulation, what could the government have done?

14        TC:    The government would submit, Your Honor, that government counsel was placed

15    in the position whereby defense was unwilling to yield, there was no stipulation of fact, no

16    revision to that stipulation of fact would have resolved the accused's misunderstanding, because

17    his misunderstanding was arguably about the issue that was resolved as an interlocutory matter,

18    as a matter of law.

19            The other option is to then go forward with a horribly prejudiced panel.  And so

20    the government contends the government counsel did not have any ability to proceed in any good

21    conscience, at that point.  That a mistrial was the only conceivable remedy.

1     MJ:   I asked the govern--I asked the defense this:  Could the government have been

2    made whole, with that particular panel, with those two charges?  Could those two charges have

3    been resurrected in mid-trial?

4     TC:   No, Your Honor.  Those specifications would not have returned to that trial.

5          Your Honor, there was one additional point the government wanted to make.  The

6    defense does put forth this--again, as we've been discussing--this partial mistrial notion and the

7    government would just contend, as a matter of law, that there is no crescendo analysis for--for

8    manifest injustice, in terms of whether a complete or partial mistrial is available.  That manifest

9    injustice applies to the proceeding as a whole and the judge, within his discretion, has the right to

10    either grant partial or the complete mistrial.  There's no additional requirement in making that

11    decision.

12     MJ:   Now I brought this up to--again, I asked the defense this:  How does the fact that

13    this was a pretrial agreement case--does this factor into the analysis at all?  And if so how?  As

14    far as the mistrial is concerned?

15     TC:   Right.  It simply factors in, Your Honor, to the extent that the accused absolutely

16    failed to perform his portion of that agreement.  By failing to perform, he placed the government

17    in an untenable situation and, from an equitable standpoint, the accused should not be able to

18    benefit from his own breach of contract, Your Honor.

19     MJ:   Would you say that goes to the "manifest necessity" prong?

20     TC:   I would say it certainly supports the "manifest necessity" prong, Your Honor.

1    MJ:    What if defense counsel's right and I blew it? That I shouldn't have rejected the

2    stipulation of fact, but I did? That's a fact that nobody can argue, is that it was rejected. What if

3    I got it wrong? How does that affect the government's ability, as far as this being double

4    jeopardy attaching in a pretrial agreement case?

5    TC:    Well, at that point, Your Honor, the government is in no way getting a second

6    chance or getting the ability to perfect its case due to its own wrongdoing, or its own breach of

7    that pretrial plea agreement. And so the government's position would be that the government

8    should certainly have the opportunity to try the accused again when it is no fault of the

9    government.

10    MJ:    So, is it the government's position that you should be--that the parties should

11    be--in a contract, in the pretrial agreement-type case, that you should be placed back where both

12    parties were prior to the breach of the contract, because the breach of the contract is the judge's

13    rejection of the guilty--of the--excuse me, I keep saying "guilty plea," because I only deal with

14    these in guilty pleas. With the stipulation of fact, whether it was warranted or unwarranted, once

15    that's rejected, then there's a breach in the pretrial agreement, correct?

16    TC:    Yes, Your Honor.

17    MJ:    I haven't noticed if the pretrial agreement has been marked in this case. I think

18    that we should have, during a recess or after the recess, a copy of the pretrial agreement and

19    stipulation of fact marked. Does either side disagree with that? Just for clarification purposes,

20    so any appellate court knows what we're dealing with here? And then the stipulation of fact and

21    the pretrial agreement will then speak for themselves, what they actually say.

1      CC [Mr. KAGAN]:  Right.

2      TC:    But in response to your question, Your Honor, the government does believe that

3   that breach of the OTP would be a sufficient basis for manifest necessity.

4      MJ:    Regardless of whether I got it wrong or not?

5      TC:    Yes, Your Honor.

6      MJ:    Anything further?

7      TC:    Nothing further, Your Honor.

8      MJ:    Defense, I asked the government and I'll ask you as well.  Would the government

9   have survived a directed finding of not guilty if the government placed no evidence on, other

10   than the stipulation of fact, as to the missing movement charge?

11      CC [Mr. LOBSENZ]:  No.  They would not have survived, because the stipulation said

12   nothing about two elements of the crime.

13      MJ:    And those two elements were-- --

14      CC [Mr. LOBSENZ]:  Required in the course of duty.

15      MJ:    Required in the course of duty.

16      CC [Mr. LOBSENZ]:  And we have our disagreement as to what specific intent means,

17   but at the time you were saying there was no specific intent element of the crime.  As I recall the

18   transcript, you were saying there was no such element.  And certainly nothing in the stipulation

19   says anything about, "I had the specific intent to disobey an order that was required in the course

20   of duty."  That is our interpretation of how that element-- --

1     MJ:    The statement to the--that is, that he made to the press, that he wasn't going to

2    Iraq is not sufficient a statement that, "I'm not getting on the plane that couldn't"-- --

3     CC [Mr. LOBSENZ]:  It is sufficient to show that "I'm not getting on the plane," but not

4    sufficient to show "I have the intent to disobey an order I'm required to obey in the course of

5    duty."

6     MJ:    So the 917 is any evidence and inference; you say they don't meet that standard?

7     CC [Mr. LOBSENZ]:  They don't.

8     MJ:    Okay.

9     CC [Mr. LOBSENZ]:  I only wanted really to respond to one theme of the government's

10   argument. It began by saying that "military law is a little different, we really protect the accused,

11   we really don't let him do things that maybe he shouldn't do." And I understand that. And I

12   understand that you were acting out of that impulse and that, basically, when you stopped

13   towards the end of the trial and said, "Looks to me like you don't understand. It looks to me like

14   you don't understand. You're going to be found guilty of missing movement, because these

15   other things are part of the definition of the crime. You're just going to be found guilty." And to

16   the extent that he was saying, "I don't agree with you, Your Honor," through his counsel--and

17   him himself saying, "I don't agree with you. I may be found guilty here, because that's your

18   ruling, but I don't agree with your ruling and I'm maybe going to win the appeal." And you

19   maybe can be read as telling him, "You're wrong. You're going to lose. You're going to lose.

20   You're going to get found guilty and you're going to lose your appeal on this missing movement

21   question." And that's all done to protect him.

1          And my point is that the double jeopardy law established by the U. S. Supreme

2    Court makes it clear that you may not make that decision for him. He gets to decide what's in

3    his best interest and it's--if I can read from the *Arizona versus Washington* case, where they're

4    focusing in on the valued right of the defendant to go to this particular jury. I'll do that in a

5    minute. But you may be right, you know, about all those things. You're going to lose your

6    appeal about what "required in the course of duty means," and you're going to get found guilty

7    of that. Nevertheless, he has the right to decide, "Maybe I'm just toast on that charge for all

8    time, but I have a shot at winning on these Article 133 charges right now, that have been tried,

9    that are before this jury. I have a shot. I may never have a shot on the missing movement one,

10   whether it's this trial or another trial. I may never have a shot at that. But I get to decide that I

11   want to go to this jury." And no judge gets to override his 5th Amendment right to make that

12   determination to go to this particular tribunal, on the grounds that the judge thinks "I'm

13   protecting you. It's better for you."

14         And I will read to you from the United States Supreme Court's decision in *Jorn*

15   *versus the United States*, where the government made a very similar contention. That they said

16   well, "The judge stopped the trial because he thought it would be better for the defendant if they

17   didn't allow this trial to go forward. The defendant would benefit from a do-over, more than

18   anybody else." And the court said, "We think a limitation on the abuse of discretion principle,

19   based on appellate court's assessment of which side benefited from the mistrial ruling, does not

20   adequately satisfy the policies underlying the double jeopardy provision. Those policies are the

21   policies mentioned in the *Arizona* case. The policy of the right to go to the particular tribunal.

1    The particular tribunal principle is implicated whenever a mistrial is declared over the

2    defendant's objection and without regard to the presence or absence of governmental

3    overreaching. And then, in touching upon bad faith or good faith here, they said, "If the right to

4    go to a particular tribunal is valued, it is because independent of the threat of bad faith conduct

5    by the judge or prosecutor, the defendant has a significant interest in the decision of whether or

6    not to take the case from the jury." So in my position that the U.S. Supreme Court has said,

7    "You are not allowed to deprive him of his 5th Amendment right to go to that jury, because you

8    think he'd better off" or you think he was doing an ill-advised thing.

9        MJ:    Just one last question. I asked the government. I think I know your answer. But

10   I don't want to--I think we've covered this, but assume that I did make an error in this case and

11   what impact is there that--to use Big Jake's line, "Your fault; my fault; nobody's fault," that the

12   stipulation of fact was rejected, which is a part of the pretrial agreement, that if--that the pretrial

13   agreement's cancelled if the stipulation of fact is rejected. What's the government's remedy,

14   other than as you said, to go back and get all the evidence and call the actual witnesses in this

15   particular trial? Does the accused have the right to hold the government hostage to that pretrial

16   agreement when the judge has rejected the stipulation of fact?

17       CC [Mr. LOBSENZ]: Well, I think so, but I--you know, I can understand how some

18   court might say, "You get everything dismissed except those two." But I think--I don't think it's

19   fair to say he is holding somebody hostage. That's sort of saying, "You are doing something

20   underhanded. You are benefiting in same nefarious way." And in fact it, just comes back to, as

21   you're saying in this hypothetical, if we assume that you made an error, he's getting a windfall

1    there and that takes us--I'm sorry, but that takes us sort of back to the argument Mr. Kagan

2    made, which if, if he walks completely, it's not going to be like most judicial error where you

3    just get a do-over. If he walks, he's going to get this thing that you described as a benefit of

4    holding them hostage or a windfall, and that's why a substantial number of people, including I'm

5    sorry, your superiors may be much more angry at you than the ordinarily case of a judicial

6    mistake. And that's why a reasonable person would think that you really shouldn't be making

7    this decision.

8            But I've strayed away from this subject into the other but-- --

9    MJ:    That's fine. My--to remove the "hostage language," is that is the defendant still in

10   control when its been found that there's a breach of the contract?

11   CC [Mr. LOBSENZ]: If there's only been a breach of the contract because you made a

12   mistake.

13   MJ:    Regardless, again: My fault; your fault; nobody's fault. Big Jake-- --

14   CC [Mr. LOBSENZ]: Your Honor, that's where we come down to exactly. I just read,

15   "Regardless of the lack of bad faith." That's the part I just read.

16   MJ:    So the faith-- --

17   CC [Mr. LOBSENZ]: You were acting in total good faith and you're giving

18   him--because you made a mistake, he gets the windfall of he can't be tried on anything. And

19   that's the problem and--and Mr. Seitz did say to you, "Your Honor, if you do this, there is

20   probably going to be a bar to a retrial." That's not the exact words. I can't remember exactly his

21   words but-- --

90

1      MJ:    I believe he used "double jeopardy."

2      CC [Mr. LOBSENZ]:  Okay.  There's going to be a double jeopardy problem.  He said

3    there's going to be a problem with retrial.

4      MJ:    Doesn't mean he was right.

5      CC [Mr. LOBSENZ]:  No.  But that was the time to say, "Woo, maybe I need to think

6    about other alternatives and explore them on the record."  It wasn't done.

7          Could I inquire whether you think you are in a position to orally indicate which

8    way your ruling will be or not?

9      MJ:    Well, I would like to take a recess, because I need--for one thing, I need a comfort

10   break and that--can we take about forty minutes--forty-five minutes for lunch?  And I'll have an

11   idea.  Before we leave today, I'll have an idea which way I'm leaning on this.  I just want to go

12   back and look at the briefs one more time on it.

13         It's now 1300.  Is forty-five minutes be sufficient for lunch?

14   [All counsel indicate positive responses.]

15      MJ:    Court's in recess until 1345.

16   **The Article 39(a) session recessed at 1258, 6 June 2007.**

17   **An Article 39(a) session was called to order at 1401, 6 June 2007.]**

18      MJ:    This Article 39(a) session is called to order.

19      TC:    All parties present when the court recessed are again present, Your Honor.

# CHARGE SHEET

## I. PERSONAL DATA

| 1. NAME OF ACCUSED (Last, First, MI) | 2. SSN | 3. GRADE OR RANK | 4. PAY GRADE |
|---|---|---|---|
| WATADA, EHREN K. | | 1LT | O-2 |

| 5. UNIT OR ORGANIZATION | 6. CURRENT SERVICE | |
|---|---|---|
| HHC, Special Troops Battalion, I Corps Fort Lewis, Washington 98433-9500 | a. INITIAL DATE<br>23 June 03 | b. TERM<br>Indef |

| 7. PAY PER MONTH | | | 8. NATURE OF RESTRAINT OF ACCUSED | 9. DATE(S) IMPOSED |
|---|---|---|---|---|
| a. BASIC | b. SEA/FOREIGN DUTY | c. TOTAL | None | N/A |
| $3,731.40 | None | $3,731.40 | | |

## II. CHARGES AND SPECIFICATIONS

10. CHARGE I        VIOLATION OF THE UCMJ, ARTICLE 87

THE SPECIFICATION: In that First Lieutenant Ehren K. Watada, U.S. Army, did, at or near Fort Lewis, Washington, on or about 22 June 2006, through design miss the movement of Flight Number BMYA91111173, with which he was required in the course of duty to move.

CHARGE II: VIOLATION OF THE UCMJ, ARTICLE 133

SPECIFICATION I: In that First Lieutenant Ehren K. Watada, U.S. Army, did, at or near Tacoma, Washington, on or about 7 June 2006, take part in a public press conference in which he communicated the following disgraceful statement, to wit: "It is my conclusion as an officer of the Armed Forces that the war in Iraq is not only morally wrong but a horrible breach of American law. . . . As the order to take part in an illegal act is ultimately unlawful as well, I must as an officer of honor and integrity refuse that order. . . . The wholesale slaughter and mistreatment of Iraqis is not only a terrible and moral injustice, but it's a contradiction to the Army's own law of land warfare. My participation would make me party to war crimes," or words to that effect, his statement bringing dishonor to the Armed Forces.

### (SEE CONTINUATION SHEET)

## III. PREFERRAL

| 11a. NAME OF ACCUSER (Last, First, MI) | b. GRADE | c. ORGANIZATION OF ACCUSER |
|---|---|---|
| LANCASTER, KEVIN | LTC | Special Troops Battalion, I Corps |

| d. SIGNATURE OF ACCUSER | e. DATE |
|---|---|
| *Ken Z. L* | 23 Feb 2007 |

AFFIDAVIT: Before me, the undersigned, authorized by law to administer oaths in cases of this character, personally appeared the above named accuser this 23 day of FEB , 20 07 , and signed the foregoing charges and specifications under oath that he/she is a person subject to the Uniform Code of Military Justice and that he/she either has personal knowledge of or has investigated the matters set forth therein and that the same are true to the best of his/her knowledge and belief.

| SCOTT T. VAN SWERINGEN | HHC, 42nd MP BDE |
|---|---|
| Typed Name of Officer | Organization of Officer |
| CPT | Trial Counsel |
| Grade | Official Capacity to Administer Oath<br>(See R.C.M. 307(b) – must be a commissioned officer) |
| *Scott Van Sweringen*<br>Signature | |

DD FORM 458, May 2000            EDITION IS OBSOLETE.

APPELLATE EXHIBIT I

UNITED STATES ARMY
FOURTH JUDICIAL CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | GOVERNMENT RESPONSE TO |
| | ) | DEFENSE MOTION TO DISMISS |
| v. | ) | ALL CHARGES ON GROUNDS OF |
| | ) | DOUBLE JEOPARDY |
| EHREN K. WATADA | ) | |
| 1LT, U.S. Army | ) | |
| HHC, I Corps | ) | |
| Fort Lewis, WA  98433-9500 | ) | 5 July 2007 |

## I. RELIEF SOUGHT

The Government respectfully requests this Court deny the Defense motion to dismiss all charges on grounds of double jeopardy.

## II. FACTS

On 5 July 2006, the Government charged the accused with one specification of missing movement by design and four specifications of conduct unbecoming an officer and a gentleman, in violation of Articles 87 and 133 of the Uniform Code of Military Justice (UCMJ). The charges stemmed from accused's refusal to deploy to Iraq on 22 June 2006 and from various public statements accused made between May and August of 2006. Proceedings began with accused's arraignment and a motions hearing on 4 January 2007.

On 16 January 2007, the Court issued a ruling on accused's proposed "Nuremberg Defense." Accused wished to argue in his defense that he was not required to obey the order to deploy because he believed that the war in Iraq was an illegal war, and that obeying the order would constitute a war crime.

The Court ruled based upon relevant case law that the accused's motive for refusing to deploy was irrelevant, as it did not relate to any of the elements of missing movement, under Article 87, UCMJ. The military judge ruled that, as a matter of law, the order to deploy was lawful, and that accused was not allowed to present evidence on the legality of the war in Iraq or his motive for missing movement.

On 5 February 2007, the trial proceeded and accused entered a plea of not guilty to all charges and specifications. The Government and the accused entered into a pretrial agreement, where the accused agreed to a stipulation of fact in exchange for the Government dismissing Specifications 2 and 3 of Charge II. In a lengthy stipulation of fact, accused admitted that on 22 June 2006 he "intentionally missed the movement of the flight to Iraq." The accused admitted he knew about the manifest and was specifically told about the flight by a superior commissioned officer. The accused admitted he

1

APPELLATE EXHIBIT XIX
(19)

"intentionally did not board the aircraft and as a result, missed the movement of Flight Number BMYA91111173." The military judge conducted an inquiry into the stipulation of fact, which was presented as Prosecution Exhibit (PE) 4 for identification (hereinafter PE 4). As part of the inquiry, the Court followed the parameters of Rule for Court Martial (RCM) 811(c) and asked:

> MJ:    Lieutenant Watada, the government has the burden of proving beyond a reasonable doubt every element of the offenses to which you've been charged. *By stipulating to the material elements of one of the offenses, as you are doing here, you alleviate that burden; that means, based upon the stipulation alone and without receiving any other evidence the court can find you guilty of the offenses to which the stipulation relates.* Do you understand that?

> ACC:  I do, sir.

Record of Trial (ROT), at p. 127.

The military judge went on to discuss the relationship between the pretrial agreement and the stipulation of fact:

> MJ:    It says here that upon the court accepting the stipulation of fact into evidence that the government will dismiss Specifications 2 and 3 without prejudice. What "without prejudice" means is that the government--if there would be a--if you would contradict your stipulation of fact that they could come back and resurrect those charges and charge you again with those. Do you understand that?

> ACC:  Yes, sir.

> MJ:    But upon completion of the trial proceedings, that those would be dismissed with prejudice, which means they could never bring them back. Do you understand that?

> ACC:  Yes, sir.

> MJ:    By "completion of trial proceedings," that means that either if you're found not guilty of all the offenses that that would end the trial, correct?

> ACC:  Yes, sir.

> MJ:    If you're found guilty of any offense, the completion of the trial proceedings would be the imposition of the sentence by the--or the announcement of sentence by the panel. Do you understand that?
>
> ACC:  Yes, sir.
>
> MJ:    And that's when The Charge would be dismissed with prejudice. That that would happen automatically. Do you understand that?
>
> ACC:  Yes, sir.
>
> MJ:    Is that what both counsel meant by "completion of the trial proceedings"?
>
> TC:    Yes, your Honor.
>
> CC:    That's correct.

ROT at 144-45.

The military judge went on to discuss the circumstances in which the pretrial agreement could be cancelled. ROT at 146. After a brief recess, the military judge had the following colloquy with accused:

> MJ:    Now, going back to my questions, do you understand that you can withdraw from this agreement right now and say, "make the Government prove everything?" Do you understand that?
>
> ACC:  I understand, sir.
>
> MJ:    That regardless of what this actually says, that you can--you don't have to have any reason, you don't have to have my permission. Are you freely entering into this because you want to?
>
> ACC:  I do, sir.
>
> MJ:    No doubt?
>
> ACC:  No doubt, sir.
>
> MJ:    And the last way this can be cancelled is if I refuse to accept the stipulation of fact. How that can happen is if

3

>you bring up something or your counsel bring up
>something inconsistent with what you've stipulated as the
>uncontradicted facts in this case. Do you understand that?
>
>ACC:  Yes, sir.
>
>MJ:    That if the stipulation says, "Red," and you come in
>a (sic) say, "Blue," I'll have to reopen what we talked about
>earlier, and kind of make sure those--that we're still on the
>same sheet of music here about whether this is an accurate
>stipulation of fact. Do you understand that?
>
>ACC:  I understand, sir.
>
>MJ:    That that continues all the way until--in this court
>all the way through any potential sentence if you're found
>guilty.

Id. at 147-48.

   Based on the accused's answers, the Court found the stipulation of fact complied
with RCM 811(c) and accepted PE 4 into evidence. Id. at 149. The Government moved
to dismiss "Specifications 2 and 3 of [C]harge II without prejudice, to ripen into
prejudice upon conclusion of the proceedings." Id. at 178.

   The Court was assembled and the Government presented its case. The stipulation
of fact was published to all of the members, who read it completely before the close of
the Government's case. ROT at 263. The panel watched both videos that were attached
to the stipulation of fact. ROT at 270. The military judge also told the members that, as
a matter law, "the order to deploy, if given, is lawful." Id. at 310.

   After the close of the Government's case, Defense counsel submitted a proposed
instruction. The instruction stated that "The evidence has raised the issue of mistake on
the part of the accused concerning his belief that he had a legal and moral obligation to
refuse to participate in the war in Iraq relating to the offense of missing movement." The
military judge began an inquiry into whether accused's belief that he had a valid mistake
of fact defense contradicted the stipulation of fact. ROT at 354. The civilian defense
counsel attempted, more than once, to thwart the military judge's effort to discuss the
issue with the accused.

>MJ:    All right. Counsel, what is your basis for mistake
>of fact? To what element does it go?
>
>CC:    It goes to the intent element; purely to the intent
>element. With respect to the missing movement charge, it
>has always been Lieutenant Watada's position that he

intended not merely to miss movement, but to avoid
participating in a war that he considered to be illegal, and
that the orders to compel him to go to Iraq, in essence, were
compelling him to put himself in a position where he would
be supporting and engaging in war crimes. *So his specific
intent, which is required by the offense, was not the mere
intent to miss a movement. His intent, his state of mind,
was of a different character, altogether.* And, we have
argued that repeatedly. We have also, as you know, in the
stipulation, if you look at the last paragraph -- sorry, the
last sentence of the first paragraph, it says it there, and you
approved this language, "With this stipulation; however,
the defense does not waive any future claim with regard to
the motions and objections previously litigated."

Id. at 354-55, 357.

The accused wanted to argue that while he intentionally disobeyed his order to
deploy and intentionally missed the deployment, he was legally excused because he did
not believe the order to deploy was lawful. After several minutes of argument by the
Defense counsel that there is a specific intent element with respect to an accused's belief
that an order to deploy was lawful, Defense counsel stated he was not going to allow the
accused to answer the military judge's questions regarding the stipulation of fact. ROT at
354-61.

The military judge stated that he would reject the stipulation of fact if he could
not resolve, in his own mind, that there was not an inconsistency between the parties'
understanding of the stipulation of fact. Id. at 358. Eventually, the Defense counsel
allowed his client to answer the military judge's questions. Id. at 361. The following
colloquy took place:

> MJ:    Do you believe that Paragraph 4 admits every
> element of the offense of missing movement?

> ACC:    Sir, no, it does not. Because I had a specific
> reason for what I intended to do and that was as I stated
> earlier.

> MJ:    That's where I'm having a problem reconciling that
> you intentionally did not aboard (sic) the aircraft, because if
> you had no duty to board the aircraft, why would you
> intentionally not board the aircraft. If you believed you did
> not have a duty to do so, regardless of whether it's a legal
> duty or not, what did you believe?

ACC:    Your Honor, I did not board the aircraft out of negligence or because I thought it was a mistake. It's because I felt that what I was being asked to do -- by intentionally missing the movement, I could not take part in it.

MJ:    I'm going to read you what we covered back in the first session on Monday and I want you to explain to me what you think this meant to you, when I read, "Lieutenant Watada, the government has the burden of proving beyond a reasonable doubt every element of the offenses with which you are charged. By stipulating to the material elements of the offense of missing movement, as you are doing here, you alleviate that burden. That means based upon the stipulation alone and without receiving any other evidence this court can find you guilty of the offense to which this stipulation relates. Do understand (sic) that?" And you told me you did. What does that mean to you because you stipulated to every element of the offense of missing movement by design?

ACC:    Sir, yes, I do understand that I stipulated, and I believe -- I understand the arguments that the prosecution was making. But I also understand that there is additional evidence that could go to my defense.

MJ:    *Government, did you believe this was a confessional stipulation, as contemplated by RCM 811?*

TC:    *We did, Your Honor.* Further, we would just like to point out that he has -- the accused has admitted to every element of the offense. His subjective beliefs in the legality of the order are irrelevant and his motives for missing the movement are absolutely irrelevant, as provided in your previous ruling, and he would have -- so, at this point, I guess I'm just at a loss.

MJ:    Defense, do you believe that this stipulation is a "confessional stipulation," as contemplated by Rule for Court-Martial 811?

CC:    As far as it goes, it is a stipulation of fact, which was intended to relieve the government of proving certain facts; however, it has always been our position that Lieutenant Watada has a defense based upon the motions that we raised earlier, which you have precluded us from

raising at trial, and we are not altering our position in that respect, nor did we alter it in this stipulation, as I pointed out to you in the preparatory paragraph in the last sentence which says that this stipulation is being made subject to prior arguments and without waiving those arguments.

MJ:     That's a completely different matter, then. *Do [sic] believe that this is the confessional stipulation, as contemplated by Rule for Court-Martial 811?*

CC:     *I believe that you and the government could interpret it as that and that* the government could argue, based upon this stipulation, that they don't have to prove anything further based upon their theory of the case. *Our theory of the case is somewhat different.*

ROT at 363-65.

After more argument, both Defense counsel and the trial counsel believed that while the stipulation of fact admitted all of the material elements of missing movement, it did not constitute a confessional stipulation. Id. at 365-72. The military judge was not satisfied that counsel for either side sufficiently addressed his concerns, and reconsidered the admission of the stipulation of fact. Id. at 372. The military judge then asked the Government if they would like to re-open their case or if they were requesting a mistrial, based on a material breach of the pretrial agreement. ROT at 372.

TC:     Your Honor, if we were to -- just for clarification sake, if we were to reopen the case and proceed forward, what would the instruction to the panel be in regards to Prosecution Exhibit 4?

MJ:     They would disregard it in the entirety. *That's the problem we have is this is that how are we going to unring that bell?*

ROT at 372 (emphasis added).

After a recess the Government moved for a mistrial, which the military judge granted over Defense objection. ROT at 374. The military judge ruled that the mistrial was granted based upon the material breach of the pretrial agreement due to the military judge's rejection of the stipulation of fact. ROT at 379.

After the declared mistrial, the Government re-preferred and re-referred the instant charges and their specifications against the accused on 23 February 2007.

7

III. LAW

U.S. CONST. amend. V
Article 87, UCMJ
R.C.M. 811(c)
R.C.M. 916(I)(1)
United States v. Jorn, 400 U.S. 470, 482 (1971)
United States v. Freeman, 208 F.3d 332 (1st Cir. 2000)
United States v. Huet-Vaughn, 43 M.J. 105 (CAAF 1995)
United States v. New, 55 M.J. 95 (CAAF 2001)
United States v. Massey, 50 C.M.R. 346 (ACMR 1975)
United States v. Diaz, 59 M.J. 79 (CAAF 2003)
United States v. Keenan, 39 C.M.R. 108 (CMA 1969)
United States v. Bertelson, 3 M.J. 314 (CMA 1977)
United States v. Graham, 16 M.J. 460 (C.M.A. 1983)
United States v. Carson, 35 C.M.R. 379 (C.M.A. 1965)
United States v. Dancy, 38 M.J. 1, 6 (CMA 1993)

IV. WITNESSES/EVIDENCE

The Government does not request oral argument. The Government relies primarily upon the Record of Trial but does intend to call Major Scott Van Sweringen in support of this response if necessary.

V. ARGUMENT

**The Military Judge Properly Exercised His Discretion in Rejecting the Stipulation of Fact and in Granting a Mistrial.**

Although erratically argued throughout the course of its brief, the Defense essentially claims that the military judge inappropriately declared a mistrial in the absence of manifest necessity because: (1) the military judge improperly concluded that the stipulation of fact amounted to a confessional stipulation; (2) the military judge incorrectly found that the accused misunderstood the consequences of the confessional stipulation of fact thereby requiring inquiry and the ultimate rejection of the stipulation, (3) the Court could have employed a curative instruction to resolve the prejudice to the accused and/or (4) the Court should have granted a continuance to allow the parties to revise the stipulation of fact. The Defense's arguments are legally and factually misplaced.

I. The Court Properly Found the Stipulation to be Confessional in Nature.

Contrary to the Defense's argument, the military judge properly determined the stipulation of fact constituted a confessional stipulation. The discussion section of R.C.M. 811(c) states that "[a] stipulation practically amounts to a confession when . . . it

8

establishes, directly or by reasonable inference, every element of a charged offense and when the defense does not present evidence to contest any potential remaining issue of the merits." R.C.M. 811(c) discussion. On the other hand, a stipulation fails to be confessional "if the defense contests an issue going to guilt which is not foreclosed by the stipulation." Id. In this case, the stipulation of fact established each element of missing movement through design under Article 87, UCMJ.[1] Accused also admitted to all the essential elements of the offense during the military judge's inquiry. ROT at 127. The military judge properly conducted an inquiry into the accused's desire to enter into a stipulation of fact that admitted all the essential elements of the offense of missing movement through design, as required by United States v. Bertelson, 3 M.J. 314 (CMA 1977). Furthermore, the stipulation of fact, coupled with the military judge's ruling on the lawfulness of the order to deploy, foreclosed any defense to the charge of missing movement.

Accused stipulated that he knew of the flight manifest, that he signed a counseling form "acknowledging the requirement for him to deploy," that he actually missed the movement, and that he "intentionally did not board the aircraft." Prosecution Exhibit No. 4, at ¶4. The accused echoed the stipulation during the military judge's inquiry by stating he knew about the manifest dates, he had no doubt that he was required to deploy, he intended not to board the aircraft, and he did not board the aircraft. ROT at 133, 138.

Prior to discussing the substance of the stipulation, the military judge informed accused of the confessional nature of the stipulation. Id. at 127. The military judge stated that *"[b]y stipulating to the material elements of one of the offenses, as you are doing here,* you alleviate [the government's] burden [of proof]" and "based upon the stipulation alone and without receiving any other evidence the court can find you guilty of the offenses to which the stipulation relates." Id. (emphasis added). The military judge asked, "[d]o you understand [the effect of entering into the stipulation]?" Accused responded, "I do, sir." Id.

The accused now claims that he avoided stipulating to essential elements of the crime, and thus, the stipulation was non-confessional. Accused contends "that he never stipulated" that he missed a movement "required in the course of duty" and he failed to possess the "specific intent" of missing movement through design. These arguments, however, are premised on the accused's erroneous conclusion that the specific intent element of missing movement applies to the lawfulness of the order to deploy rather than to the accused's intent to not board the aircraft, which the Defense concedes in their brief.

---

[1] The four elements of Article 87, UCMJ are:

> 1) That the accused was required in the course of duty to move with a ship, aircraft, or unit;
> 2) That the accused knew of the prospective movement of the ship, aircraft, or unit;
> 3) That the accused missed the movement of the ship, aircraft, or unit; and
> 4) That the accused missed the movement though design or neglect.

MCM, Part IV, para. 11b. "'Design' means on purpose, intentionally or according to a plan and requires specific intent to miss the movement." MCM, Part IV, para.d 11c(3).

Defense Motion, at 12. The military judge previously ruled the order to deploy was lawful, accused stipulated that he received the order, and accused admitted he "intentionally" missed the movement. See ROT at 138, 363; PE 4, at ¶4.

In United States v. Graham, 16 M.J. 460, 464 (C.M.A. 1983), the Court of Appeals for the Armed Forces (CAAF) stated that under Article 87, UCMJ, "in the course of duty" is premised on the issuance of an order. Specifically, CAAF held that "when a serviceperson is ordered to move aboard a specific aircraft or ship, military or chartered, and, through design or neglect, fails to move with that aircraft or ship, Article 87 is violated." Id. It is undisputed that accused received the order to board the aircraft and the military judged deemed that order lawful.[2] The accused's insistence that the movement was not required "in the course of his duty" is incorrect, both factually and legally.

Similarly, the stipulation of fact foreclosed accused's allegation that he did not possess the "specific intent" to miss the movement. Accused stipulated that he specifically intended not to board the plane. ROT at 138. Accused confuses his "motive" for missing the movement with his "specific intent." His reason, or motive, did not negate his specific intent to miss the movement. Because the stipulation of fact contained each element of the offense and the arguments advanced by accused were foreclosed by the military judge's previous ruling on the lawfulness of the order to deploy, the military judge properly deemed the stipulation confessional.

II.  The Defense's Request for the Mistake of Fact Instruction Necessitated Judicial Inquiry and Ultimate Rejection of the Confessional Stipulation of Fact.

The accused's arguments are misguided and highlight his fundamental misunderstanding of the nature and effect of the stipulation. Accused stipulated to all the elements of the offense of missing movement through design but still believed he had a factual defense to the charge. Accused's proposed defense, however, was legally barred.

The misunderstanding came to the fore when the accused's defense counsel requested a mistake of fact instruction, with respect to the missing movement charge, at the conclusion of the government's case-in-chief. The Defense threw this proverbial monkey wrench into the merits phase at a curious time before the Defense seriously commenced its case in chief. The Court must recall the Defense, not the Government or the Court, initially triggered the decisions that the Defense now challenges in their entirety.

---

[2] Accused wants, more than anything, to raise as a defense to missing movement his belief that the war in Iraq is illegal, making any order to deploy unlawful. However, whether or not a particular order, if given, is lawful or not is an interlocutory question of law, to be resolved by the military judge. See United States v. New, 55 M.J. 95, 101 (CAAF 2001)(citing United States v. Carson, 35 C.M.R. 379, 380 (C.M.A. 1965)); AE XXI. Accused's inability to accept this principle of law, and the fact that the military judge ruled against him on this issue, lies at the heart of his problem both here and at trial.

The requested instruction stated "accused is not guilty of missing movement if, (1) he mistakenly believed that he had a legal or moral obligation to refuse to participate in the war in Iraq and (2) if such belief on his part was reasonable." Appellate Exhibit XLV. The proposed instruction contradicted the confessional stipulation and the military judge elected to reopen the inquiry of accused to determine if accused understood the effect of the stipulation. ROT at 361. Prior to the reopening of the inquiry, Defense counsel adamantly opposed the military judge speaking to his client and maintained that his client "had a defense" to missing the movement, underscoring the misunderstanding of the confessional stipulation. Id. at 357.

Instead of implicating a mistake of fact instruction, the accused was attempting to raise a classic *mistake of law* defense. See R.C.M. 916(l)(1). As R.C.M. 916(l)(1) makes all too clear, "[i]gnorance or mistake of law, including general orders or regulations, ordinarily is not a defense." The rules clarify this restriction in the accompanying discussion by stating "if the accused disobeyed an order, under the actual but mistaken belief that the order was unlawful, this would not be a defense because the accused's mistake was as to the order itself." Id. The irrelevance of such an argument remains consistent with the military court's characterization of the lawfulness presumption and political question doctrines. See, generally, United States v. Huet-Vaughn, 43 M.J. 105, 114 (CAAF 1995)(holding the accused could not introduce evidence of motive as a defense to specific intent element of desertion with intent to avoid hazardous duty and shirk important service); New, 55 M.J. 95.

Although misguided, the Defense argued the mistake of fact defense applied and would permit the accused to introduce evidence of his motive. Had the parties fully litigated the merits and the accused not previously satisfied the Bertelson inquiry for introduction of the stipulation of fact, the Court could have merely denied the requested instruction. The Court could then also have precluded the accused from introducing his evidence of motive as outlined in the Court's pretrial rulings. However, the Defense's misconception of the mistake of fact defense certainly indicated the accused may have agreed to the confessional stipulation without truly appreciating his inability to raise any such defenses or introduce evidence of motive.

As such, the military judge had an *affirmative duty*, under R.C.M. 811(b) to reopen the inquiry. The discussion section of the rule states, "the military judge should not accept a stipulation if there is *any doubt* of accused's or any other party's understanding of the nature and effect of the stipulation." RCM 811(b) Discussion (emphasis added). The military judge's doubt regarding the parties' understanding of the stipulation was well-justified, particularly in light of his inquiry with accused, trial defense counsel, and trial counsel.

After the recess, the military judge questioned accused to clarify accused's understanding of the nature and effect of the stipulation. The following exchange only served to confirm the Court's suspicions and clearly highlighted the misunderstanding:

11

MJ:    *Do you believe that Paragraph 4 admits every element of the offense of missing movement?*

ACC:    *Sir, no, it does not.* Because I had a specific reason for what I intended to do and that was as I stated earlier.

MJ:    That's where I'm having a problem reconciling that you intentionally did not aboard (sic) the aircraft, because if you had no duty to board the aircraft, why would you intentionally not board the aircraft. If you believed you did not have a duty to do so, regardless of whether it's a legal duty or not, what did you believe?

ACC:    Your Honor, *I did not board the aircraft out of negligence or because I thought it was a mistake.* It's because I felt that what I was being asked to do -- by intentionally missing the movement, I could not take part in it.

MJ:    I'm going to read you what we covered back in the first session on Monday and I want you to explain to me what you think this meant to you, when I read, *"Lieutenant Watada, the government has the burden of proving beyond a reasonable doubt every element of the offenses with which you are charged. By stipulating to the material elements of the offense of missing movement, as you are doing here, you alleviate that burden. That means based upon the stipulation alone and without receiving any other evidence this court can find you guilty of the offense to which this stipulation relates. Do understand that?"* And you told me you did. What does that mean to you because you stipulated to every element of the offense of missing movement by design?

ACC:    Sir, yes, I do understand that I stipulated, and I believe -- I understand the arguments that the prosecution was making. *But I also understand that there is additional evidence that could go to my defense.*

ROT at 363.

The military judge then asked the Government if they believed the stipulation was confessional and the trial counsel responded, "We did, Your Honor." Id. at 364. At this point, the military judge properly voiced his concern about the confessional stipulation. The military judge stated:

> *Well, understand that we can't have disagreements as to material elements of a pretrial agreement, and we cannot have disagreements as to what the pretrial agreement means.* I

covered this, and I did of [sic] <u>Bertelson</u> inquiry, which is a
confessional stipulation inquiry, and I inquired as to, "[d]o both
counsel agree to the stipulation, the uses of the stipulation and the
pretrial agreement and my interpretation of the pretrial agreement."
That's where I'm having problems is -- are we -- I'm not seeing that
we have a meeting of the minds, here.

<u>Id</u>. at 365. The military judge further stated, that "there is a material misunderstanding
between the parties of what this stipulation is. You [the Government] believe that is a
confessional stipulation; that it admits every element. The defense does not believe that."
<u>Id</u>. at 368.

The Defense counsel and trial counsel agreed that the accused signed a
"stipulation of fact," however, the military judge correctly detected a fundamental
misunderstanding of the parties as to the confessional nature of the stipulation and the
follow-on consequences of admitting the stipulation. In essence, the accused entered a
stipulation believing that he could present additional evidence to negate his culpability
through the misguided application of the mistake of fact defense. Whereas, the
Government believed the stipulation was confessional, meeting all the elements of the
charged offenses.

Once the accused indicated his intention to introduce motive evidence, the
misunderstanding became evident, a misunderstanding Defense counsel should have
clarified during the Court's <u>Bertelson</u> inquiry. This misunderstanding demonstrated the
accused's agreement with the Government to admit the confessional stipulation was not
knowing, intelligent and voluntary. <u>Bertelson</u>, 3 M.J. at 315. Based upon this
misunderstanding, the military judge reconsidered the stipulation, rejected it and properly
withdrew the stipulation from evidence in light of <u>Bertelson</u> and Article 45, UCMJ. ROT
at 371.

III. <u>The Court Could Not Have Cured the Prejudice to the Accused With A Limiting
Instruction.</u>

Following the Court's rejection of the stipulation, the Government ultimately
moved for a mistrial and the military judge granted the motion. The Government had
previously published the confessional stipulation to the panel. The military judge
properly declared a mistrial under R.C.M. 915 because the confessional stipulation was
published to the panel and the panel viewed videotaped recordings of accused's
statements.

R.C.M. 915(a) states that, "the military judge may, as a matter of discretion,
declare a mistrial when such action is manifestly necessary in the interest of justice
because of circumstances arising during he proceedings which cast substantial doubt
upon the fairness of the proceedings." Specifically, the Army Court of Military Review
(ACMR) has declared "[t]he military judge should declare a mistrial to cure errors which
are 'manifestly prejudicial and the effect of which cannot be obliterated by cautionary

instructions or the ends of public justice would be otherwise defeated.'" <u>United States v. Massey</u>, 50 C.M.R. 346, 347 (ACMR 1975); <u>United States v. Diaz</u>, 59 M.J. 79, 90 (CAAF 2003); <u>United States v. Keenan</u>, 39 C.M.R. 108, 115 (CMA 1969). Moreover, the Supreme Court has granted greater discretion to Court's acting in the sole interest of the defendant." <u>United States v. Jorn</u>, 400 U.S. 470, 482 (1971). Although a grant of mistrial should be used with "great caution," the military judge "has considerable latitude in determining when to grant a mistrial" and consequently, the military judge's decision regarding motions for a mistrial will be reviewed for an abuse of discretion. RCM 915(a) Discussion; <u>United States v. Seward</u>, 49 M.J. 369, 371 (CAAF 1998); <u>United States v. Dancy</u>, 38 M.J. 1, 6 (CMA 1993). CAAF stated the discretion given to a military judge in declaring a mistrial is consistent with a First Circuit decision that held:

> The trial court has a superior point of vantage, and . . . it is only
> rarely -- and in extremely compelling circumstances -- that an
> appellate panel, informed by a cold record, will venture to reverse
> a trial judge's on-the-spot decision . . . . [A] mistrial is viewed as a
> last resort, only to be implemented if the taint is ineradicable, that
> is, only if the trial judge believes that the jury's exposure to the
> evidence is likely to prove beyond realistic hope of repair.

<u>Diaz</u>, 59 M.J. at 91 (<u>citing United States v. Freeman</u>, 208 F.3d 332, 339 (1st Cir. 2000)). The military judge properly exercised his discretion when he declared a mistrial. The panel was presented, through the stipulation of fact, with sufficient evidence that accused committed a serious crime. Permitting the panel members to hear the confessional stipulation that proved all the elements of a crime and then removing the evidence would not serve the "interests of justice" and would "cast substantial doubt upon the fairness of the proceedings." RCM 915(a). The military judge articulated his concern by stating that he did not know how to "unring that bell;" evidence of his belief that the panel could not disregard the previously admitted stipulation. ROT at 372.

    The Court was indeed correct; clearly the panel would not have been able to disregard the confessional stipulation? Particularly where the stipulation included the accused's use of inflammatory rhetoric at two public events and a media interview in which he espoused the "radical idea" that Soldiers on the battlefield should refuse to follow orders and characterized the Commander in Chief as deceitful, distrustful and a war criminal. Surely, any panel simply could not ignore these profoundly incriminating facts. The bell had been rung and no curative efforts by the Court could have unconvinced the panel of facts with which they had become intimately familiar.

    Beyond the actual prejudice, the Defense, not the Government or the Court, had placed the Court in an untenable position. Either declare a mistrial or proceed and ultimately reject the Defense's request for a mistake of fact defense instruction. The Defense could have simply argued on appeal that he would not have confessed had he know he was foreclosing the opportunity to present his only defense. The Court properly prevented what the Defense on appeal would have clearly was the appearance of a sham proceeding.

Indeed, Military Courts have declared that a manifest necessity encompasses improvident guilty pleas coupled with stipulations of fact. <u>United States v. Scarbrough</u>, 28 C.M.R. 527 (ACMR 1959). To do otherwise would contravene the protections inherent in Article 45, UCMJ. No finder of fact can be expected to disregard a guilty plea equivalent with accompanying incriminating facts and once again grant to the accused the presumption of innocence. Without a revised stipulation largely containing the previously published facts, the panel could not ignore the accused's prior confession.

Moreover, the Court's finding does not offend the rules of former jeopardy when acting in the sole benefit of the accused. When the Defense raised the mistake of fact defense, counsel conceded he expected the Court to deny the request:

> MJ: I feel I need to reopen the inquiry as to your client's understanding of the stipulation o fact and whether there is a material misunderstanding and whether he believes that there is a defense because he has stipulated to all of the elements.

> CC: He does believe there is a defense. We tried to raise that defense by motions, and you rejected those motions. *And my assumption is, consistent with your rejection of those motions, that you will reject this instruction.*

ROT, at 357, ¶ 11-17 (emphasis added). In essence, the Defense was attempting to assert what it believed to be a defense while confessing to the crime. The Court, in the sole interest of the accused, could not allow such a blunder. No accused would knowingly, intelligently and voluntarily confess to a crime he fervently believed he did not commit. Such was the Defense request. Had the Court embraced this inherently contradictory position, the accused would have suffered the stigmatism of a federal conviction and perhaps additional punishment. Instead, the Court properly exercised the only available device to protect the accused from his fundamental misunderstanding, a mistrial.

IV. <u>A Continuance Would Not Have Cured the Prejudice to the Accused.</u>

The Defense argues the Court should have granted a continuance to allow the Government to marshal its evidence and/or permit the parties to revise the stipulation. The Government dismisses the first contention out of hand given the overwhelming and irrevocable prejudice to the panel that would have resulted in a clear injustice and actual if not perceived unfairness of the proceeding. No conceivable continuance could have removed the taint of this panel and the resulting prejudice to the accused.

As to the second contention, Defense raises the option of a continuance to revise the stipulation as a legitimate alternative to the Court's mistrial decision. This argument fails to account for the futility of such efforts. On 7 February 2007, the Court commenced its Article 39a session at 1043. Several moments later, the Court, after discovering the accused's misunderstanding, granted Defense's request for a continuance

15

to address these concerns. When the Court reassembled ninety minutes later at 1224, the accused remained recalcitrant in his position that he believed he should be permitted to argue the illegality of the war. Once crystallized, the Court granted no less than two more recesses and provided the parties with ample opportunity to address the Court's concerns.

Despite these opportunities, the parties demonstrated no desire to reach a compromise or convince the Court to order only a partial mistrial. Instead, the Defense refused to concede the dilemma facing the Court or propose any alternatives thereby forcing the Court to decide between proceeding with a fatally prejudiced panel or granting a mistrial. In this case, the Court had no obligation to force the accused to compromise with the Government. In fact, the accused's unyielding position would not have permitted a compromise stipulation.

The horns of this dilemma rest on the concern that the accused only objected to the illegality of the order and was determined to offer evidence on the issue. In addition to requesting a mistake of fact defense, the accused surely would have attempted to testify and would have forced the Court to strictly circumscribe the accused's evidence. As a result, the accused was unyielding on the one issue that had been decided as a matter of law. The parties simply could not have reached a non-confessional stipulation that would have allowed the accused to present his evidence and cure the existing prejudice. Either solution would fail to resolve the remaining issue. To scuttle the stipulation would have relied upon a prejudiced panel and a stipulation incorporating the previously disclosed facts would have failed to satisfy the accused.

## VI. CONCLUSION

The Government respectfully requests this Court deny the Defense motion to dismiss all charges on grounds of double jeopardy.

FOR THE UNITED STATES this 5th day of July 2007.

GRADY J. LEUPOLD
CPT, JA
Trial Counsel

I certify that I served or caused to be served a true copy of the above on Mr. James E. Lobsenz and Mr. Kenneth S. Kagan, via electronic mail, on 5 July 2007.

GRADY J. LEUPOLD
CPT, JA
Trial Counsel

16

1
2
3
4
5
6
7

UNITED STATES ARMY TRIAL JUDICIARY
FOURTH JUDICIAL CIRCUIT
FORT LEWIS, WASHINGTON

8
9
10

UNITED STATES OF AMERICA,

11
vs.

MOTION TO DISMISS ALL
CHARGES ON GROUNDS OF
DOUBLE JEOPARDY

12
13

1 LT EHREN K. WATADA,
United States Army,
HHC, Special Troops Battalion
1 Corps
Fort Lewis, Washington 98433-9500

14
15
16

**RELIEF REQUESTED**

17

The accused herein, 1Lt. Ehren Watada, respectfully urges this Court to enter an

18

Order dismissing all charges and specifications, in that his constitutional and statutory

19

rights to be free from multiple prosecutions would be violated should this matter proceed

20

to a second trial.

21

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 1

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

APPELLATE EXHIBIT XXI (21)

## ARGUMENT

A second prosecution of 1Lt. Watada is barred by the Fifth Amendment and U.C.M.J. Article 44, in that the military judge abused his discretion in declaring a mistrial during the first prosecution, and made such declaration without the consent of 1Lt. Watada.

1LT Watada's Motion to Dismiss all charges pending against him has the support of decades of jurisprudence, which has recognized that having to defend against a subsequent prosecution is fraught with anxiety, danger, expense, and risk of wrongful conviction.

As the United States Supreme Court put it so succinctly in *Green v. United States*, 355 U.S. 184 (1957):

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Id.* at 187-88.

The *Green* Court emphasized that this vital constitutional right is not to be given a narrow, grudging application, for that would deprive the right of its great significance. *Id.* at 198. "The right not to be place in jeopardy more than once for the same offense is a vital safeguard in our society, one that was dearly won and that should continue to be highly valued." *Id.*

The risk that an innocent person will be convicted in a subsequent trial is not remote or merely theoretical. As will be discussed in greater detail, *infra*, the accused is punished

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 2

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Pt.Lewis ig013303 7/2/07

1    and the Government is rewarded when the Government is permitted to take advantage of

2    error by the court, which then gives the Government the opportunity to sharpen its skills, re-

3    think its theories, counsel its witnesses, etc., which would then afford the Government a

4    better chance at a conviction.

5          The United States Supreme Court recognized this risk in *Arizona v. Washington*, 434

6    U.S. 497, 508 (1978), when it observed:

> The Double Jeopardy Clause does protect a defendant against
> governmental actions intended to provoke mistrial requests and
> thereby to subject defendants to the substantial burdens imposed by
> multiple prosecutions. It bars retrials where 'bad-faith conduct by
> judge or prosecutor'... threatens the '[harassment] of an accused by
> successive prosecutions or declaration of a mistrial so as to afford the
> prosecution a more favorable opportunity to convict' the defendant.

11         The accused makes no accusations that the military judge or the Government acted in

12   bad faith, because there is absolutely no way to make that determination. Whether or not the

13   judge and the Government acted in bad faith is immaterial, however, when the effect is the

14   same, as noted by the United States Supreme Court in *United States v. Jorn*, 400 U.S. 470

15   (1971), wherein the Court held:

> Reprosecution after a mistrial has unnecessarily been declared by the
> trial court obviously subjects the defendant to the same personal strain
> and insecurity *regardless of the motivation underlying the trial
> judge's action*.

19   *Id*. at 483 (emphasis added).

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 3

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

A.    **A MISTRIAL MAY ONLY BE DECLARED WHEN MANIFEST NECESSITY REQUIRES IT, AND THERE IS NO LESS DRASTIC ALTERNATIVE AVAILABLE.**

As the Court of Appeals for the Armed Forces noted in *United States v. Harris*, 51 M.J. 191 (C.A.A.F. 1999), declaration of a mistrial must be viewed through the prism formed by the Double Jeopardy Clause of the Fifth Amendment; Article 44(a) of the UCMJ [10 U.S.C. § 844(a)]; and RCM 915. The Double Jeopardy Clause and UCMJ 44(a) are designed to protect the accused against repeated attempts to try an individual for the same offense, including subjecting the accused to the embarrassment, expense, and ordeal of a second trial.

RCM 915(a) holds in pertinent part that a mistrial may be declared in the discretion of the military judge "when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings."

On the other hand, the *Harris* Court also noted that for a military judge to declare a mistrial is "a drastic remedy," which should be used only when necessary "to prevent a miscarriage of justice." *See, also, United States v. Garces*, 32 M.J. 345, 349 (C.M.A. 1991).

Among the many factors for the judge to consider, in determining whether or not to declare a mistrial, the *Harris* Court, citing *United States v. Donley*, 33 M.J. 44, 47 (C.M.A. 1991), indicated in addition to considering potential alternative remedies, the most important consideration is the desire of, and the impact on, the accused. It is the accused who "retain[s] primary control over the course to be followed in the event of" trial errors. *See, also, United*

MOTION TO DISMISS ALL CHARGES ON GROUNDS OF DOUBLE JEOPARDY – 4

CARNEY BADLEY SPELLMAN

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1  *States v. Dinitz*, 424 U.S. 600, 609 (1976).

2      When trial is terminated over defense objection, as was done here, the Government

3  has a heavy burden of showing "manifest necessity" for the mistrial in order to remove the

4  double jeopardy bar to a second trial. *Arizona v. Washington, supra*, 434 U.S. at 505.

5      For this reason, a military judge contemplating the declaration of a mistrial over the

6  objection of the defense must approach the use of this power "with the greatest caution,

7  under urgent circumstances, and for very plain and obvious causes." *Burtt v. Schick*, 23 M.J.

8  140, 142 (C.M.A. 1986), citing *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824).

9      If a judge has a doubt about the fairness of a trial, before declaring a mistrial, the trial

10 judge must determine that "an alternative measure, less drastic than mistrial, would not

11 alleviate the problem so as to allow the trial to continue to an impartial verdict." *Burtt v.

12 Schick, supra*, 23 M.J. at 142; *United States v. Ghent*, 21 M.J. 546, 550 (A.F.C.M.R. 1985).

13 *See, also, United States v. Jorn, supra.*

14
**B.    ONCE THE JURORS HAVE BEEN SWORN, JEOPARDY HAS ATTACHED
15      AND THE ACCUSED HAS A VALUED CONSTITUTIONAL RIGHT TO
        HAVE HIS TRIAL COMPLETED BEFORE THAT PARTICULAR JURY.**

16
17      In addition to protecting a defendant against a second trial following an acquittal,

18 the Fifth Amendment prohibition against double jeopardy protects a criminal defendant's

19 "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336

20 U.S. 684, 689 (1949).

21      Even if the first trial is not completed, a second prosecution may be
        grossly unfair.  It increases the financial and emotional burden on the
        accused, prolongs the period in which he is stigmatized by an unresolved

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 5

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1    accusation of wrongdoing, and may even enhance the risk that an
     innocent defendant may be convicted. The danger of such unfairness
2    exists whenever a trial is aborted before it is completed. Consequently,
     as a general rule, the prosecutor is entitled to one, and only one,
3    opportunity to require an accused to stand trial.

4    *Arizona v. Washington, supra*, 434 U.S. at 503-04.

5        A trial judge's decision "to abort a criminal proceeding where jeopardy has attached

6    is not one to be lightly undertaken, since the interest of the defendant in having his fate

7    determined by the jury first impaneled is itself a weighty one…" *Illinois v. Somerville*, 410

8    U.S. 458, 471 (1973). "Nor will the lack of demonstrable additional prejudice preclude the

9    defendant's invocation of the double jeopardy bar in the absence of some important

10   countervailing interest of proper judicial administration." *Id.*

11   **C.   TO AVOID A CONSTITUTIONAL BAR TO RETRIAL, THE
     PROSECUTION MUST CARRY A HEAVY BURDEN OF PROOF TO SHOW
12   THAT THE ABORTION OF THE FIRST TRIAL WAS JUSTIFIED BY A
     HIGH DEGREE OF NECESSITY, IN ORDER TO AVOID THE RISK THAT
13   THE GOVERNMENT GAINS AN UNFAIR ADVANTAGE IN IMPROVING
     ITS CHANCES OF CONVICTING THE ACCUSED.**
14

15       In order to avoid a double jeopardy bar to retrial, a heavy burden of proof lies on the

16   prosecution to justify the declaration of mistrial:

17       [The accused's] valued right to have the trial concluded by a particular
         tribunal is sometimes subordinate to the public interest in affording the
18       prosecutor one full and fair opportunity to present his evidence to an
         impartial jury.   Yet in view of the importance of the mistrial, *the*
19       *prosecutor must shoulder the burden of justifying the mistrial if he is to*
         *avoid the double jeopardy bar. His burden is a heavy one.*   The
20       prosecution must demonstrate "manifest necessity" for any mistrial
         declared over the objection of the defendant.
21

     *Arizona v. Washington, supra*, 434 U.S. at 505 (emphasis added). The   words   "manifest

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
–6

wat013 Plds- Ft. Lewis ig013303 7/2/07

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

necessity" aptly "characterize the magnitude of the prosecutor's burden." *Id.* The Supreme Court requires "a 'high degree' [of necessity] before concluding that a mistrial is appropriate." *Id.* at 506.

The prohibition against double jeopardy unquestionably "forbids the prosecutor to use the first proceeding as a trial run of his case." *Arizona v. Washington*, *supra*, 434 U.S. at 508, n. 24.

> The "particular tribunal" principle is implicated whenever a mistrial is declared over the defendant's objection and without regard to the presence or absence of governmental overreaching. If the "right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury."

*Arizona v. Washington*, 434 U.S. at 508, *quoting United States v. Jorn*, *supra*, 400 U.S. at 485.

**D.     MANIFEST NECESSITY REQUIRES URGENT CIRCUMSTANCES. MERE ERROR BY THE PROSECUTION OR DEFENSE IS NOT ENOUGH.**

The power to declare a mistrial and thus deprive the defendant of his right to have his case resolved by the particular jury at hand "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes..." *United States v. Perez*, *supra*, 22 U.S. at 580.

In the instant case, there was no error by any party other than the military judge. The prosecution committed no error, nor did the defense. Nothing the prosecution did, and nothing the defense did, invited an error that justified the judge in seeking to preserve the fairness of the trial by declaring a mistrial.

MOTION TO DISMISS ALL CHARGES ON GROUNDS OF DOUBLE JEOPARDY – 7

**CARNEY BADLEY SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

The judge's lack of understanding of the significance of what he was doing is evident from:

1.  The fact that the judge seemed not to recognize that the double jeopardy issue was looming [*see* the *Transcript* at pp. 358-59];

2.  The fact that all the judge could think of was docketing the case for a subsequent trial at a time when his calendar permitted it, not comprehending that declaring a mistrial would have the immediate effect of withdrawing the affected charges and specifications, requiring that they be re-referred after consideration by the Convening Authority [see RCM 915(c)(1)]; and

3.  The fact that the judge did not offer the parties the opportunity to find a solution to the dilemma created by the judge (such as re-negotiating the Stipulation of Fact, or continuing the matter in such a way as to preserve the accused's right to have the matter considered by the same panel).

The defense anticipates the possibility that the government will cite the case of *United States v. Mora*, 26 M.J. 122 (C.M.A. 1988) for two principal propositions: (1) that wide latitude is given to the trial judge to make a determination that a mistrial will assure that the accused receives a fair hearing; and (2) the judge's failure to consult with counsel before declaring a mistrial does not, by itself, bar a retrial.

The instant case is, by no means, the *Mora* case (which was a guilty plea and an aborted sentencing hearing), wherein the handling of the matter was botched by both sides, but perhaps more so by the defense. The judge reached a point where he felt that the

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 8

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

accused's case was suffering at the hands of his own lawyer. As the Court of Military Appeals acidly noted, however:

> Naturally, a judge is advised to consider the views of the parties while seeking a remedy "less drastic than mistrial." [Citations omitted]. However, sometimes enough is enough.

*Id.* at 124.

## E.    THERE WAS NO NECESSITY FOR DECLARATION OF A MISTRIAL ON ANY COUNT.  THE STIPULATION WAS NOT A CONFESSIONAL STATEMENT.

There is a significant and quite meaningful distinction between a misunderstanding and a disagreement. The military judge unnecessarily upset the agreement between the parties and insisted upon imposing his erroneous conceptions on the parties, especially the Accused. In reality, there was no breach of the Pretrial Agreement. Whether or not the stipulation was confessional (and the accused maintains that it was not), the accused made it clear in the colloquy with the military judge that he understood that he could be convicted of the missing movement charge based on the Stipulation alone, but steadfastly stood by his asserted defenses.

The fact that the military judge disagreed with the availability of the accused's intended defense(s) did not constitute a breach of the Pretrial Agreement. The military judge did not merely abuse his discretion in that regard - he committed plain error - in light of the fact that the Government actually called witnesses and elicited testimony that was for all practical purposes the equivalent of facts contained within the Stipulation.

Moreover, the defense did not object, and cross-examined those witnesses. The

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 9

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1    military judge's concern over a "bell being rung," and wondering how it could be

2    "unrung," was a red herring.  What the military judge failed to grasp is that the accused

3    wanted the bell rung and was not concerned about how to "unring" it, as it fit into his

4    construction of his defense.

I.    **A Stipulation That Does Not Admit All of the Elements is Not a Confessional Statement. Moreover, Even if it Does Admit All the Elements, if the Defendant Presents Evidence of His Own, or if He Raises Some Other Issue Contesting the Allegation of Guilt, the Stipulation is Not a Confessional Statement.**

8    The judge declared a mistrial after erroneously concluding that he had to reject the

9    accused's Stipulation of Fact, which he had previously accepted at the start of the trial.  The

10    judge's erroneous belief that he had to reject the stipulation was predicated upon two

11    erroneous assumptions.

12    First, he mistakenly concluded that the Stipulation of Fact constituted a confessional

13    statement.  Second, he mistakenly believed that the accused made some representation that

14    was inconsistent with the *facts* in the stipulation.  Because the judge was mistaken in these

15    assumptions, his conclusion that he had to reject the stipulation was flawed, and the

16    declaration of mistrial was entirely unnecessary.

17    As the Court held in *United States v. Kepple*, 27 M.J. 773 (A.F.C.M.R. 1988), *aff'd*,

18    30 M.J. 213 (1990): "Unless the stipulation itself admits every element and no further

19    evidence is required from the Government for a finding of guilty, the stipulation is not

20    'confessional' and a *Bertelson* inquiry is not mandatory."  27 M.J. at 779.

21

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 10

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

2.    <u>Missing Movement By Design Includes the Element of an Order for Which Compliance is "Required in the Course of Duty." Where There is No Such Duty, There Also is No Crime</u>.

Article 87 provides:

Any person subject to this chapter who through neglect or design misses the movement of a ship, aircraft, or unit with which *he is required in the course of duty* to move shall be punished as a court-martial may direct. (Emphasis added.)

The existence of a movement which is "required in the course of duty" is the first of four elements of the offense. *Manual for Courts Martial*, ¶ 11.b, at p. IV-15; *Military Judges Benchbook*, Para. 3-11-1, at p. 203. Appellate courts have not hesitated to reverse and dismiss missing movement convictions where the evidence of a duty was insufficient.

3.    <u>Missing Movement By Design Includes an Element of Specific Intent</u>.

Missing movement through design is a specific intent crime. The jury at a court-martial proceeding must be instructed that proof of specific intent is required.  *See, e.g.*, *United States v. Foster*, 3 C.M.R. 423, 426-27 (1952) ("no evidence was adduced to show any specific intent or design of the accused;" the accused "was entitled in our opinion to have the court clearly instructed that...'design' connoted a specific intent plus overt act or acts directly related to the movement actually missed").

Similarly, as noted in the *Military Judge's Benchbook*, when a violation of Article 87 by design is charged, the court is *required* to instruct the jury on the definition of the words "through design" as follows:

"Through design" means on purpose, intentionally, or according to plan and *requires specific intent* to miss the movement.

MOTION TO DISMISS ALL CHARGES ON GROUNDS OF DOUBLE JEOPARDY – 11

**CARNEY BADLEY SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1

2
*Military Judges Benchbook*, ch. 3, Para. 3-11-1, at p. 204 (2002).

    4.    <u>Lt. Watada Repeatedly Denied That He Was "Required in the Course of</u>
3    <u>Duty" to Comply With the Order to Move.  He Never Stipulated to this</u>
    <u>Element.  On the Contrary, He Argued that He was Required by</u>
4    <u>International Law and Treaty Obligations *Not* to Comply with the Order</u>
    <u>to Move.</u>

5

6        As noted, Lt. Watada stipulated that he deliberately missed his movement, but he did

7 *not* stipulate that the order to move was one "required in the course of duty." On the contrary,

8 he argued strenuously that given his sworn oath and duty to uphold the Constitution, he had a

9 duty *not* to comply with this order because it was illegal, and therefore compliance with the

10 order to move was *not* "required in the course of duty."

11        Lt. Watada further argued that because his motive was to avoid obeying an unlawful

12 order, he did *not* have the specific intent to disobey an order for which compliance was

13 "required in the course of duty," and he specifically denied that he had any such duty:

14    MJ:    So when you talk about you intentionally missed this movement,
    *did you believe you had a duty* to make that movement?"
15

16    ACC:  Your Honor, *no. I did not feel I had that duty, because I was being
    ordered to do something I felt was illegal.*

17 *Transcript*, at 362 (emphasis added). Thus, he specifically disputed the duty element of the

18 offense.

19        In the instant case, the accused's admissions in the Stipulation of Fact did not mention

20 the existence of any duty.  Lt. Watada never stipulated that he had a duty to move with his

21 unit, and thus, there was no admission to the required element of duty. Lt. Watada

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 12

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1  *specifically refused* to enter into any such stipulation, steadfastly maintaining instead that his

2  decision to miss the movement was the right thing to do. Thus, Lt. Watada also refused to

3  stipulate that he had the requisite specific intent to commit the crime.

4      In the instant case, as in *Kepple, supra*, given the very clear statements of the accused

5  on the record, "surely no one thought that the accused was conceding guilt as to the crime"

6  charged. *Kepple*, 27 M.J. at 779. "A stipulation is not one which practically amounts to a

7  confession if the defendant contests an issue going to guilt which is not foreclosed by the

8  stipulation." *Id.* at 780. Here, Lt. Watada vigorously contested his guilt on *all* charges and

9  nothing in his stipulation precluded him from contesting the duty element of the missing

10  movement offense.

11      **5.    Lt. Watada Repeatedly Denied That He Had the Requisite Specific Intent
        to Miss a Movement Which was Required in the Course of Duty. He
12      Insisted That His Intent Was to Abide By His Duty to Refrain From
        Committing a Crime Against Peace.**
13

14      As noted above, Lt. Watada repeatedly denied that he had the specific intent to refuse

15  to obey an order to move which was required in the course of duty.  On the contrary, he

16  steadfastly maintained that his duty was to the Constitution, and that because the war was an

17  illegal war, he had a duty *not* to obey the order to move. He maintained that "each individual

18  soldier" who receives "orders to do something has an obligation, by virtue of their training,

19  by virtue of their oath, by virtue of applicable law, to make a determination whether the

20  orders that he or she receives are lawful…" *Transcript*, at 74.

21      Lt. Watada consistently argued that he did not have the specific intent to violate

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 13

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

Article 87, because his motive for not obeying the order was that the order was not lawful, and thus he had "a requirement that he take the action that he did in order to a avoid committing a higher offense." *Id.* at 79. Before the military judge accepted the stipulation, Lt. Watada told him that he believed that the order to move "was an illegal order. And that the war itself was illegal, and any participation of mine would be contrary to my oath…" *Id.* at 135.

### 6. Because Two Elements were Denied, the Stipulation of Fact Was Not a Confessional Statement, and No *Bertelson* Inquiry was Required.

A stipulation is a confessional statement, and triggers the need for *Bertelson* inquiry, only if the stipulation admits all the elements of the charged offense. *Kepple, supra*, 27 M.J. at 779. Since the accused denied not one, but *two* of the elements of the offense of missing movement, his Stipulation of Fact was not a confessional statement, and no duty to make a *Bertelson* inquiry was ever triggered.

### 7. Because the Prosecution Presented Evidence on the Missing Movement Charge, This Indicates That the Stipulation Was Not a Confessional Statement.

As noted above, one signal that should alert the military judge that a stipulation is a confessional statement is when both the prosecution and defense rest without presenting any evidence beyond the stipulation. *Kepple, supra*, 27 M.J. at 780. In the instant case, the prosecution did *not* rest without presenting any evidence, but instead called a witness to testify regarding the factual circumstances surrounding Lt. Watada's failure to board the plane headed with his unit which was deploying to Iraq. Thus, this also demonstrates that the

---

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 14

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1    stipulation in this case was not a confessional statement, and that there was no need for any

2    *Bertelson* inquiry.

        **8.**    **Because Lt. Watada Intended to Present Evidence on the Missing**
3                 **Movement Charge, and to Contest His Guilt, the Stipulation was Not a**
4                 **Confessional Statement. There was No Need to Conduct A *Bertelson***
             **Inquiry, and No Need to Declare a Mistrial.**
5

6        The fact that defense counsel stated that the accused was going to testify, and was

7    going to explain why he felt he had an obligation *not* to comply with the order to move, also

8    demonstrates that the stipulation was not a confessional statement.

9        Contrariwise, in *United States v. Davis*, 50 M.J. 426 (C.A.A.F. 1999), the accused

10    entered into a pretrial agreement not to call witnesses or present evidence on his behalf,

11    which had the effect, as the Court noted, of transforming the trial into an "empty ritual."

12    Nonetheless, the Court denied the accused the relief he sought because the judge engaged in

13    an adequate colloquy with the accused, and the accused was not deprived of due process. *Id.*

14    at 430-31.

15        Because the Stipulation of Fact in the instant case was *not* a confessional statement,

16    there was no need to conduct any *Bertelson* inquiry at all, and thus no need to declare a

17    mistrial based on the erroneous perception that the accused was in some way contradicting a

18    confessional statement of fact by proposing a jury instruction. Not only was there no "high

19    degree" of necessity for declaration of mistrial, *Arizona v. Washington, supra*, 434 U.S. at

20    506, there was absolutely *no* necessity at all.

21

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 15

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

F.    **EVEN ASSUMING, *ARGUENDO*, THAT THE STIPULATION WAS A CONFESSIONAL STATEMENT AND THAT A *BERTELSON* INQUIRY WAS THEREFORE REQUIRED, THE JUDGE CONDUCTED A MORE THAN ADEQUATE *BERTELSON* INQUIRY, AND THERE WAS NO NEED TO REJECT THE STIPULATION.**

Even assuming, *arguendo*, that the stipulation *was* a confessional statement, there still was no basis for declaring a mistrial. To begin with, *Bertelson* does *not* forbid the acceptance of confessional stipulations: "We reject the contention that such a confessional stipulation cannot be admitted under any circumstances." *United States v. Bertelson*, 3 M.J. 314, 315 (C.M.A. 1977). Instead, the case merely holds that before accepting a confessional stipulation, the judge must conduct an inquiry adequate to ensure that the accused knows what he is doing and wants to do it.

> [A] military judge...may admit a stipulation which amounts practically to a confession provided that the accused has first knowingly, intelligently and voluntarily consented to its admission. *United States v. Rempe*, 49 C.M.R. 367 (A.F.C.M.R. 1974). If an accused and his lawyer, in their best judgment, think there is a benefit or advantage to be gained by entering otherwise objectionable evidence, as in *Rempe*, where the accused consented to the admission of a confessional stipulation in order to preserve an error for appellate review, we perceive no reason why they should not be their own judges with leeway to do so.

*Bertelson, supra*, 3 M.J. at 315-16.

> Before accepting such a stipulation, however, the judge must do four things. First, the judge is required to expressly communicate [to the accused] before accepting his confessional stipulation that under the Manual it could not be accepted without his consent.

*Id.* at 316. This was faithfully done in this case. *Transcript*, at 126-129.

> Further, the military judge [is] required to apprise the accused, as he did here, that the Government has the burden of proving beyond a reasonable doubt

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 16

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1  every element of the offense and that by stipulating to material elements of
   the offense, the accused alleviates that burden.

2

3  *Id*. at 316. This was also faithfully done in this case. *Transcript*, at 126-129.

4      Third, in those cases wherein a Stipulation constitutes an acknowledgement of guilt:

5      ...the trial judge, in addition to making the inquiry set forth in Part I of this
       opinion, must also ascertain from the accused on the record that a factual

6      basis exists for the stipulation.

7  *Bertelson,* at 317. In the instant case, the accused did ***not*** acknowledge his guilt, thus making

8  this third inquiry unnecessary. Nevertheless, the military judge conducted this inquiry and

9  did elicit the factual basis for the stipulation on the record. *Transcript*, at 129-33.

10     Finally, *Bertelson* holds that:

11     The judge shall also conduct a plea bargain inquiry in accordance with the
       guidelines set forth in *United States v. Green,* [1 M.J. 453 (C.M.A. 1976)].

12     Should this plea bargain inquiry reveal the existence of an agreement not to
       raise defenses or motions, the confessional stipulation will be rejected as

13     inconsistent with Article 45(a).

14 *Id*. at 317.  In this case, such an inquiry was conducted. It was clearly stated on the record

15 that the accused understood the Pretrial Agreement, that he wished to enter into it, that he had

16 the benefit of counsel in making that decision, and that he had no doubts about it. *Transcript*,

17 at 140-148.

18     It must be noted here, as well, that the Pretrial Agreement can be read to explicitly

19 permit the defense to raise defenses or motions. At a minimum, there is nothing in the

20 Agreement that prohibited raising defenses, which casts further doubt on the military judge's

21 interpretation.

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 17

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1    In sum, even if *Bertelson* was applicable to this case, which it is not, there was no

2    obstacle to continuing to accept the stipulation, since all *Bertelson* inquiry requirements were

3    met. Additionally, the accused implicitly and explicitly acknowledged in his colloquy with

4    the judge (as did his counsel) that conviction was a distinct possibility, but that he intended to

5    proceed by way of the Stipulation.

6    **G.    EVEN IF THE STIPULATION OF FACT WAS A CONFESSIONAL
     STATEMENT, A DEFENDANT NEED NOT *AGREE* WITH THE JUDGE'S**

7    **INTERPRETATION OF THE LEGAL EFFECT OF THE STIPULATION;
     HE NEED ONLY *UNDERSTAND* IT, AND NEVERTHELESS WANT TO**

8    **ENTER INTO IT. LT. WATADA FULLY UNDERSTOOD BUT
     RESPECTFULLY DISAGREED WITH THE JUDGE'S LEGAL**

9    **CONCLUSIONS AS TO THE EFFECT OF HIS STIPULATION.**

10    Both the *Bertelson* and *Kepple* decisions expressly recognize that a military judge

11    should respect the judgment of the accused and his counsel. So long as they have been

12    informed and understand the consequences of the stipulation, the judge should not interfere

13    with their judgment that entering into the stipulation is in the accused's best interests. The

14    *Kepple* decision "credits the conventional wisdom of the accused and counsel." *Kepple*,

15    *supra*, 27 M.J. at 779. On that point, the *Bertelson* court stated:

16
17    If an accused and his lawyer, in their best judgment, think that there is a
      benefit or advantage to be gained by entering otherwise objectionable
18    evidence…we perceive no reason why they should not be their own judges
      with leeway to do so.

19    *Bertelson, supra*, 3 M.J. at 315-16.

20    This situation can be distinguished from a hearing on a guilty plea, wherein the

21    military judge would properly re-open the inquiry if the accsued harbors (and alludes to)

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 18

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1  doubt about his guilt. In the instant case, there was no equivocation on the part of the

2  accused.

3  **H.      THE MILITARY JUDGE MISREPRESENTED THE RECORD. THERE
           WAS NO INCONSISTENCY OF *FACT* BETWEEN WHAT LT. WATADA**

4  **SAID AT THE START OF THE TRIAL OR IN HIS STIPULATION OF
   FACT ABOUT WHAT HAPPENED, AND THE SUBSEQUENT DEFENSE**

5  **SUBMISSION OF A PROPOSED JURY INSTRUCTION IN A POINT OF
   *LAW*.**

6

7      It is clearly settled that "when…a stipulation of fact clearly demonstrates guilt, but

8  *the accused's testimony* is inconsistent therewith, the military judge has a duty to note the

9  inconsistency and seek explicit clarification." *United States v. Epps*, 25 M.J. 319, 321

10  (C.M.A. 1987) (emphasis added).

11     In the instant case, the military judge mistakenly believed that this duty to seek

12  clarification was triggered by a supposed inconsistency between the Stipulation of Fact *and a*

13  *proposed jury instruction* submitted by the defense. A proposed jury instruction is not

14  testimony. A proposed jury instruction is simply one party's assertion of what the governing

15  law is. Because an assertion as to what the law is can never be inconsistent with an assertion

16  of fact, *no* inconsistency triggering *any* duty to inquire can *ever* be triggered.

17     Moreover, in the instant case, as defense counsel pointed out to the military judge, the

18  defense fully expected that the judge would decline to give the proposed instruction.

19  *Transcript*, at 356-57.

20     There had already been a pretrial hearing, at which the judge had made it clear that

21  his analysis of *the law* was quite different from that of the defense. Disagreements as to

---

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 19

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1  principles of law do not raise any concern as to inconsistent assertions of fact, and therefore,

2  the military judge's expressed concern about an inconsistency in this case was entirely

3  unfounded and without merit.

4  I.    **EVEN IF THERE WAS SOME NEED TO REJECT THE STIPULATION, AND TO BRING BACK TWO OF THE DISMISSED CHARGES, THERE WAS STILL NO NEED TO DECLARE A MISTRIAL. A CONTINUANCE WOULD HAVE SOLVED THE PROBLEM. THE GOVERNMENT ACKNOWLEDGED IT COULD HAVE ALL OF ITS WITNESSES AVAILABLE BY MARCH 19, 2007. SUCH A CONTINUANCE WOULD HAVE ADDRESSED THE MILITARY JUDGE'S CONCERN AND ALSO PRESERVED THE ACCUSED'S VALUED RIGHT TO GO TO THIS PARTICULAR JURY FOR A FINAL DETERMINATION OF HIS GUILT OR INNOCENCE.**

5

6

7

8

9

10  As noted above, the declaration of a mistrial "is a drastic remedy and should be

11  granted only where the circumstances demonstrate 'a manifest necessity to terminate the

12  trial to preserve the ends of public justice.'" *United States v. Dennis*, 16 M.J. 957, 965

13  (A.F.C.M.R. 1983); *United States v. Jeanbaptiste*, 5 M.J. 374, 376 (C.M.A. 1978).

14  For example, where the receipt of improper evidence can be "neutralized by other

15  means," a declaration of mistrial is not required. *Id.* "Even when there are circumstances

16  which raise serious doubt regarding the fairness of the proceedings, the trial judge must,

17  before granting a mistrial, determine that an alternative measure, less drastic than mistrial,

18  would not alleviate the problem so as to allow the trial to continue to an impartial

19  verdict." *United States v. Ghent, supra*, 21 M.J. at 550.

20  Where there *are* other alternatives to declaration of a mistrial, the declaration of a

21  mistrial is a judicial abuse of discretion and double jeopardy bars a retrial. For example,

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 20

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1    in *United States v. Rex*, 3 M.J. 604 (C.M.R. 1977), the Court declared a mistrial because

2    of a *perception* that one of the five members of the jury panel could not follow the

3    Court's instructions to disregard certain statements made by defense counsel. The

4    appellate court noted that even assuming, for the sake of argument, that the fifth member

5    of the panel was now unfit to serve, the "draconian remedy" of a mistrial was unnecessary

6    because an alternative existed:

7         [I]t is patently obvious that it was not necessary to eliminate all the
          members in order to eliminate the one about whom the judge had some
8         'misgiving.' [Footnote omitted].  Even with that member excused, four
          other members remained who were untainted and who would comprise
9         more than a jurisdictional quorum.  Thus, the correct decision of the trial
          judge was not to declare a mistrial, but to continue with the four members
10        about whom the record clearly evinces that there was no necessity to
          remove the case by declaring a mistrial.
11

12   *Id.* at 610.  Accordingly, the judge's decision to declare a mistrial, rather than continue

13   the trial with four panel members, was an abuse of discretion, and the retrial was barred.

14   *Id.*

15        Similarly, in the instant case, even assuming for the sake of argument that the

16   military judge was correct in his determination that he had to reject the Stipulation of Fact

17   and set aside the Pretrial Agreement, he gave absolutely no meaningful consideration to

18   any other alternative way of dealing with the situation other than declaration of a mistrial.

19        The judge recognized that once the Stipulation was set aside, the Government

20   would have no evidence on several of the charges because it would be caught without

21   many of the witnesses it needed to establish the offenses. Nonetheless, the judge did not

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 21

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1   even pause to consider the possibility of recessing the trial, and resuming it at a later date

2   when the Government *would* have its witnesses available to testify.

3       After eliciting the defense position that it was opposed to a mistrial, the judge

4   simply announced that the court's calendar was open on the week of March 19, 2007:

5       MJ:    Defense, do you want to be heard?

6       CC:    Yes. We would oppose the motion.

7       MJ:    Counsel, I have the week of 19 March available.

8   *Transcript*, at 374. There was absolutely no consideration of any other alternative besides

9   declaration of a mistrial. The possibility of a trial continuance was never discussed, nor a

10  discussion about a possible curative instruction.

11      This failure to recognize the viable alternative of a continuance is particularly

12  egregious since the judge actually asked the Government if its witnesses would be

13  available the week of March 19, 2007, and received an affirmative answer:

14      MJ:    At this point I won't set it for May 7th, I will set the initial date. And
15             then I'll adjust, as every court does, for good cause shown. If you have a
               legitimate conflicts [sic]. That's just how the system works. *Government,*
16             *would you have your witnesses available the week of 19 March?*

17      TC:    *Yes, Your Honor. I believe the Government can arrange witnesses*
18             *for March 19th.*

19  *Transcript*, at 375 (emphasis added).

20      Thus, there was no consideration of the possibility of recessing and continuing the

21  trial to the week of March 19, 2007. Indeed, the only reason the judge focused on the

    week of March 19th was that that week was open on the court's calendar. It was entirely

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 22

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1  possible, of course, that the Government might have been able to get their witnesses into

2  court much faster than that. Perhaps only a one or two week continuance would have been

3  required. The answer to that question will never be known, because in his rush to simply

4  declare a mistrial without considering any other alternative, the military judge never

5  inquired at all about the possibility of a continuance, and never asked the Government

6  when the earliest possible availability of its witnesses might be.

7      As the court noted in *Ghent*:

8      If a trial judge acts irrationally, irresponsibly, precipitately or otherwise
       abuses his discretion, his decision to grant a mistrial cannot be condoned.
9      [Citation omitted.] This is also true where he has not engaged in sufficient
       inquiry to decide the issue. [Citation omitted.] Without complete
10     information, a judge cannot "assess all the factors which must be
       considered in making a necessarily discretionary determination regarding
11     the jury's ability to render an impartial verdict." [Citations omitted.]

12  *Ghent, supra*, 21 M.J. at 551.

13      The consideration of alternatives must be evident from the record. "The record

14  must support...a determination that there were 'no measures short of mistrial' that 'might

15  have sufficed to mitigate or cure any perceived undue trial prejudice." *Id*.

16      It is not the accused's responsibility to show that there were alternatives to declaration

17  of a mistrial. It is the Government's burden to prove that the trial judge actually considered

18  alternatives to declaration of a mistrial, and that there were none. The record fails to show

19  any meaningful consideration of alternatives by the judge.

20      In the instant case, as in *Ghent*, "the record fails to support a conclusion that less

21  drastic measures would not have" cured the problem. *Id*. The judge *never* considered the

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 23

CARNEY
BADLEY
SPELLMAN

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1   viable alternative of a continuance of the trial that would have permitted the accused to

2   have this particular panel decide his guilt or innocence. Thus, there was an abuse of

3   judicial discretion, a total lack of manifest necessity for declaration of a mistrial, and there

4   is a double jeopardy bar to a second trial.

5   **J.    THIS CASE IS SIMILAR TO *JORN*, WHEREIN THE COURT FOUND**
       **THAT THE TRIAL JUDGE ACTED PRECIPITOUSLY, WITHOUT**
6      **CONSIDERING THE ASSURANCES OF COUNSEL THAT THERE WAS**
       **NO NEED FOR A MISTRIAL, AND WITHOUT CONSIDERING THE**
7      **POSSIBILITY OF A CONTINUANCE.**

8       While no two cases are factually identical, some of the parallels between this case

9   and *United States v. Jorn*, *supra*, are quite striking. In the instant case, the military judge

10  appears to have believed that Lt. Watada was confused, or that he somehow did not

11  appreciate or understand the effect of his stipulation, even though counsel for both sides

12  assured him there was *no* problem with the stipulation. In fact, counsel for the accused

13  told the military judge, *"there is nothing in the stipulation that is contradicted by the*

14  *instruction that we're offering to you." Transcript*, at 356.

15      When the judge pressed Trial Counsel to disagree, Trial Counsel replied simply,

16  *"Government tends to agree that there is no contradiction in the stipulation." Id.* The

17  military judge continued to hammer away at counsel for the Government, and asked again

18  if he did not see the inconsistent positions that the accused was taking. Trial Counsel,

19  however, continued to assert that he did not see any problem, stating simply, "Your

20  Honor, I don't see it." *Id.* at 366-67.

21      In fact, Government counsel repeatedly agreed with civilian defense counsel, and

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 24

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1  repeatedly told the judge that he did not see any reason why the Stipulation of Fact was

2  improper.

3      In a similar manner, in *Jorn*, the trial judge believed that five witnesses called by

4  the prosecution did not understand that by testifying and waiving their right to remain

5  silent, they might be incriminating themselves, even though the prosecutor assured him

6  that they had been properly advised. Ignoring the prosecutor's assurances, the *Jorn* trial

7  judge declared a mistrial. The Supreme Court condemned this precipitous course of

8  action:

9      [W]e must conclude that the trial judge here abused his discretion in
      discharging the jury. Despite assurances by both the first witness and the
10     prosecuting attorney that the five taxpayers involved in the litigation had all
      been warned of their constitutional rights, the judge refused to permit them
11     to testify, first expressing his disbelief that they were warned at all, and
      then expressing his views that any warnings that might have been given
12     would be inadequate.

13  *Jorn, supra*, 400 U.S. at 486-87.

14      Moreover, in both cases, the trial judge acted without ever considering the possible

15  alternative of granting a continuance. In *Jorn*, the Court noted: "It is apparent from the

16  record that no consideration was given to the possibility of a trial continuance. Indeed, the

17  trial judge acted so abruptly that, had the prosecutor been disposed to suggest a

18  continuance...there would have been no opportunity to do so." *Id.* at 487.

19      The same is likewise true in the instant case, where the judge simply declared a

20  mistrial, without asking either party if they preferred for him to grant a continuance to

21  give the Government a chance to assemble the witnesses needed to attest to the facts that

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 25

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1   had been covered in the Stipulation of Fact which the judge was now suddenly rejecting.

2   In fact, the court never solicited any suggestions as to *any* other alternative to his

3   declaring a mistrial.

4        "[I]n the final analysis, the judge must always temper the decision whether or not

5   to abort the trial by considering the importance to the defendant of being able, once and

6   for all, to conclude his confrontation with society through the verdict of a tribunal he

7   might believe to be favorably disposed to his fate." *Id.* at 486. Because the trial judge did

8   not do so, the *Jorn* Court found a violation of the double jeopardy clause. The same

9   conclusion is compelled in this case.

10  **K.**   **THE MILITARY JUDGE NEVER EVEN CONSIDERED THE POSSIBILITY**
11  **THAT THE PARTIES MIGHT AGREE TO MODIFY THEIR STIPULATION**
    **OF FACT, SO THAT IT COVERED ONLY THE CONDUCT UNBECOMING**
12  **AN OFFICER CHARGES. THUS, THE JUDGE NEVER CONSIDERED THE**
    **POSSIBILITY OF DECLARING ONLY A PARTIAL MISTRIAL.**

13       Although Rule 915(a) specifically directs a military judge to consider the possibility
14
15  of declaring only a *partial* mistrial, in this case the military judge never did this. The judge

16  simply assumed that *no* part of the stipulation could be salvaged.

17       The Stipulation of Fact was entered into in exchange for the Pretrial Agreement,

18  which called for dismissal of two of the four Conduct Unbecoming an Officer specifications.

19  The military judge simply assumed that if the Stipulation of Fact pertaining to the missing

20  movement charge was rejected, that the parties would not want to adhere to any other part of

21  their agreement.

     It was entirely possible that notwithstanding invalidation of that part of the stipulation

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 26

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1  dealing with the missing movement charge, the Government might still have been willing to

2  dismiss 2 of the 4 Conduct Unbecoming an Officer specifications in exchange for the

3  accused's stipulation to the authenticity and accuracy of the transcripts of his statements that

4  were the basis for those charges.

5      Even if the Government had not been willing to dismiss 2 of the 4 Conduct

6  Unbecoming specifications, the trial judge never ascertained whether Lt. Watada might

7  *nevertheless* be willing to stipulate to the authenticity and accuracy of the transcript of his

8  remarks that formed the basis for the 2 Conduct Unbecoming specifications, which had been

9  tried to the panel up to that point.

10     In sum, there was never *any* consideration given as to whether it was truly necessary

11 to declare a mistrial on two of the specifications of Conduct Unbecoming an Officer. It was

12 not a foregone conclusion that the *entire* stipulation had to be undone. The military judge

13 could have asked the parties if they would consider amending their stipulation so that it

14 continued to cover these two specifications.

15     If the accused had been willing to continue to stipulate to the facts covering those two

16 specifications, those charges could have been submitted to the panel for a decision. But the

17 military judge never considered this option, and never asked the parties if any part of their

18 stipulation could be maintained, despite the judge's refusal to accept that part of the

19 stipulation dealing with the missing movement charge.

20

21     Since the record does not disclose *any* careful consideration of alternatives of this

kind, which might have led to a *partial* declaration of mistrial, the Double Jeopardy Clause

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 27

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft. Lewis ig013303 7/2/07

1  should likewise be held to bar retrial of those two specifications of Conduct Unbecoming an

2  Officer, upon which the Government did present its case.

3      While this is set out in great detail in the accompanying Appendix submitted by the

4  accused at pp. 10-20, it is clear that the Government did not see the problem the judge saw,

5  and took the position, until being essentially browbeaten into changing its position, that the

6  Stipulation was a Stipulation of Fact, and that it did not impose an impediment to the trial

7  proceeding.

8      The military judge asked trial counsel if he understood the Court's problem and

9  Trial Counsel candidly said he did not:

10     MJ:    Do you understand my problem, government, with this?

11     TC:    Frankly, Your Honor, no.

12 *Id.* at 368.

13     After a brief recess, the military judge asked defense counsel and Government

14 counsel one more time if they could not see that the Stipulation of Fact was a confessional

15 stipulation, but both again did not agree with the court:

16     MJ:    Mr. Seitz, defense counsel, one more time: Do you believe that
17            Prosecution Exhibit 4 is a confessional stipulation, as to Charge 1?

18     CC:    *No, I do not. I believe it's a stipulation of fact.*

19     MJ:    Government, I understand you needed some more time. Have you had
20            enough time? Did you have the time that you needed?

21     TC:    We did, Your Honor. Thank you. *The government concurs, and
            believes this also to be a stipulation of fact.*

---

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 28

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

MJ:   Does it not cover every element of the offense? Is this not a confessional stipulation of fact? How can I accept a confessional stipulation of fact under *Bertelson* where the defense doesn't concur that it's a confessional stipulation of fact?

TC:   The government's understanding is that it is a stipulation of fact; the accused has not pleaded guilty to the offense and *if he [has] evidence to present that would be able to prove that he is not guilty of the offense, then the court should hear that evidence.*

*Id.* at 370-71 (emphasis added).

When counsel for the Government reiterated that he agreed with defense counsel, the Court simply announced that it was rejecting the Stipulation of Fact, and asked the Government if it wanted to move for a mistrial:

TC:   Your Honor, I don't know what else to say other than what's already been said. *The parties agree about the contents of the stipulation – the parties agree that it is a stipulation of fact.*

*Id.* at 371 (emphasis added).

In *Arizona v. Washington, supra,* the Supreme Court noted that there is, in appropriate circumstances, a balancing of society's interests and the right of the accused with regard to the double jeopardy analysis when it observed:

> Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor *one full and fair opportunity* to present his evidence to an impartial jury.

*Id.* at 505 (emphasis added).

In the instant case, the Government had its "full and fair opportunity to present its

MOTION TO DISMISS ALL CHARGES ON GROUNDS OF DOUBLE JEOPARDY – 29

**CARNEY BADLEY SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft. Lewis ig013303 7/2/07

1  evidence." The prosecution presented its *entire* case with no obstacles or restrictions. Not

2  only did the Government rest its case, it was offered the opportunity to re-open its case and it

3  *declined* the invitation to do so. Thus, the Government *participated in the error* committed

4  by the military judge, and must now accept the consequences of its failure to grasp the

5  violation of the Constitution being contemplated.

6      The Government *endorsed* the military judge's error, and any opportunity it had to

7  argue that it should have the chance to re-prosecute the accused was *extinguished* when it

8  joined in the court's action and declined to proceed with the first trial.

9      The judge was the one who proposed a mistrial, and he goaded the prosecution into

10  moving for it. In this respect, his action was similar to that of the trial judge in *Johnson v.*

11  *Karnes, supra*, wherein the appellate court noted:

12      [T]he state trial judge in Johnson's case pressured the prosecutor to make the
13      decision at that very moment and only allowed a very brief recess before
        listening to counsel's arguments regarding the mistrial. Further, the trial
14      court's failure seriously to consider alternatives to declaring a mistrial further
        militates against a finding that manifest necessity warranted a mistrial.

15  *Johnson*, 198 F.3d at 595.

16      Similarly, the trial judge in the instant case never asked either counsel for suggestions

17  as to any alternatives, such as a continuance, and instead of "sufficient reflection" upon

18  possible alternatives, the record shows absolutely no reflection at all.  It is hard to imagine a

19  record that shows a hastier and less reflective decision to declare a mistrial. This occurred

20  despite the fact, as noted earlier, that trial defense counsel attempted to warn the judge of

21  what was at stake when he noted:

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 30

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

CC:    Colonel, let me just say, I would assume that if that were to happen, you would allow us sufficient time to appeal from that order *because jeopardy has attached, and it may very well be that the retrial is impermissible.* If that's the case, then we would need do discuss this and make some decisions. But, I would assume that that also would follow.

*Trial transcript* at 359. Even with that warning, the judge still failed to reflect upon what was at stake.

Just as in *United States v. Rivera*, 384 F.3d 49 (3d Cir. 2004), "the record in this case demonstrates that the [trial court judge] failed to consider both the constitutional implications attendant to the declaration of a mistrial, as well as the reasonable alternatives to a mistrial." Here, as in *Rivera*, a retrial is barred.

It is possible that in the mind of the military judge (without his explicitly stating as such), a continuance was not a viable alternative because "the bell could not be unrung." By this the judge *may have been thinking* that the panel members could not forget that they had been advised by stipulation that the accused received an order to deploy with his unit, and that he deliberately failed to move with his unit as ordered.

Not only does this overlook the fact that it may have been a part of Lt. Watada's defense strategy not to object to (and, indeed, to encourage) the panel's having been so advised, if a continuance had been ordered, rather than a mistrial, the Government could have produced the live witnesses who would have testified to the exact same facts that the panel members had been informed of by means of the stipulation.

Thus, there would have been no need to "unring the bell," since the same evidentiary facts would then have been placed before the panel for its proper consideration. The military

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 31

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1  judge simply failed to consider this alternative.

2       With respect to the two specifications of Conduct Unbecoming an Officer that had

3  been dismissed (without prejudice at that stage) pursuant to the Pretrial Agreement in

4  exchange for the Stipulation of Fact, the trial judge also never considered whether a mid-trial

5  continuance would have allowed the Government to produce the witnesses it needed to

6  present its case on those two charges. Since this alternative was never explored, there was no

7  manifest necessity which justified declaration of a mistrial on these two specifications.

8       Finally, there was absolutely no reason at all to declare a mistrial as to the other

9  two specifications of Conduct Unbecoming an Officer. The Government had presented all

10  the evidence it wished to with respect to those two charges, and there was no reason at all

11  why a jury could not have returned a verdict as to those charges.

## CONCLUSION

     For all the reasons stated herein, for the accused to be subjected to a subsequent

trial, when the first trial was terminated for no valid reason, and in the absence of

manifest necessity, would be violative of his constitutional and statutory right to be free

from being twice placed in jeopardy for the same offenses.

     The motion to dismiss all charges must be granted.

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 32

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1    DATED this 2nd day of July, 2007.

2                          CARNEY BADLEY SPELLMAN, P.S.

3

4                          By _____
                              *Kenneth S. Kay*
5                              James E. Lobsenz, WSBA No. 8787
                               Kenneth S. Kagan, WSBA No. 12983
6                              Attorneys for 1Lt. Ehren K. Watada

7

8                          **CERTIFICATE OF SERVICE**

9        I hereby certify that on July 2, 2007 I electronically filed the foregoing with the
     Clerk of the Court and sent a copy to the following persons:

10
     Lt.Col. John M. Head, Circuit Judge
11   John.head@us.army.mil

12   Cpt. Grady J. Leupold, Senior Trial Counsel
     grady.j.leupold@us.army.mil
13
     Cpt. Sheldon L. Beer, Trial Counsel
14   Sheldon.beer@us.army.mil

15   Cpt. Mark H. Kim, Military Defense Counsel
     mark.kim@us.army.mil
16
     Ms. Linda S. Cantrell, Clerk, Fourth Judicial Circuit, U.S. Army Trial Judiciary
17   linda.s.cantrell@us.army.mil

18

19

20

21

MOTION TO DISMISS ALL CHARGES        **CARNEY**
ON GROUNDS OF DOUBLE JEOPARDY        **BADLEY**
– 33                                  **SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1

2    In addition, I hereby certify that I have mailed the original of this document to Ms. Linda Cantrell by United States Postal Service, Postage Prepaid

3

4    _Kenneth S. Kagan_
     Kenneth S. Kagan, WSBA No. 12983

5    Attorney for 1 Lt. Ehren K. Watada
     CARNEY BADLEY SPELLMAN, P.S.

6    701 Fifth Avenue, Suite 3600
     Seattle, WA 98104

7    (206) 622-8020
     (206) 622-8983 – Facsimile

8    Kagan@carneylaw.com

9

10

11

12

13

14

15

16

17

18

19

20

21

MOTION TO DISMISS ALL CHARGES
ON GROUNDS OF DOUBLE JEOPARDY
– 34

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig013303 7/2/07

1

2

3

4

5

6

7

8
UNITED STATES ARMY TRIAL JUDICIARY
FOURTH JUDICIAL CIRCUIT
FORT LEWIS, WASHINGTON

9

10

11
UNITED STATES OF AMERICA,

vs.

12

13
1 LT EHREN K. WATADA,
United States Army,
HHC, Special Troops Battalion

14
1 Corps
Fort Lewis, Washington 98433-9500

15

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS

16
    For the benefit of the Court and Trial Counsel, the accused sets out herein relevant

17
passages from the Trial Transcript that bear on the accused's argument for dismissal

18
based upon double jeopardy grounds.

19
    While the accused has endeavored to present what was argued and stated by each

20
of the parties and the Court accurately, this Appendix is not, of course, as complete and

21
exhaustive as the actual Trial Transcript.

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS – 1

wat013 Plds- Ft.Lewis ig023301 7/2/07

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1    The court-martial convened for trial on February 5, 2007. The Court was apprised that

2    the parties had entered into a Stipulation of Fact on January 26, 2007. The military judge

3    reviewed the stipulation and stated that he felt obliged to conduct a *Bertelson* inquiry on the

4    record. ROT, *Transcript* 2/5/07, at 103. The following inquiry was conducted on the record:

5    MJ:    ...Lieutenant Watada, I have before me prosecution Exhibit 4 for
       identification, a Stipulation of Fact. Do you have a copy of that in front of
6       you?

7    ACC:  Yes, sir.

8    MJ:    It is a 12 page document with apparently a DVD – or 2 DVDs. Do you
       have that?
9

     ACC:  Yes, sir.
10
     MJ:    Turn to page 12. [The accused did as directed].
11
     MJ:    Is that your signature on the top of Page 12?
12
     ACC:  It is, sir.
13
     MJ:    Did you read this document before you signed it?
14
     ACC:  Yes. I did, sir.
15
     MJ:    Do counsel for both sides agree to the stipulation and is that your
16    signature or your predecessor's signature that appears on the document?

17    TC:    Yes, sir.

18    CC:    It is also my signature, and I signed it for Captain Kim at his direction.

19    MJ:    Lieutenant Watada, a Stipulation of Fact is an agreement among the
       trial counsel, your defense counsel, and you that the contents of the stipulation
20    are true, and if entered into evidence, are the uncontradicted facts in this case.
       No one can be forced to enter into a stipulation, and no stipulation can be
21    accepted without your consent, so you should enter into it only if you truly
       want to do so.

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS – 2

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig023301 7/2/07

Do you understand that?

ACC: Yes, sir.

MJ:    Are you voluntarily entering into this stipulation because you believe it is in your best interest to do so?

ACC: I am, sir.

MJ:    Lieutenant Watada, the government has the burden of proving beyond a reasonable doubt every element of the offense to which you've been charged. By stipulating to the material elements of one of the offenses, as you are doing here, you alleviate that burden; that means, based upon the stipulation alone and without receiving any other evidence the court can find you guilty of the offenses to which the stipulation relates.

Do you understand that?

ACC: I do, sir.

MJ:    If I admit this stipulation into evidence it will be used in two ways.

First, members will use it to determine if you are in fact, guilty to the offenses to which the stipulation relates.

Second, the trial counsel may read the contents to the members, and they will have it with them when they decide upon your sentence.

Do you understand and agree to these uses of the stipulation?

ACC: Yes, sir.

MJ:    Do both counsel agree to these uses?

TC:    Yes, Your Honor.

CC:    Defense agrees.

MJ:    Lieutenant Watada, a Stipulation of Fact ordinarily cannot be contradicted. You should, therefore, let me know if there is anything whatsoever in the stipulation you disagree with or feel is untrue.

---

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS – 3

wat013 Plds- Ft.Lewis ig023301 7/2/07

**CARNEY**

**BADLEY**

**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1

Do you understand that?

2

ACC:  Yes, sir.

3

MJ:    At this time I want you to read your copy of the stipulation silently to
yourself as I read it to myself.

4

5

[The accused did as directed].

6

MJ:    Have you finished reading it?

7

ACC:  I have, sir.

8

MJ:    Have you had an opportunity to review also the material contained in
Enclosure 1 and Enclosure 2, the two videos?

9

ACC:  I have seen the videos, sir.

10

MJ:    And those are the videos of the two statements that are reflected in the
Stipulation of Fact?

11

12

ACC:  Yes, sir.

13

MJ:    Lieutenant Watada, is everything in the stipulation the truth?

14

ACC:  It is, sir.

15

MJ:    Is there anything in the stipulation that you do not wish to admit that
it's true?

16

ACC:  No, sir.

17

MJ:    Lieutenant Watada, have you consulted fully with your counsel about
the stipulation?

18

19

ACC:  Yes, sir.

20

MJ:    After having consulted with your counsel, do you consent to my
accepting the stipulation?

21

ACC:  Yes, sir.

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS – 4

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig023301 7/2/07

*Id.* at 126-29.

The military judge then asked a series of questions to ensure that there was a factual basis for the stipulation. *Id.* at 129-133. In the process of that questioning, it became evident that the stipulation used the wrong date and the wrong place for one of the verbal statements the accused was charged with making. *Id.* at 131-132. Changes were made to effect corrections as to the date and place of that particular statement. *Id.* at 131-132.

The judge asked the accused several more questions, including specific questions about his failure to report for deployment to Iraq. The accused stated on the record that he did not deploy because he believed the war in Iraq to be illegal:

> MJ:    What was your intent regarding deployment of that aircraft?
>
> ACC:  Sir, my intent, as I stated in public statements and as I stated to my chain of command numerous times, was that *the order to deploy to Iraq to support combat operations in OIF was to me*, as I believed in the facts and evidence that I saw, *was an illegal order*. And that *the war itself was illegal, and any participation of mine would be contrary to my oath*, and therefore I would have no other choice but to refuse. So my intent was to refuse the order, sir.

*Id.* at 134-35 (emphasis added).

The court asked if either counsel believed that any further inquiry into the factual basis for the stipulation was necessary. *Id.* at 139. Trial counsel asked for further inquiry to establish the fact that the aircraft in question did actually leave without the accused. The court inquired further and the accused said that he had no doubt that the plane did leave and he was not on it. *Id.* Trial counsel then expressed satisfaction with the record. *Id.* at 140. The court again asked if either counsel believed that any further inquiry was necessary and both counsel replied that they

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS – 5

wat013 Plds- Ft. Lewis ig023301 7/2/07

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1   did not. *Id.*

2   The court then took up the Pretrial Agreement, which was marked as Appellate Exhibit

3   XXXII. *Id.* at 140. In a lengthy colloquy, the court established that the accused had signed the

4   Agreement; that he understood its contents; that no one forced him to enter into it; that it

5   contained the entire agreement between the parties; and that the Exhibit was the full and

6   complete agreement. *Id.* at 141-142.

7   Further, the accused acknowledged on the record that he had had a chance to look at the

8   evidence, and to talk to his counsel about the Pretrial Agreement; that he wanted to enter into it;

9   that he understood that in exchange for dismissal of Specifications 2 and 3 of Charge II he was

10  agreeing to enter into a Stipulation of Fact; that he understood the stipulation could be used

11  against him by the members to find him guilty; that if the members found him guilty they could

12  use it to determine any sentence they might impose; and that an appellate court could also use it

13  against him. *Id.* at 143-44.

14  The accused acknowledged that no forced him to enter into the Agreement, and that he

15  wanted to enter into it. *Id.* at 145. He acknowledged that he understood what the Agreement

16  meant, and that he knew he could decline to enter into it right at that very moment and simply

17  elect to go to trial on all the charges. *Id.* at 146, 147. Lt. Watada stated on the record that he was

18  freely entering into the Agreement because he wanted to, and that he had no doubt about doing

19  that. *Id.* at 147-148.

20  Finally, the judge also discussed with the accused the fact that the Agreement could be

21  cancelled if he brought up something "inconsistent" with the facts he had stipulated to:

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS – 6

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig023301 7/2/07

1    MJ:    And the last way this can be cancelled is if I refuse to accept the
2    Stipulation of Fact. How that can happen is *if you bring up something or your
     *counsel bring up something inconsistent with what you've stipulated to as the
     uncontradicted facts* in this case. Do you understand that?

3    ACC:  Yes, sir.

4    MJ:    *That if the stipulation says, "Red," and you come in and say, "Blue,"
5    I'll have to reopen* what we talked about earlier, *and kind of make sure* those –
     that we're still on the same sheet of music here about whether *this is an accurate
6    stipulation of fact.* Do you understand that?

7    ACC:  I understand, sir.

8    *Id.* at 148 (emphasis added).

9    The accused then confirmed he had had enough time to confer with his counsel, he was

10   satisfied with his counsel's advice; he was entering the Agreement of his own free will; he had

11   no questions to ask about the Pretrial Agreement; and he understood all the terms of his Pretrial

12   Agreement. *Id.* at 149. The Court then admitted the Stipulation of Fact (Prosecution Exhibit 4)

13   into evidence without objection. *Id.*

14   Voir dire of the panel took up the remainder of the day on February 5, 2007. On February

15   6, 2007, Government Trial Counsel and the accused's Civilian Counsel gave their opening

16   statements.

17   The Government then proceeded to call its three witnesses (two of Petitioner's

18   commanding officers and a Professor of Officership at the William E. Simon Center for the

19   Professional Military Ethic, offered as an expert on military ethics and officership customs and

20   standards).

21   At 15:43 on February 6, 2007, the Government rested its case. *Id.* at 353.

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS – 7

wat013 Plds- Ft.Lewis ig023301 7/2/07

CARNEY
BADLEY
SPELLMAN

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

**THE MILITARY JUDGE *SUA SPONTE* QUESTIONED THE WISDOM AND VALIDITY OF THE STIPULATION OF FACT**

When trial resumed the next day, February 7, 2007, the military judge announced that he had provided counsel with a draft of his proposed instructions, and that he saw as an issue involving a conflict between the Stipulation of Fact and an instruction proposed by defense counsel.

> MJ:    I'm going to reopen the inquiry into the Stipulation of Fact, as a potential issue of mistake of fact has been raised by a proposed instruction by the defense, which has been marked as Appellate Exhibit XXXXV [sic].

*Id.* at 354. Defense counsel objected to reopening that inquiry and stated there was no justification or legal basis to do so. *Id.*

The court then inquired what the basis was for requesting the instruction, and defense counsel explained that it went to the element of intent, and was merely a reflection of the defense legal position that Lt. Watada did not act with the requisite criminal intent because his purpose in refusing to deploy was to avoid participating in what he believed to be an illegal war:

> CC:    It goes to the intent element, purely to the intent element.  With respect to the missing movement charge, it has always been Lieutenant Watada's position that he intended not merely to miss the movement, but to avoid participating in a war that he considered to be illegal, and that the orders to compel him to go to Iraq, in essence, were compelling him to put himself in a position where he would be supporting and engaging in war crimes.
>
> So his specific intent, which is required by the offense, was not the mere intent to miss a movement, the intent, his state of mind, was of a different character, altogether.  And, we have argued that repeatedly.  We have also, as you know, in the stipulation, if you look at the last paragraph -- sorry, the last sentence of the first paragraph, it says it there, and you approved this language, "With this stipulation, however, the defense does not waive any future claim with regard to the motions previously litigated."

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS – 8

wat013 Plds- Ft.Lewis ig023301 7/2/07

CARNEY
BADLEY
SPELLMAN

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

MJ:   Correct.

CC:   Now, you have ruled, we believe erroneously, that the order given to him was legal. We are submitting this particular instruction again, to further highlight our argument that the order was not legal, and that the intent, which Lieutenant Watada had, was not the intent which is required for the purposes of this offense. And there is nothing in that stipulation as to his intent, only that he knew and that he missed movement and that he acted intentionally with a general intent. But there is nothing in the language of that paragraph, which was very carefully drafted between myself and prior trial counsel, with regard to anything that's raised by the instruction...

*Id.* at 354-55.

The judge asked the Government what its position was and Trial Counsel responded that he opposed the giving of the proposed defense instruction because he disagreed with defense counsel's position as to the type of intent required to violate Article 87:

TC:   Your Honor, first, in regards to the intent element, I will disagree with it. The accused had the intent to miss a movement. The defense counsel would like to place the additional element in there; that he intended to not participate in what he termed, "an illegal war." That's not, in anywhere enumerated, in Article 87. The intent is the intent to miss the movement. The accused intended to miss the movement. His personal thoughts on the legality or the illegality of the war are irrelevant to the Article 87 offense.

*Id.* at 356.

Defense counsel acknowledged that they had a difference of legal opinion as to the type of intent required, and asserted that just because they disagreed as to a point of law, that did not mean that the defense proposed instruction conflicted in any way with their stipulation as to the facts. *Id.* at 356. When the court asked the government for its response, Trial Counsel *agreed* with defense counsel that there was no defense contradiction with the previously accepted Stipulation of Fact:

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS – 9

wat013 Plds- Ft.Lewis ig023301 7/2/07

**CARNEY**

**BADLEY**

**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1    CC:    And we understand that [the Government's position on the type of intent required]. I'm not attempting to put words into the Government's mouth but we obviously dispute that issue. We have a difference of opinion. And that's why we can raise that issue in the stipulation. But that has been our argument and *there is nothing in the stipulation that is contradicted by the instruction that we're offering to you.*

4

5    MJ:    Government?

6    TC:    *Government tends to agree that there is no contradiction in the stipulation.* We just absolutely disagree that this should even be an issue at this point. The court has previously ruled that the order was lawful, and the accused clearly intended to miss movement.

8    *Id.* at 356 (emphasis added).

9    The Court then stated that he was going to reopen the inquiry into whether to accept

10   the Stipulation of Fact (which had already been accepted, and published to the members of the

11   panel), because the accused persisted in believing that he had a legal defense, notwithstanding

12   the Court's legal ruling that he did not:

13   MJ:    That's where I'm having a problem here. I feel I need to reopen the inquiry as to your client's understanding of the Stipulation of Fact and whether there is a material misunderstanding and whether he believes that there is a defense because he has stipulated to all of the elements.

15

16   CC:    He does believe there is a defense. We tried to raise that defense by motion and you rejected those motions. And my assumption is, consistent with your rejection of those motions, that you will reject this instruction. But we are offering it consistent with the prior motions that we raised, because his state of mind was of a different nature than what the government contends is inadequate for the purposes of this charge. And that's the only disagreement we have.

19

20   There is no disagreement with any of the language contained in paragraph 4. We agreed to stipulate to that so that it would make the government's case easier in terms of not having to bring people and introduce documents, as they've done at prior proceedings to show that he didn't get on the plane; that he received the order, and that he knew what he was doing when he didn't get

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS – 10

CARNEY
BADLEY
SPELLMAN

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig023301 7/2/07

1    on the plane.

2    MJ:    I'm going to reopen the inquiry.

3    *Id.* at 356-57.

4    Defense counsel asked what would happen if the accused refused to answer the judge's

5    questions and the judge said that if that happened, the Court would then reconsider admission of

6    the stipulation. *Id.* at 358. Moreover, the judge noted that if he rejected the stipulation, then the

7    Government would lose that evidence in support of its charges, and at that point a mistrial would

8    be appropriate:

9    CC:    Are you directing him to answer the questions?

10    MJ:    *If he does not want to answer the questions, then I will reject the
11    stipulation* because I cannot resolve, in my mind, that there is not an
inconsistency here.

12    CC:    And then what happens?

13    MJ:    *Then I reconsider the admission of Prosecution Exhibit 4.*  It now
becomes Prosecution Exhibit 4 for identification. Under Paragraph 5 of the
14    pretrial Agreement, "It may become null and void on the occurrence of any of
the following events" and paragraph C is "The refusal of the military judge to
15    accept the stipulation of fact."

16    *At that point, government has no evidence –*

17    *        *        *

18    MJ:    *...And since the government has no evidence at this point a mistrial
would be in order.  And I would set a new trial date,* because the government
19    has dismissed two charges, based upon this pretrial agreement. They're
entitled to their bargain, as much as your client is entitled to his bargain.
20    *That's what will happen.*

21    CC:    Colonel, let me just say, I would assume that if that were to happen,
you would allow us sufficient time to appeal from that order *because jeopardy*

CARNEY
BADLEY
SPELLMAN

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

*has attached, and it may very well be that the retrial is impermissible.* If that's the case, then we would need do discuss this and make some decisions. But, I would assume that that also would follow.

MJ:    I would set the trial date and what actions you take with any superior court is well within what you want to [sic].

*Id.* at 358-59 (emphasis added).

At this juncture, defense counsel asked for a recess, and that request was granted. *Id.* at 359. When court reconvened, the accused stated that he did not object to answering the judge's questions. *Id.* The Court proceeded to remind Lt. Watada that he had previously told him that he could revoke the Stipulation of Fact if he stipulated to one fact and then later contradicted that factual admission:

MJ:    Please turn to page 7. Do you recall our conversation at the beginning of the trial when I talked to you about if I thought there might be a matter that might be inconsistent with what we've discussed, and that I may have to clarify that matter in the stipulation of fact? Do you remember that conversation?

ACC:    Sir, inconsistent with what I stipulated to in the facts?

MJ:    Yes.

ACC:    Yes, sir.

*Id.* at 361 (emphasis added).

The judge asked the accused again what it meant to him when he stipulated that he intentionally missed the movement of his unit, and Lt. Watada again responded that it meant that he deliberately refused to deploy because he felt he could not participate in an illegal war:

MJ:    We discussed that during the pretrial discussion of the pretrial

APPENDIX RELATED TO MOTION TO DISMISS ON DOUBLE JEOPARDY GROUNDS – 12

wat013 Plds- Ft.Lewis ig023301 7/2/07

**CARNEY BADLEY SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1    agreement portions. Do you remember that?

2    ACC:  I remember, sir.

3    MJ:    Taking a look at Paragraph 4 of the Stipulation of Fact on Page 7.
      What does it mean that you intentionally did not aboard [sic] the aircraft?

4
      ACC:  Your Honor, in that sentence, paragraph 4, what I was saying is that I
5    intentionally missed the movement because *I believed my participation in the
      war in Iraq would contribute to war crimes, and it would be contributing to
6    what I believed an illegal war.*

7    MJ:    So when you talk about you intentionally missed this movement, *did
      you believe you had a duty* to make that movement?"

8
      ACC:  Your Honor, *no. I did not feel I had that duty, because I was being
9    ordered to do something I felt was illegal.*

10   MJ:    I'm not trying to trick you or trap you in any way.  I just want to know
      what you think.

11
      ACC:  I understand.

12
      MJ:    What you think this paragraph means.

13
      ACC:  Yes, sir.

14
      MJ:    Do you believe you have a defense to missing movement?

15
      ACC:  Your Honor, *I have always believed*, especially at this point in time,
16   *that I had a legal and moral defense. I realize* that the government has made
      arguments contrary to that, and *that you've also made rulings contrary to
17   that. It still does not negate my belief* that I still have a defense.

18   MJ:    Understand. I'm not trying to force you to make any decision that
      force [sic] you to enter into this stipulation. You should only enter into this
19   stipulation if you truly want to do so.  Do you understand that?

20   ACC:  I do sir.

21   MJ:    Do you believe that paragraph 4 admits every element of the offense of
      missing movement?

CARNEY
BADLEY
SPELLMAN

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1

2

ACC:  Sir, no, it does not. Because I had a specific reason for what I intended to do and that was as I stated earlier.

3

4

5

MJ:    That's where I'm having a problem reconciling that you intentionally did not aboard [sic] the aircraft, because if you had no duty to board the aircraft, why would you intentionally not board the aircraft. If you believed you did not have a duty to do so, regardless of whether it's a legal duty or not, what did you believe?

6

7

ACC:  Your Honor, I did not board the aircraft out of negligence or because I thought it was a mistake.  It's because I felt that what I was being asked to do – by intentionally missing the movement, I could not take part in it.

8

9

10

11

12

13

MJ:    I'm going to read you what we covered back in the first session on Monday and I want you to explain to me what you think this meant to you, when I read, "Lieutenant Watada, the government has the burden of proving beyond a reasonable doubt every element of the offenses with which you are charged.  By stipulating to the material elements of the offense of missing movement, as you are doing here, you alleviate that burden. That means based upon the stipulation alone and without receiving any other evidence this court can find you guilty of the offense to which this stipulation relates.  Do you understand that?"  And you told me that you did. What does that mean to you because you stipulated to every element of the offense of missing movement by design?

14

15

ACC:  Sir, yes, I do understand that I stipulated, and I believe – I understand the arguments that the prosecution was making.  But I also understand that there is additional evidence that could go to my defense.

16

*Id.* at 362-64 (emphasis added).

17

The Court inquired of defense counsel whether he believed that the Stipulation of Fact

18

was a confessional stipulation, and defense counsel replied he did not:

19

20

MJ:    Defense, do you believe that this stipulation is a 'confessional stipulation' as contemplated by Rule for Court Martial 811?

21

CC:    As far as it goes, it is a stipulation of fact, which was intended to relieve the government of proving certain facts; however, *it has always been our position that Lieutenant Watada has a defense* based upon the motions

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS – 14

**CARNEY**

**BADLEY**

**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig023301 7/2/07

that we raised earlier, which you precluded us from raising at trial, and we are not altering our position in that respect, nor did we alter it in this stipulation, *as I pointed out to you in the preparatory paragraph in the last sentence which says that this stipulation is being made subject to prior arguments and without waiving those arguments.*

MJ:    That's a completely different matter, then.  Do [sic] believe that this is the [sic] confessional stipulation, as contemplated by Rule for Court Martial 811?

CC:    I believe that you and the government could interpret it as that and that the government could argue, based upon this stipulation, that they don't have to prove anything further based upon their theory of the case.  *Our theory of the case is somewhat different.*

MJ:    Thank you. Government, did the Convening Authority believe that this was a confessional stipulation of fact? Was that presented to him in that manner?

TC:    Your Honor, honestly, right now, I'm – of course, I'm a representative of the Staff Judge Advocate. I did not present this to the Convening Authority, nor was I present when this issue was presented.

MJ:    What I'm asking is did the government enter into this stipulation and into this pretrial agreement, believing you had a confessional stipulation of fact; believing that there was any – as to Charge 1, that there was any material fact not admitted?

TC:    Your Honor, we believe that Paragraph 4 provides evidence of every material fact in Article 87. In other words, we have evidence to prove every element in Article 87. *We understand the defense's position that they believe they have a defense. Obviously we disagree.*  But, we believe that we have met our burden by –

*Id.* at 364-65 (emphasis added).

Shifting his focus from the Stipulation of Fact to the Pretrial Agreement, the Court expressed its concern, but neither counsel agreed with the Court, that there was a failure to have a "meeting of the minds":

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS – 15

wat013 Plds- Ft.Lewis ig023301 7/2/07

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1    MJ:    ...[W]where I am having problems is – are we – *I'm not seeing that we have a meeting of the minds, here.* And like any contract, if there is not a

2    meeting of minds, there is not a contract. Tell me where I'm missing something, government? I'll let you answer in just a minute, defense.

3

4    TC:    In terms of the four corners of this agreement, *I think there is a meeting of the minds. I think both parties agreed* to the contents of Paragraph 4 of the Stipulation of Fact. That goes to the "what" of the offense.

5

6    The defense would want to raise the issue of "why" as a defense, and we would object to that. But in terms of what's contained in agreement, *I think –*

7    *obviously, let the defense chime in, but believe there was a meeting of the minds.*

8    *Id.* at 365-66 (emphasis added).

9    The Court asked the Government if the accused had not "set up matters" inconsistent

10    with the Stipulation of Fact, but the Government responded that it did not think so:

11    MJ:    Counsel, under *Bertelson*, don't you have to do, essentially, a *Care* inquiry with the accused?

12

13    TC:    That's correct. And that's also set forth in *Enlow* but –

14    MJ:    Did he not – *has he not set up matters inconsistent with* – he believes he has a defense to what he has stipulated to in a confessional stipulation. Whether it is a valid defense or not, government, isn't the point.

15

16    TC:    *Your Honor, I don't see it.* I mean, the subjective beliefs of the accused and that he has a defense are irrelevant.

17    MJ:    Counsel, it's just like if he pled not guilty, but as to this offense, you have to treat it essentially like a guilty plea, because he admits to all the facts

18    surrounding the offense. That's what *Bertelson* is about. That's what all that case law is about. It's so you don't shortcut the system.

19

20    TC:    *Your Honor, I don't see how this is short cutting the system.* In another case, the accused can plead to the elements of the crime and then still get up and say, "But I have a reason." He has pled not guilty to the offense.

21

*Id.* at 366-67 (emphasis added).

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS – 16

**CARNEY**

**BADLEY**

**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig023301 7/2/07

1         The Court asked if defense counsel wanted to be heard, and defense counsel attempted

2   to explain to the Court that there was no inconsistency between a Stipulation of *Fact* and a

3   legal theory or a legal conclusion, which the Court disagreed with.

4         CC:   ...*This is a stipulation; it's not a guilty plea.*   It's a stipulation of
   facts.   That is to be judged differently. *The impact or the effect of the*

5   *stipulation, the parties can disagree about.* And we apparently do disagree,
   but Lieutenant Watada's pleading not guilty.   He's always made that clear.

6   And yet, he is willing to plead to the facts which he understood could be
   sufficient on which to find him guilty, as you instructed.   He knows that based

7   upon the legal rulings and determinations the court makes.   But he still
   maintains, notwithstanding those rulings, that he is entitled to plead not guilty

8   for the reasons that he has stated to you.

9         MJ:   What does "uncontradicted" mean? What uncontradicted material
   facts?   He's essentially pled guilty to missing movement by design by

10  admitting to every fact necessary.

11        CC:   *That's a legal conclusion,* which you're drawing, and which you may
   be entitled to draw, subject to whatever legal rulings you make.  *It's not a*

12  *legal ruling which we agree with and it's not a conclusion that we will draw*
   *no matter how much you argue to us about it we will not draw that*

13  *conclusion,* and we will also appeal it, if necessary.

14        MJ:   I'm just trying to understand how his subjective belief fits into this
   because he's raising that he doesn't believe he intentionally missed the

15  movement.

16        CC:   What he's said to you in his answers to your questions is that the act of
   not getting on the plane was not a mistake.   He did that deliberately.  *But he*

17  *did it for a specific reason out of a specific intent with which the*
   *government does not agree and which the Government deems to be*

18  *irrelevant and which you have ruled is irrelevant.*   That's all he is saying.
   And he's made that argument from the beginning, long before he actually

19  failed to get on the plane.   That's simply our position.

20  *Id.* at 367-68 (emphasis added).

21        The judge asked Trial Counsel if he understood the Court's problem and Trial Counsel

APPENDIX RELATED TO MOTION
TO DISMISS ON DOUBLE
JEOPARDY GROUNDS – 17

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

wat013 Plds- Ft.Lewis ig023301 7/2/07