1
2
3
4
5
6          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
7                    AT TACOMA

8   1LT. EHREN K. WATADA,

9                        Petitioner,                 CASE NO. C07-5549BHS

10              v.

11  LT. COL. JOHN HEAD, Military Judge,             ORDER GRANTING IN PART
    Army Trial Judiciary, Fourth Judicial          AND DENYING IN PART
12  District; LT. GEN. CHARLES JACOBY,             PETITIONER'S SECOND
    Convening Authority, Ft. Lewis,                AMENDED PETITION FOR
13  Washington,                                    WRIT OF HABEAS CORPUS

14                       Respondents.

15

16          This matter comes before the Court on Petitioner's Second Amended Petition for

17  Writ of Habeas Corpus (Dkt. 25). The Court has considered the pleadings filed in support

18  of and in opposition to the petition, heard oral argument of counsel, and hereby grants in

19  part and denies in part the petition for the reasons stated herein.

20                           **I. PROCEDURAL HISTORY**

21          On October 3, 2007, Petitioner 1LT Ehren K. Watada filed a Petition for Writ of

22  Habeas Corpus under 28 U.S.C. § 2241 (Dkt. 1) and an Emergency Motion for a Stay of

23  Court Martial Proceedings (Dkt. 2) that was set to begin on October 9, 2007. Petitioner

24  requested that the Court "Issue a Writ of Habeas Corpus releasing Petitioner from all

25  restraint imposed by the pending court-martial charges, and declaring any trial on such

26  charges to be barred and prohibited by the Double Jeopardy Clause of the Fifth

27  Amendment." Dkt. 1 at 9.

28

On October 5, 2007, the Court issued a preliminary stay of the court-martial.  Dkt. 9.  On November 8, 2007, the Court granted Petitioner's Emergency Motion, issuing a preliminary injunction over the court-martial proceeding referred by Respondent Jacoby.  Dkt. 18; *Watada v. Head*, 530 F. Supp. 2d 1136 (W.D. Wash 2007).

On June 25, 2008, Petitioner filed a Second Amended Petition for Writ of Habeas Corpus.  Dkt. 25.  On August 19, 2008, Respondents filed a memorandum in opposition to the petition.  Dkt. 32.  On September 16, 2008, Petitioner replied.  Dkt. 38.

## II.  FACTUAL HISTORY

**A.      Preferred Charges and Court-Martial**

On July 5, 2006, LTC Kevin Lancaster preferred charges against Petitioner and referred them for a court-martial.  Administrative Record ("AR") at 782-86.  The charges were for five violations of the Uniform Code of Military Justice ("Military Code") as follows:

Charge I:
Violation of Article 87 -  Missing Movement

> Specification - Missing movement of Flight Number BMYA91111173

Charge III:
Violation of Article 133 -    Conduct Unbecoming an Officer and a Gentleman

> Specification 1 - Taking part in a public press conference

> Specification 2 - Giving a public interview

> Specification 3 - Giving a public interview

The Additional Charge:
Violation of Article 133 -    Conduct Unbecoming an Officer and a Gentleman

> Specification - Participating in Veterans for Peace National Convention.

*Id.*[1]

---

[1] The specifications are summarized for clarity throughout this order.  The original charge sheet contains numerous handwritten annotations and is less than clear.  The subsequent charge sheet consolidates these charges and specifications.

On January 26, 2007, Respondent Head, the military judge for the court-martial, sent an email to counsel for the Government and for Petitioner regarding a proposed pretrial agreement. AR at 1312. Respondent Head inquired about the nature of the proposed agreement as follows:

> In paragraph 3 it talks as if this is a guilty plea. There is no plea of guilty that I see. In reading the stip, the government must still prove the element 'that Flight Number BMYA91111173 actually left' and there are many elements of the Article 133 that are not admitted. That probably needs to be clarified. Is it a guilty plea or what?

*Id.*

On January 29, 2007, Petitioner and the Government entered into a pretrial agreement wherein the Government agreed to dismiss "Specifications 2 and 3 of Charge III without prejudice to ripen into prejudice upon completion of trial proceedings." *Id.* at 1313-14. In exchange for dismissal of those charges, Petitioner agreed to sign a document entitled "Stipulation of Fact." *Id.* The Stipulation of Fact contained facts that were "true" and "admissible without regard to any evidentiary rule [or other rule] that might otherwise make them inadmissible." *Id.* at 1315. Paragraph 4 of the Stipulation of Fact read as follows:

> At approximately 1000 hours on 22 June 2006, lLT Watada intentionally missed the movement of his flight to Iraq. lLT Watada was manifested for the 22 June 2006 flight (Flight Number BMYA91111173). He knew of the manifest information regarding the deployment, including the date and time of his required movement, because the unit briefed him on numerous occasions in March, April, May, and June 2006, and specifically provided him the requisite documents detailing the manifest requirements. Additionally, LTC Bruce Antonia told lLT Watada about the flight departing McChord Air Force Base on 22 June 2006, and specifically counseled 1LT Watada regarding the manifest details of the deployment. On 19 June 2006, 1LT Watada signed a counseling statement, acknowledging the requirement for him to deploy, to include the specific details of the movement (See Enclosure 2). When 1LT Watada missed the battalion manifest call early in the morning on 22 June 2006, LTC Antonia counseled 1LT Watada once again, ordering him to draw his equipment and report to the brigade manifest call (See Enclosure 3 – this document was actually signed early on the morning of 22 June 2006, not 21 June 2006). Rather than attending the brigade manifest call, lLT Watada remained in his office. Shortly thereafter, a bus took the deploying Soldiers from Fort Lewis to McChord Air Force Base. 1LT Watada chose not to board the bus. From there, at approximately 1000 hours on 22 June 2006, the deploying Soldiers boarded an airplane and departed McChord Air Force Base en route to

1    Mosul, Iraq, via Fight Number BMYA91111173. 1LT Watada
2    intentionally did not board the aircraft and as a result, missed the movement
     of Flight Number BMYA91111173.

3    *Id*. at 1321.

4        On February 5, 2007, the court-martial was called to order. *Id*. at 882. Petitioner

5    pleaded "not guilty to all charges and specifications." *Id*. at 905. After the plea, the

6    judge addressed the Stipulation of Fact. Before accepting the stipulation, the judge

7    conducted an inquiry into Petitioner's understanding of the Stipulation of Fact. *Id*. at

8    906-929. The judge informed Petitioner as follows:

9        If I admit this stipulation into evidence it will be used in two ways:
         First, members will use it to determine if you are, in fact, guilty of
10       the offenses to which the stipulation relates;
             Second, the trial counsel may read the contents to the members, and
11       they will have it with them when they decide upon your sentence.

12   *Id*. at 907. The judge asked Petitioner if "everything in the stipulation [was] the truth?"

13   *Id*. at 908. Petitioner responded "[i]t is, sir." *Id*.

14       After further questioning, the judge asked if any additional inquiry into the factual

15   basis for the Stipulation of Fact was necessary. *Id*. at 920. The parties answered that the

16   inquiry was sufficient. *Id*. After a discussion of the pretrial agreement, the judge

17   accepted the stipulation and entered it into evidence. *Id*. at 929.

18       The court-martial proceeded with the judge giving preliminary instructions,

19   conducting voir dire, and empaneling the members (the military equivalent of a jury). *Id*.

20   at 930-1039. When the Government presented its case, the Stipulation of Fact was

21   published and read to the panel. *Id*. at 1043-44. The panel also watched two videos that

22   were part of the Stipulation of Fact. *Id*. at 1043-44. The Government rested at 1546 on

23   February 6, 2007. *Id*. at 1134.

24       The court reconvened the next day. *Id*. Before counsel for Petitioner presented

25   any evidence, he submitted a proposed jury instruction on the defense of mistake of fact.

26   *Id*. The proposed instruction contained the following language: "The evidence has raised

27   the issue of mistake on the part of the accused concerning his belief that he had a legal

28

and moral obligation to refuse to participate in the war in Iraq relating to the offenses of missing movement." *Id*. at 1331. The judge expressed concern that this proposed instruction conflicted with the Stipulation of Fact and reconsidered his acceptance of the Stipulation of Fact into evidence. *Id*. at 1134.

The judge informed the parties that he was going to reopen the inquiry into Petitioner's understanding of the Stipulation of Fact. *Id*. Petitioner's counsel objected to the reopening of any inquiry and stated that the judge was "not authorized to ask [Petitioner] questions anytime you choose to do so." *Id*. at 1135. The judge then asked "what is your basis for mistake of fact?" *Id*. Petitioner's counsel responded as follows:

> It goes to the intent element; purely to the intent element. With respect to the missing movement charge, it has always been Lieutenant Watada's position that he intended not merely to miss movement, but to avoid participating in a war that he considered to be illegal, and that the orders to compel him to go to Iraq, in essence, were compelling him to put himself in a position where he would be supporting and engaging in war crimes.
> So his specific intent, which is required by the offense, was not the mere intent to miss a movement. His intent, his state of mind, was of a different character, altogether. And, we have argued that repeatedly. We have also, as you know, in the stipulation, if you look at the last paragraph – sorry, the last sentence of the first paragraph, it says it there, and you approved this language, "With this stipulation; however, the defense does not waive any future claim with regard to the motions and objections previously litigated."

*Id*. Petitioner's counsel also stated that "[w]e did not plead guilty because there is a dispute in this case over the intent element, and that is what the instruction goes to." *Id*. at 1136.

The judge was still concerned with Petitioner's understanding of the Stipulation of Fact "and whether [Petitioner] believe[d] that there is a defense because he has stipulated to all of the elements." *Id*. at 1137. Petitioner's counsel responded as follows:

> He does believe there is a defense. We tried to raise that defense by motions, and you rejected those motions. And my assumption is, consistent with your rejection of those motions, that you will reject this instruction. But we are offering it consistent with the prior motions we raised, because his state of mind was of a different nature than what the government contends is adequate for the purposes of this charge. And that's the only disagreement we have.

There is no disagreement with any of the language contained in Paragraph 4. We agreed to stipulate to that so that it would make the government's case easier in terms of not having to bring people and introduce documents, as they've done at prior proceedings to show that he didn't get on the plane; that he received the order, and that he knew what he was doing when he didn't get on the plane.

*Id.*

The judge was not satisfied with Petitioner's counsel's explanation and informed the parties that he "was going to reopen inquiry." *Id.* at 1138. Petitioner's counsel objected. *Id.* The judge responded that if [Petitioner] did "not want to answer the questions, then [the judge would] reject the stipulation because [he could not] resolve, in [his] mind, that there [was] not an inconsistency here." *Id.* Petitioner's counsel asked: "Then what happens?" The judge replied as follows:

Then I reconsider admission of [the Stipulation of Fact]. It now becomes Prosecution Exhibit 4 for identification. Under Paragraph 5 of the pretrial agreement, "It may become null and void on the occurrence of any of the following events" and Paragraph C is "The refusal of the military judge to accept the stipulation of fact."

*Id.* at 1139. After a brief interruption, the judge continued as follows:

And since the government has no evidence at this point a mistrial would be in order. And I would set a new trial date, because the government has dismissed two charges, based upon this pretrial agreement. They're entitled to their bargain, as much as your client is entitled to his bargain. That's what will happen.

*Id*

Petitioner's counsel then raised issue of double jeopardy as follows:

Colonel, let me just say, I would assume that if that were to happen, you would allow us sufficient time to appeal from that order because jeopardy has attached, and it may very well be that the retrial is impermissible. If that's the case, then we need to discuss this and make some decisions.

*Id.* The judge responded that, if he declared a mistrial, then he "would set a new trial date and what actions [Petitioner took] with any superior court is well within what you want to." *Id.* From this point of the proceeding through the judge declaring a mistrial, the record of the trial proceeding shows that neither jeopardy nor the contents of an appeal based on double jeopardy were discussed. *See id* at 1139-55.

After a recess from 1057 until 1224, the judge reopened the inquiry into Petitioner's understanding of the Stipulation of Fact. *See id*. At 1141-44. Upon completion of the inquiry, the judge asked the Government's counsel if he "entered into this stipulation and into this pretrial agreement believing [he] had a confessional stipulation." *Id*. at 1146. Counsel responded that he had "evidence to prove every element of [Charge I – Missing Movement]." *Id*. The judge then stated his concern as follows:

> Well, understand that we can't have disagreements as to material elements of a pretrial agreement, and we cannot have disagreements as to what the pretrial agreement means. I covered this, and I did a[n] . . . inquiry, which is a confessional stipulation inquiry, and I inquired as to, "Do both counsel agree to the stipulation, the uses of the stipulation and the pretrial agreement and my interpretation of the pretrial agreement." That's where I'm having problems is – are we – I'm not seeing that we have a meeting of the minds here. And, like any contract, if there is not a meeting of minds, there is not a contract. Tell me where I'm missing something, government?

*Id*.

The Government's counsel then stated that "[i]n terms of the four corners of this agreement, I think there is a meeting of the minds." *Id*. at 1147. Government's counsel added that "the subjective belief of the accused and that he has a defense are not relevant." *Id*. The judge still expressed concern and explained that "it's just like if [Petitioner] had plead not guilty, but as to this offense, you have to treat it essentially like a guilty plea." *Id*. Government's counsel responded that "the accused can plead to the elements of the crime and then still get up and say, 'But I have a reason.' He has plead not guilty to the offense." *Id*. After a short discussion and a recess, the judge reopened the inquiry. *Id*. at 1148-51.

After the inquiry, the judge expressed his belief that there was a problem with the Stipulation of Fact in that it could not be a confessional stipulation if Petitioner thought he had a defense to the charge of missing movement. *Id*. at 1151-52. The Government responded:

Your Honor, I don't know what else to say other than what's already been said. The parties agree that the contents of the stipulation – the parties agree that it is a stipulation of fact.

*Id*. The judge stated:

That's not the issue. At this point I'm reconsidering Prosecution Exhibit 4 and rejecting the stipulation of fact. It's now Prosecution Exhibit 4 for identification, as the government has closed its case. Government, do you wish to reopen your case, or do you wish, as we now have a material breach of the pretrial agreement, do you wish to request a mistrial because at this point we don't have evidence on every element?

*Id.*

After this exchange, the court took a 40-minute recess. *Id.* at 1153. Upon return, counsel for Petitioner restated that Petitioner would not withdraw from the stipulation. *Id.* at 1154. This led to an exchange as follows:

[JUDGE]: Government, what's your druthers? At this point, I certainly entertain a motion for a mistrial and I'll set a new trial date. At this point, I believe there is a breach of the pretrial agreement, which would allow the government to resurrect the additional charges that were dismissed because we have not reach[ed] the determination point, as required, for a dismissal with prejudice. I believe the government was, at 802, asking about the . . . [intent] element that's in there. But if you review the entirety of the stipulation of fact, that I think even a casual reading of the stipulation – every statement in there goes to the, "I do not intend to deploy." I don't know how we get around that. What we're left with is I can instruct the members, if the government wishes to go forward. I know the government does not have all of their witnesses that they would have called for the other offenses. So, government, what's your choice?

[GOVERNMENT]: Your Honor, at this point, the government moves for mistrial.

[JUDGE]: Defense, do you want to be heard?

[COUNSEL FOR PETITIONER]: Yes. We would oppose the motion.

[JUDGE]: Counsel, I have the week of 19 March available.

[COUNSEL FOR PETITIONER]: Can we first determine, are you declaring a mistrial?

[JUDGE]: I'm going to declare a mistrial.

*Id.* at 1154-55. The court-martial was then adjourned. *Id.* at 1159-60.

**B.     Re-Preferred Charges and Petitioner's Attempts to Dismiss**

On February 23, 2007, LTC Kevin Lancaster re-preferred the charges against

Petitioner and referred them for trial as follows:

Charge I:
Violation of Article 87 - Missing Movement

      Specification - Missing movement of Flight Number BMYA91111173

Charge II:
Violation of Article 133 - Conduct Unbecoming an Officer and a Gentleman

      Specification 1 - Taking part in a public press conference

      Specification 2 - Giving a public interview

      Specification 3 - Giving a public interview

      Specification 4 - Participating in Veterans for Peace National Convention

AR at 476-78.  Petitioner filed a Petition for Extraordinary Relief in the Nature of a Writ

of Prohibition and an Application for Stay of Proceedings with the Army Court of

Criminal Appeals.  *Id*. at 724-69.  Petitioner based the application on his belief that a

second prosecution of the same charges would violate his Fifth Amendment right to be

free from double jeopardy.  *Id.*  On May 18, 2007, the Army Court of Criminal Appeals

issued an order granting the petition in part by instituting a stay of the second court-

martial and requiring the Government to respond to the petition and show cause why the

petition should not be granted.  *Id*. at 688-89.  On June 29, 2007, the Army Court of

Criminal Appeals denied the petition on the grounds that Petitioner had not first moved to

dismiss in the military trial court.  *Id*. at 27.

On July 2, 2007, Petitioner filed a motion to dismiss in the trial court requesting

that all charges be dismissed because they are barred by double jeopardy.  *Id*. at 511-566.

On July 5, 2007, the Government responded.  *Id*. at 567-582.  On July 6, 2008, the parties

presented evidence and argued their positions.  *Id*. at 355-472.  On July 11, 2007,

Respondent Head issued findings of fact, conclusions of law, and an order denying

Petitioner's motion to dismiss.  *Id*. at 583-589.  Respondent Head concluded that he, as

trial judge of the court-martial, "rejected the stipulation, thus [Petitioner] was in breach of the pretrial agreement." *Id.* at 586.  Although the trial record is not fully developed as to the "breach," Respondent Head subsequently explained the "breach" as follows:

> [Petitioner] made it clear that he had no intent to enter into a stipulation that admits every element of the offense charged in the Specification of Charge 1 [Missing movement].  [Trial Record at 363].  The Government believed that the stipulation was also a confessional stipulation [Trial Record at 364], only changing its position when rejection of the stipulation of fact appeared inevitable.  [Trial Record at 366-367].  The Court properly reconsidered its earlier admission of [the Stipulation of Fact] and rejected [it].
>
> Once the Court rejected the stipulation of fact, then the court must look to the pretrial agreement.  Paragraph (5)(c) of [the agreement] provides that "the agreement may become null and void upon the occurrence of . . . (c) the refusal of the military judge to accept the Stipulation of Fact." . . . The term of the agreement is not ambiguous.  The term was a material term to the pretrial agreement, because the agreement was for the government to dismiss two specifications in exchange for the defense stipulating to the matters contained in [the Stipulation of Fact].  The government dismissed Specifications 2 and 3 of Charge II.  The Court rejected the stipulation, thus the defense was in breach of the pretrial agreement.

*Id.*

As for whether Respondent Head abused his discretion in declaring a mistrial, he concluded as follows:

> The accused's desire and interest in having the trial concluded in a single proceeding was rendered impossible by the accused's breach of the pretrial agreement. In fact, the accused's actions would have necessitated a <u>second</u> trial on the merits of the two dismissed specifications. Further, had the accused been convicted of any of the charges at the first trial, those convictions could have been used as matters in aggravation in the second trial.  Additionally, merely concerning itself with the accused's interests would have resulted in the ends of public justice being defeated. To leave the accused in the same position he would have been in without his breach of the pretrial agreement would put the government at a severe tactical disadvantage – being forced to rely on testimony that could be disregarded by the panel rather than relying on uncontroverted facts that could not be disregarded. While this is normally the way a trial is conducted, under the facts of this case, after the government opening and after the panel was informed that these were the uncontroverted facts of the case, the government would have to overcome an instruction to disregard all of the facts on the issues that were covered by the stipulation. This would have undoubtedly confused the panel.
>
> Last, the alternatives to a mistrial would have been worse than the mistrial itself. First, there is no way to have reinstated the dismissed charges in mid-trial. *See* R.C.M. 904, Discussion. This would have resulted in a second trial of the accused with the results of the first trial being used as

aggravation against the accused had he been convicted of any offense in the first trial. Second, even if the government had proceeded only on the Charges and Specifications that were still before the court, the stipulation contained very inflammatory statements made by the accused to the press that would not have been otherwise admissible. These statements could only have had an extremely prejudicial effect on the panel and no curative instruction would have been sufficient to cure the taint of the statements. Third, to ask the members to disregard the fact that the accused had agreed that all of the facts in the stipulation of fact were true, would place the accused in the light of being untruthful to the panel in such a way that the ordinary instruction to disregard the contents would have been insufficient to cure the problem.

Further, merely delaying the trial would not have fixed the problems. The trial is still tainted by the stipulation of fact. There is no guarantee that the government could have even obtained the necessary witnesses to authenticate statements in the stipulation of fact. If they had not been able to authenticate the videos or the reporters' statements, the prejudice to the accused only magnifies. Such powerful evidence would have been impossible for a panel to have disregarded.

Even if the accused would have benefited from the rejection of the stipulation, it is not in the interests of justice that an accused benefit from the breach of his pretrial agreement where the pretrial agreement is not unlawful. Last, to allow the case to continue where there was such a fundamental misunderstanding of the meaning and effect of the stipulation would only invite further error and call into question the fairness of the proceedings. The Court could not allow the proceedings to continue without irreparable harm occurring to either party.

*Id.* at 587.

On July 27, 2007, Petitioner appealed to the Army Court of Criminal Appeals. *Id.* at 230-289. Petitioner filed a Renewed Petition For Extraordinary Relief and requested a stay of the court-martial proceedings. *Id.* On August 27, 2007, Petitioner filed a motion to expedite the ruling on his application for a stay. *Id.* at 156-160. On August 28, 2007, the Army Court of Criminal Appeals granted Petitioner's motion for expedited ruling and denied the petition for relief as follows:

We have reviewed the findings of fact and conclusions of law issued by the trial court and find the military judge did not abuse his discretion by granting the mistrial. *See United States v. Diaz*, 59 M.J. 79, 90 (C.A.A.F. 2003). "A military judge has 'considerable latitude in determining when to grant a mistrial.'" *Id.* (quoting *United States v. Seward*, 49 M.J. 369, 371 (C.A.A.F. 1998)). "This Court will not reverse the military judge's decision absent clear evidence of abuse of discretion." *Id.* (citing *United States v. Dancy*, 38 M.J. 1, 6 (C.M.A. 1993); *United States v, Rushatz*, 31 MJ. 450 (C.M.A. 1990)). Further, we find no violation of the Double Jeopardy clause or Article 44, UCMJ, and decline to dismiss, stay, or further delay the proceedings.

1    *Id.* at 155.

2        On September 17, 2007, Petitioner sought relief from the United States Court of

3    Appeals for the Armed Forces by way of a Petition for a Writ of Prohibition and an

4    Application for Immediate Stay of Trial Proceedings. *Id.* at 99-153. On October 5, 2007,

5    in a one-page order, the United States Court of Appeals for the Armed Forces stated

6    "[t]hat said motion for stay is hereby denied; and [t]hat said writ-appeal petition is hereby

7    denied." *Id.* at 1.

## III. JURISDICTION

9        The Court has ruled that, under 28 U.S.C. § 2241, it has subject matter jurisdiction

10   to issue a writ of habeas corpus in this case. *Watada*, 530 F. Supp. 2d at 1146-47. The

11   Court, however, did not decide the full extent of its jurisdiction over Petitioner's claims.

12   In granting the preliminary injunction, the Court found that it had jurisdiction to review

13   "Petitioner's double jeopardy claim," *id.* at 1151, but the Court neither considered nor

14   decided the question of whether double jeopardy attached "to the charges dismissed

15   without prejudice pursuant to the pretrial agreement," *id.* at 1161.

16       As a threshold matter, this case is now in a substantially different procedural

17   posture because the Court must consider more than Petitioner's "irreparable injury" or

18   "liklihood of success." *See id.* at 1151. In the petition before the Court, Petitioner

19   requests that "[e]ither on double jeopardy grounds, or due process grounds, or both, the

20   two conditionally dismissed Article 133 specifications, as well as the other three charges,

21   should be dismissed with prejudice." Dkt. 38 at 21. In other words, Petitioner asks the

22   Court to consider both double jeopardy and due process arguments regarding all "five

23   specifications or charges with which he was originally charged." *Id.* Therefore, the

24   Court must first determine the merits upon which it may grant habeas relief.

25   **A.    Military Habeas**

26       The Supreme Court has recognized that:

27           Military law, like state law, is a jurisprudence which exists separate
             and apart from the law which governs in our federal judicial establishment.

28

This Court has played no role in its development; we have exerted no supervisory power over the courts which enforce it; the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty, and the civil courts are not the agencies which must determine the precise balance to be struck in this adjustment.

*Burns v. Wilson*, 346 U.S. 137, 140 (1953). The separate jurisprudence, however, does not serve as a complete bar to adjudication in this Court because it "does not displace the civil courts' jurisdiction over an application for habeas corpus from the military prisoner." *Id*. at 142. But the separation does mean "that when a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." *Id*.

Although in *Burns* the Supreme Court seemed to have declared a rule of limited jurisdiction for civil courts, "[t]he federal courts' interpretation . . . of the language in *Burns* has been anything but clear." *Dodson v. Zelez*, 917 F.2d 1250, 1252 (10th Cir. 1990). Respondents argue that the Court's scope of review with respect to Petitioner's claims should be "extremely narrow." Dkt. 32 at 3. Respondents assert that "[a]bsent an adequate showing that the military courts have failed to give full and fair consideration to the matter, this Court should not reach the merits and should deny the petition." *Id*. Petitioner counters that the Court should decline the Government's invitation to limit its review of Petitioner's claims because Respondents' arguments are based upon opinions from the Tenth Circuit instead of Ninth Circuit precedent. Dkt. 38 at 4-12. The Court agrees with Petitioner and finds that the Ninth Circuit has adequately addressed the extent of this Court's exercise of jurisdiction over Petitioner's claims.

The Ninth Circuit has stated that:

The limited function of civil courts in habeas corpus proceedings involving military convictions is to determine whether the court-martial had jurisdiction of the person accused and the offense charged, and whether it acted within its lawful powers.

*Sunday v. Madigan*, 301 F.2d 871, 873 (9th Cir. 1962). In a more recent decision, the Ninth Circuit stated that "[t]he *Burns* plurality does not preclude civil court consideration

of the constitutional [equal protection, due process, and First Amendment] defects alleged here." *Hatheway v. Secretary of Army,* 641 F.2d 1376, 1380 (9th Cir. 1981), *cert. denied,* 454 U.S. 864 (1981). The Court is unaware of, and Respondents have failed to provide, any binding authority holding otherwise.

In this case, Petitioner presents claims of constitutional defects in his military court-martial. Therefore, the Court may consider those constitutional defects to determine whether the military court is acting without jurisdiction. This is not the final jurisdictional hurdle, however, because questions of equitable jurisdiction are raised when federal courts are asked to intervene in pending court-martial proceedings. *Schlesinger v. Councilman,* 420 U.S. 738, 740 (1975).

## B.    Equitable Jurisdiction and Abstention

"[T]he question of equitable jurisdiction [is] a question concerned, not with whether the claim falls within the limited jurisdiction conferred on the federal courts, but with whether consistently with the principles governing equitable relief the court may exercise its remedial powers." *Councilman,* 420 U.S. at 754.

One principle of equitable restraint is the exhaustion of available remedies. "[F]ederal courts normally will not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted." *Id.* at 758; *Noyd v. Bond,* 395 U.S. 683, 693 (1969); *Gusik v. Schilder,* 340 U.S. 128 (1950).

Another principle of equitable restraint is abstention from interfering with pending court-martial proceedings. On this issue, the Supreme Court summarized its reasoning and held as follows:

> As we have stated above, judgments of the military court system remain subject in proper cases to collateral impeachment. But implicit in the congressional scheme embodied in the [Military Code] is the view that the military court system generally is adequate to and responsibly will perform its assigned task. We think this congressional judgment must be respected and that it must be assumed that the military court system will vindicate servicemen's constitutional rights. . . . The same principles are relevant to striking the balance governing the exercise of equity power. We hold that when a serviceman charged with crimes by military authorities can show ***no harm other than that attendant to resolution of his case in the military***

*court system*, the federal district courts must refrain from intervention, by way of injunction or otherwise.

*Councilman,* 420 U.S. at 758 (emphasis added).

Under this framework, the Court will evaluate whether it should refrain from asserting its remedial powers. Petitioner's claims can be separated into three categories: (1) whether double jeopardy bars Charge I and Charge II, Specifications 1 and 4 (the charges and specifications that were not subject to dismissal as part of the pretrial agreement); (2) whether double jeopardy bars Charge II, Specifications 2 and 3 (the "two conditionally dismissed Article 133 specifications" that were part of the pretrial agreement); and (3) Petitioner's due process claim for dismissal of Charge II, Specifications 2 and 3.

## 1.    Double Jeopardy on Charge I and Charge II, Specifications 1 and 4

On July 5, 2006, LTC Kevin Lancaster referred charges against Petitioner. AR at 782-86. The charges that were not included in a subsequent pretrial agreement between Petitioner and the Government are as follows: Charge I – Missing Movement; Charge III – Conduct Unbecoming an Officer and a Gentleman, Specification 1 – Taking part in a public press conference; and the Additional Charge – Conduct Unbecoming an Officer and a Gentleman. *Id.* On February 5, 2007, the court-martial was convened. *Id.* at 774. On February 7, 2007, the military judge declared a mistrial. *Id.* at 1159. On February 23, 2007, the convening authority re-referred those three offenses as follows: Charge I and Charge II, Specifications 1 and 4. *Id.* at 476-77.

Petitioner claims that "jeopardy attached" to those two charges and specifications. Dkt. 25 at 3. Respondents assert that "Petitioner presented his double jeopardy claim to the military trial court, the Army Court of Criminal Appeals . . ., and the United States Court of Appeals for the Armed Forces . . . ." Dkt. 32 at 3 (citing *Watada*, 530 F. Supp. 2d at 1147). Respondents also assert that "[t]he joint administrative record demonstrates that the double jeopardy issue has been extensively briefed and argued by the petitioner

and respondents . . . ." Dkt. 32 at 3 (citing AR at 1-474, 511-589, 606-769). The military courts denied Petitioner's request to dismiss these charges on the grounds that they are barred by double jeopardy. Therefore, Petitioner's available remedies have been exhausted as to these three specifications.

The next issue concerns the fact that the exhaustion of remedies has occurred before the court-martial has convened. Pretrial intervention requires the Court to consider the harm to Petitioner should the court-martial be allowed to proceed. *See Councilman,* 420 U.S. at 758. No person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This Court has already concluded that abstaining from exerting jurisdiction over Petitioner's double jeopardy claims and allowing the court-martial to proceed would subject Petitioner to "greater harm 'than that attendant to resolution of his case in the military court system.'" *Watada,* 530 F. Supp. 2d at 1148-49. Petitioner has again, on a full review of the record, met this burden.

Therefore, the Court's assertion of jurisdiction over Petitioner's double jeopardy claims on Charge I and Charge II, Specifications 1 and 4 is proper because Petitioner has exhausted his available remedies in the military courts and Petitioner would suffer great harm if the Court declined to intervene prior to the convening of the court-martial.

### 2. Double Jeopardy on Charge II, Specifications 2 and 3

On January 29, 2007, Petitioner entered into a pretrial agreement with the Government. AR at 1313-14. Prior to the court-martial, the Government agreed to dismiss two specifications that LTC Kevin Lancaster had referred for trial against Petitioner if the military court accepted the Stipulation of Fact. *Id.* On February 5, 2007, the military court accepted Petitioner's Stipulation of Fact. *Id.* at 929. On February 23, 2007, the LTC Kevin Lancaster re-referred for court-martial these two offenses as follows: Charge II – Conduct Unbecoming an Officer and a Gentleman, Specifications 2 and 3 – Giving public interviews. *Id.* at 476-77.

It is uncontested that Petitioner presented and argued his double jeopardy claims on these specifications to the military trial court, the Army Court of Criminal Appeals, and the United States Court of Appeals for the Armed Forces. Dkt. 32 at 7-10; *see also* AR at 1-474, 511-589, 606-769. Although Petitioner raised these issues at every level of the military court system, it cannot be said that he has exhausted all his available military remedies as to the dismissal of these charges. Specifically, Petitioner claims that these charges should also be dismissed on either due process grounds, Dkt. 25 at 13-25, or First Amendment grounds, Dkts. 34 and 37. Thus, Petitioner may pursue pretrial dismissal of these charges in ways other than requesting this Court's intervention to prevent an alleged deprivation of his double jeopardy right. In other words, Petitioner has failed to show that this Article III court is, at this time, the court of last resort.

The Supreme Court has "established the general rule that habeas corpus petitions from military prisoners should not be entertained by federal civilian courts until all available remedies within the military court system have been invoked in vain." *Noyd v. Bond,* 395 U.S. at 693. Moreover, "[i]f the military courts do vindicate petitioner's claim, there will be no need for civilian judicial intervention." *Id*. at 695. In this case, the Court recognizes that the remedies that it deems available are alternative grounds of relief. Petitioner, however, has brought these alternative forms of relief to the attention of the Court and the Court has not, sua sponte, raised hypothetical legal arguments on Petitioner's behalf. In this situation, the Court finds that equitable restraint counsels against this Court's intervention until Petitioner fully exhausts his available remedies.

The most compelling reason for this Court to abstain from exercising jurisdiction over these claims is the Court's ultimate conclusion in this order. As discussed *infra*, the Court concludes that there was not a manifest necessity for the trial judge to declare a mistrial and, therefore, double jeopardy bars Petitioner's retrial on certain charges. The military courts should have an opportunity to consider how that ruling affects the conditionally dismissed charges before a constitutional review becomes either necessary

or appropriate.  For example, Respondent Head has concluded that "there is no way to have reinstated the dismissed charges in mid-trial" and, therefore, "the accused's actions would have necessitated a <u>second</u> trial on the merits of the two dismissed specifications." *See supra* (emphasis in original).  The military court has a significant issue to determine under its law before a civil court should consider if any constitutional defects are present in a pending court-martial.

Therefore, for the purposes of this order, the Court will abstain from exercising jurisdiction at this time over Petitioner's claim that double jeopardy bars the military from convening a court-martial on Charge II, Specifications 2 and 3.  Petitioner's double jeopardy claim on this charge and these specifications is dismissed without prejudice.

### 3.    Due Process on Charge II, Specifications 2 and 3

Petitioner claims that due process bars the court-martial from proceeding on the two conditionally dismissed specifications (Charge II, Specifications 2 and 3).  Dkt. 25 at 13-25.  Respondents claim that Petitioner's "due process claim . . . has never been asserted before any military court."  Dkt. 32 at 10.  Petitioner concedes that he has not exhausted his available remedies on these issues, but he argues that the due process claims are intimately tied to his double jeopardy claims and that asking the military courts to resolve these issues would be futile.  Dkt. 38 at 20-21.  Petitioner's arguments are unavailing.  Petitioner should seek available relief from the military courts.  *Noyd*, 395 U.S. at 693.  Moreover, Petitioner has failed to show that, if this Court does not intervene on due process grounds before the court-martial, he will suffer harm other than that attendant to the resolution of his case in the military court system.  *Councilman*, 420 U.S. at 758.  Therefore, the Court will abstain from exercising jurisdiction over Petitioner's claim that due process bars the military from convening a court-martial on Charge II, Specifications 2 and 3.

## C.     Scope of Review

Respondents argue that the Court should not reach the merits of Petitioner's claims because the Court's review is limited to the question of whether "petitioner's claims have been given a full and fair consideration in the military courts." Dkt. 32 at 4. Federal habeas relief, however, "is available if the military exceeds its jurisdiction." *Zaputh v. Cowgill*, 335 F.3d 885, 887 (9th Cir. 2003) (citing *Gibson*, 329 U.S. at 358-59). Moreover, the Ninth Circuit stated that "the military is not the last word on federal questions." *Id*. n.3. Respondents fail to explain how the Court can determine whether the military court has exceeded its jurisdiction in violation of the U.S. Constitution without reaching the merits of Petitioner's claims.

Therefore, the Court will reach the merits of Petitioner's claim that his Fifth Amendment right to be free from double jeopardy bars his retrial on Charge I and Charge II, Specifications 1 and 4 because the Court must determine whether the military court would exceed its jurisdiction by convening the court-martial on those charges.

## D.     Standard of Review

The parties dispute the proper standard of review that the Court should apply to this habeas proceeding. *See Watada*, 530 F. Supp. 2d at 1151. This confusion most likely arose because Petitioner has been subjected to two separate court decisions: (1) the original declaration of a mistrial (AR at 1155, ln. 3), and (2) the denial of Petitioner's motion to dismiss the re-referred charges because they are barred by double jeopardy (AR at 583-589). Petitioner is requesting that this Court grant him habeas relief under 28 U.S.C. § 2241. The Ninth Circuit has held that, under Section 2241, "we review factual findings with a presumption of correctness and conclusions of law *de novo*." *Hoyle v. Ada County*, 501 F.3d 1053, 1059 (9th Cir. 2007) (emphasis in original). Therefore, the trial court's conclusion of law that retrial would not violate Petitioner's Fifth Amendment right to be free from double jeopardy (AR at 588) will be reviewed *de novo*.

# IV. DOUBLE JEOPARDY

Petitioner claims that convening a court-martial on the charges of missing movement and conduct unbecoming violates his constitutional right to be free from double jeopardy because the first trial ended with the declaration of a mistrial over his objection. Respondents argue that manifest necessity mandated the declaration of a mistrial.

## A.     Fifth Amendment

The Fifth Amendment provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Jeopardy attaches when a jury, or a panel of members in a military court, is impaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 35 (1978); *U.S. v. Jaramillo*, 745 F.2d 1245, 1247 (9th Cir. 1984). Once jeopardy attaches, the accused has a "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689 (1949).

> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Arizona v. Washington*, 434 U.S. 497, 503-505 (1978).

There are, however, exceptions to this general rule. "If a case is dismissed after jeopardy attaches but before the jury reaches a verdict, a defendant may be tried again for the same crime only in two circumstances: (1) if he consents to the dismissal; or (2) if the district court determines that the dismissal was required by 'manifest necessity.'" *U.S. v. Bonas*, 344 F.3d 945, 948 (9th Cir. 2003). In this case, Petitioner objected to the Government's motion for a mistrial. AR at 1154. Therefore, Respondents argue that "[t]he manifest necessity exception applies to this case, so retrial as to the three charges previously before the panel are not barred by the double jeopardy clause." Dkt. 32 at 12.

**B.    Manifest Necessity**

When a criminal prosecution has ended in a mistrial, "the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar." *Washington*, 434 U.S. at 505. "[The prosecutor's] burden is a heavy one. [He] must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Id*. There need not be an "explicit finding of 'manifest necessity'" as the record may provide sufficient justification for the ruling. *Id*. at 516-517.

"A judicial determination of manifest necessity is reviewed for abuse of discretion, but the level of deference varies according to the circumstances in each case."[2] *U.S. v. Chapman*, 524 F.3d 1073, 1082 (9th Cir. 2008) (citing *Bonas*, 344 F.3d at 948). If there is evidence in the record that the prosecution sought the mistrial for a "tactical advantage," then the determination of manifest necessity must be reviewed with the "strictest scrutiny." *Id*. (citing *Washington*, 434 U.S. at 508). In the alternative, the Court must apply a more deferential standard of review when the trial judge's declaration of a mistrial is based on the judge's "own observations and personal assessment that a fair trial would be impossible." *Chapman*, 524 F.3d at 1082.

In this case, it is difficult to determine what standard applies to this case. The Government argues that "[n]o one alleges prosecutorial misconduct; thus the strictest standard of review should not be applied." Dkt 32 at 19, n.14 (citing *Chapman*, 534 F.3d at 1082). Petitioner did not directly respond to this argument.[3] Regardless, the phrase

---

[2] The "abuse of discretion" standard seems to be in conflict with the "*de novo*" standard the Court has applied to this petition. However, "[r]eviewing courts should respect the setting in which the trial judge finds [him]self." *U.S. v. Bates*, 917 F.2d 388, 394 (9th Cir. 1990) (citing *Washington*, 434 U.S. at 505-506). The Court, therefore, is mandated to apply the abuse of discretion standard to the declaration the mistrial.

[3] Petitioner claims that "the Government [is] re-hashing well-plowed territory" because the Court has already found that the military trial judge had abused his discretion. Dkt. 38 at 13-17. It is presumptuous of Petitioner to state that the Court is bound by a discussion of likelihood of success on the merits when it is considering *actual* success on the merits. A preliminary injunction is not a dispositive order of the Court as it only provides limited relief pending an

"tactical advantage" is not necessarily "prosecutorial misconduct" as Respondent suggests. *See Washington*, 434 U.S. at 508 ("the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence").

### 1.    The Prosecution's Evidence

When evaluating the unavailability of evidence, "[e]ach case must turn on its facts." *Downum v. United States*, 372 U.S. 734, 737 (1963). In *Downum*, when the first trial began, the prosecution allowed the jury to be sworn even though a key witness was absent and his whereabouts unknown. *Id*. at 735. In finding a double jeopardy violation, the Supreme Court reasoned that the prosecutor had taken "a chance" in allowing the jury to be empaneled without confirmation of his witness's presence. *Id*. at 737 (quoting *Cornero v. United States*, 48 F.2d 69, 71 (9th Cir.1931)). "There is no difference in principle between a discovery by the district attorney immediately after the jury was impaneled that his evidence was insufficient and a discovery after he had called some or all of his witnesses." *Id*. "[W]hen a jury is discharged because the prosecution is not ready to go forward with its case, the accused may not then be tried before another jury." *Howard v. U.S.*, 372 F.2d 294, 299 (9th Cir. 1967).

In this case, the trial judge rejected the Stipulation of Fact after the Government had rested but before Petitioner had begun to present his case. The court-martial was called to order at 1543 on February 6, 2007 and the Government's counsel stated that "at this time the government rests." AR at 1133. The judge inquired "[y]ou have no more evidence to present at this time?" *Id*. Counsel responded: "That's correct, Your Honor." *Id*. The court-martial was then recessed and called to order the next morning at 1043. *Id*. at 1134. The members of the panel did not hear any evidence between the time the Government rested and the Government's motion for a mistrial. *See id*. at 1134-54. The motion for a mistrial and declaration of a mistrial proceeded as follows:

---

outcome on the merits.

[MILITARY JUDGE]: Government, what's your druthers? At this point, I certainly entertain a motion for a mistrial and I'll set a new trial date. . . . What we're left with is I can instruct the members, if the government wishes to go forward. I know the government does not have all of their witnesses that they would have called for the other offenses. So, government, what's your choice?

[GOVERNMENT]: Your Honor, at this point, the government moves for mistrial.

[MILITARY JUDGE]: Defense, do you want to be heard?

[COUNSEL FOR PETITIONER]: Yes. We would oppose the motion.

[MILITARY JUDGE]: Counsel, I have the week of 19 March available.

[COUNSEL FOR PETITIONER]: Can we first determine, are you declaring a mistrial?

[MILITARY JUDGE]: I'm going to declare a mistrial.

*Id*. at 1154.

Although Respondents argue that the publication of the Stipulation of Fact irreparably tainted the panel (*see* Dkts. 11 at 18-23 and 32 at 19-24), the trial judge never stated that irreparable taint was the basis for his declaration of a mistrial. *See* AR at 1134-60. The trial judge did, however, ask the government if it "wish[ed] to request a mistrial because at this point we don't have evidence on every element?" *Id*. at 1152. The judge also stated that "since the government has no evidence at this point a mistrial would be in order." *Id*. at 1139. In other words, the trial judge was under the impression that a lack of evidence warranted a mistrial. Moreover, it is clear from the record that the Government was provided an opportunity to reopen its case and continue the court-martial with a curative instruction to the members. Respondents offer no explanation of why the trial judge offered the government the opportunity to proceed with the court-martial if he believed that the panel was irreparably tainted.

The Government's reluctance to reopen its case leads to the inference that it moved for a discharge of the panel because it was unable to proceed with its case. While not dispositive of this issue, it should be noted that Respondent Head concluded that the Government was at a "severe tactical disadvantage" after he rejected the Stipulation of

Fact at the court-martial.[4]  AR at 587.  Although the severity of any disadvantage may be debated, the bearer of the risk of that disadvantage may not be the petitioner, because respondents shoulder the burden of justifying the mistrial over a petitioner's objection. *See Washington, supra*.  The Government began the court-martial under the assumption that the Stipulation of Fact would be accepted.  The trial judge subsequently rejected the stipulation and offered the Government a chance to proceed with its case.  Instead of accepting that opportunity, the Government moved for a mistrial and a discharge of the panel.  The Government most likely declined to proceed with its case because it was under the assumption and expectation that it would be allowed to correct its significant reliance on the Stipulation of Fact in another court-martial of Petitioner.  The Government, however, does not get such opportunity if it amounts to double jeopardy.

There is evidence in the record that the trial judge declared a mistrial over Petitioner's objection because the prosecution lacked evidence to proceed with its case. *See* AR at 1134-60.  In that circumstance, the Court should review the judicial determination of a manifest necessity to declare a mistrial with the strictest scrutiny.  *See Washington, supra*.  Under that test, Respondents have not shown that the inability of the Government to either call witnesses or present other evidence necessitated a mistrial.  A delay may have been in order, but the Government is not entitled to a second opportunity to perfect its case.  The record does not reflect that there was a manifest necessity for the trial judge to declare a mistrial.  Therefore, the Fifth Amendment bars Petitioner's retrial on Charge I and Charge II, Specifications 1 and 4.

### 2.    The Judge's Observations

In the alternative, the Court also finds that there was not a manifest necessity for the trial judge to declare a mistrial, even under the more deferential standard of review.

---

[4] Respondent Head declared the mistrial and he issued the findings of fact, conclusions of law, and order denying Petitioner's motion to dismiss based upon double jeopardy. *See* AR at 362 ("I was the original trial judge in this case.").

"Under this deferential standard of review, [the reviewing Court] must ensure that the [trial judge] exercised 'sound discretion.'" *Chapman*, 534 F.3d at 1082. (citing *Bates*, 917 F.2d at 394). A reviewing court should focus on the procedures employed by the trial judge in reaching his determination of manifest necessity by considering whether the trial judge "(1) heard the opinions of the parties about the propriety of the mistrial, (2) considered the alternatives to a mistrial and chose [ ] the alternative least harmful to a defendant's rights, [and/or] (3) acted deliberately instead of abruptly. . . ." *Id.* In this case, the procedures employed by the trial judge do not satisfy any of these considerations for an exercise of sound discretion.

### i. Propriety of a Mistrial

Respondents claim that the "administrative record illustrates how the military judge went to great lengths to hear the opinions of the parties about the propriety of a mistrial over a four hour period." Dkt. 32 at 30 (citing AR at 1139-41, 1150-54). This statement is not entirely accurate because during that four-hour period the majority of the discussions focused on the acceptance or rejection of the Stipulation of Fact. The result of those conversations was that the judge decided to reject the Stipulation of Fact and believed that Petitioner was, therefore, in breach of the pretrial agreement. AR at 11-52-54. There were only a few conversations regarding the propriety and effects of the judge declaring a mistrial. *See id.* at 1139, 1154. In fact, when Petitioner's counsel informed the judge that "jeopardy has attached, and it may very well be that the retrial is impermissible," the judge responded that, upon the declaration of a mistrial, he "would set the [new] trial date and what actions you take with any superior court is well within what you want to." *Id.* at 1139. The constitutional cut-off point for retrial is when jeopardy attaches, which is usually when the members of the court are empaneled. It is not the exercise of sound discretion to fail to consider this constitutional right by instructing the accused to take his arguments elsewhere.

Further, in his order denying Petitioner's motion to dismiss, Respondent Head seems to have been fully aware of "the accused desire and interest in having the trial concluded in a single proceeding." AR at 587. Respondent Head then proceeded to outline numerous facts and hypothetical scenarios that weigh for and against the declaration of a mistrial. *Id*. This suggests that he was aware of the significance of declaring a mistrial after the members had been empaneled. The record of the court-martial, however, reflects that Respondent Head neither placed these considerations before the parties before declaring a mistrial nor allowed the parties an opportunity to be heard as to the propriety of a mistrial in light of those considerations. An after-the-fact justification cannot support an after-the-fact finding by Respondent Head that his determination of a mistrial was an exercise of sound discretion.

### ii.    Considered Alternatives to a Mistrial

The consideration of a mistrial is usually triggered by a jury improperly hearing or receiving evidence. Thus, the first step in considering an alternative to declaring a mistrial is to determine or make a finding as to what must be corrected. The record does not reflect that the trial judge adequately ascertained the magnitude of the harm that was created, if any there was, by rejecting the Stipulation of Fact. Respondents claim that the trial judge "made it clear that he believed the trial could not continue because it would be impossible to obtain a fair verdict with a tainted panel." Dkt. 22 at 36. The judge did ask the government that, if the court-martial continued, the panel would be instructed to disregard the Stipulation of Fact in its entirety and "the problem we have is . . . how are we going to unring that bell?" AR at 1153. The only bell that was rung, however, was that the panel had heard facts that Petitioner had conceded. Petitioner's concession of facts, however, seems to have been entirely consistent with his theory of the case. Regardless, the panel possessed the ultimate authority to return a verdict whether the evidence before them was an admission of guilt or a concession of specific facts. The judge was aware of this when he accepted the stipulation because he informed Petitioner

that the "members will use it to determine if you are, in fact, guilty to the offenses to which the stipulation relates." Thus, while the stipulation could have been used to find guilt, it was not, in fact, a determination of guilt. The record does not reflect that, at the time the judge rejected the Stipulation of Fact, the panel was irreparably tainted. As such, the error, if any, may have been remedied.

The record reflects that the trial judge only considered one alternative to a mistrial, which was a curative instruction to the panel. *See* AR at 1154 ("What we're left with is I can instruct the members"). It has already been noted that Respondent Head developed numerous alternatives to a mistrial in his subsequent denial of Petitioner's motion to dismiss. *See supra*; *see also* AR at 587-88. None of these alternatives appear on the record of the court-martial. Moreover, the judge failed to ask the parties if they were aware of possible alternatives. The failure to develop the record as to possible alternatives is a strong suggestion that they were not adequately considered by the trial judge <u>before</u> the mistrial was declared.

### iii.    Acted Deliberately Instead of Abruptly

Respondents claim that the trial judge acted deliberately because, "[f]rom 10:30 in the morning to 2:00 in the afternoon, the court struggled with the possibility of a mistrial." Dkt. 32 at 22. The parties, however, used that time to mostly discuss the acceptance or rejection of the Stipulation of Fact. *See supra*. Once the government moved for a mistrial, the motion was granted without any inquiry or discussion. *See* AR at 1154-55. The record reflects that the judge considered the Government's lack of evidence a sufficient reason for a mistrial when he informed the Government that he "would entertain a motion for a mistrial." *Id*. at 1154. Once the motion was presented, the judge granted it over Petitioner's objection and immediately moved to setting the new trial date. *Id*. at 1154-55. This was not the exercise of sound discretion in that the judge abruptly granted the motion for a mistrial without considering either the propriety of a mistrial, alternatives to a mistrial, or the repercussions of a mistrial.

Therefore, under the more deferential standard of review, the trial judge did not exercise sound discretion in reaching his judicial determination that a mistrial was required because the judge did not employ adequate procedures in reaching that determination. The record does not reflect that there was a manifest necessity for the declaration of a mistrial.

**C.    Conclusion on Double Jeopardy**

The strictest scrutiny should be applied to the trial judge's determination because the record reflects that the Government moved for a mistrial on the basis that it was unable to proceed with its case. In the alternative, the judge did not exercise sound discretion when he failed to engage in a procedurally adequate development of his determination that a mistrial was appropriate. Under either level of review, the record does not reflect that there was a manifest necessity to declare a mistrial over Petitioner's objection. As a result, the Government is barred from retrying Petitioner on Charge I and Charge II, Specifications 1 and 4, because it would violate Petitioner's Fifth Amendment right to be free from double jeopardy.

**V. ORDER**

Therefore, it is hereby

**ORDERED** that Petitioner's Second Amended Petition for Writ of Habeas Corpus (Dkt. 25) is **GRANTED in part** and **DENIED in part** as follows:

1.    Petitioner's claim that the military court is without jurisdiction to convene a court-martial on Charge I – Missing Movement and Charge II – Conduct Unbecoming an Officer and a Gentlemen, Specifications 1 and 4, is **GRANTED** and the military court may not convene a court-martial against Petitioner on these charges; and

2.    The remainder of Petitioner's claims are **DENIED without prejudice**.

DATED this 21st day of October, 2008.

BENJAMIN H. SETTLE
United States District Judge